IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THALES AIRBORNE SYSTEMS S.A., and THALES AVIONICS S.A.<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSAL AVIONICS SYSTEMS CORPORATION<br><br>Defendant. | C.A. No. 05-853-SLR |

**OPENING MEMORANDUM OF LAW IN SUPPORT OF
THALES AIRBORNE SYSTEMS S.A. AND THALES AVIONICS S.A.'S
MOTION TO ENJOIN DEFENDANT'S SUBSEQUENTLY-FILED
<u>NEW JERSEY PROCEEDINGS</u>**

Plaintiffs Thales Airborne Systems S.A. ("Thales Airborne") and Thales Avionics S.A. ("Thales Avionics") hereby submit this memorandum of law in support of their motion to enjoin Defendant Universal Avionics Systems Corporation from prosecuting its subsequently-filed action in the United States District Court for the District of New Jersey styled *Universal Avionics Systems Corporation v. Thales S.A.*, Civ. No. 05-cv-05764-JAG-MCA (D.N.J.).

## BACKGROUND

This civil action involves the willful infringement of United States Patents Numbers 5,488,563 ("the '563 Patent") and 5,638,282 ("the '282 Patent") (collectively, the "Thales Patents") by Defendant Universal Avionics Systems Corporation ("Universal").

Plaintiffs Thales Airborne and Thales Avionics (collectively "Thales") are French companies engaged in the design, manufacturing, and sale of products for the aerospace and avionics industries. Defendant Universal is an Arizona corporation which also manufactures and

sells avionics products. Thales and Universal are competitors in the market for avionics equipment, including terrain awareness and warning systems ("TAWS").

The Thales Patents involve technology used to develop and design TAWS systems. Thales Airborne own the rights to the Thales Patents. Thales Airborne has granted a license of the Thales Patents to Thales Avionics, which also has the right to enforce the Thales Patents and to sue and to recover for infringement of the Thales Patents by virtue of that license.

Universal manufactures and sells TAWS products, which it refers to as its Class A and Class B TAWS products (the "Universal TAWS Products"). The Universal TAWS Products infringe at least one claim of each of the Thales Patents, either literally or with only insubstantial differences. By letter dated May 26, 2005, Thales put Universal on notice of Universal's infringement of the Thales Patents.

Between May 26, 2005 and December 9, 2005, Thales and Universal engaged in negotiations in an effort to resolve Thales' claims of infringement. As part of these negotiations, Thales and Universal entered into a standstill agreement whereby the parties agreed not to institute litigation relating to the Thales Patents until the standstill agreement expired at 12:00 a.m. on December 10, 2005. The parties were unable to resolve this dispute through negotiations during this period.

On December 12, 2005, the first business day after the standstill agreement had expired, Thales filed a complaint for patent infringement against Universal in connection with the Thales Patents in this Court (the "Delaware Complaint"), which commenced the instant proceedings. The Delaware Complaint was filed, and time/date stamped by the Clerk of the Court, at 08:34 a.m. on December 12, 2005. The civil cover sheet was time stamped at 08:32 a.m.

After Thales filed the Delaware Complaint, Universal instituted an action against Thales S.A., the parent corporation of Thales Airborne and Thales Avionics, in the United States District Court for the District of New Jersey, seeking declarations that the Universal TAWS Products do not infringe the Thales Patents and that the Thales Patents are invalid. Universal filed the complaint in that action (the "New Jersey Complaint") at a time on December 12, 2005 after Thales Airborne and Thales Avionics had filed in this Court.

## ARGUMENT

### I.  THE COURT SHOULD ENJOIN UNIVERSAL FROM PROSECUTING ITS SUBSEQUENTLY-FILED ACTION IN THE DISTRICT OF NEW JERSEY

#### A.  The Determination as to Which Action Should Proceed Should Be Made by This Court

"It is of obvious importance to all the litigants to have a single determination of their controversy" and "be free from the vexation of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1942). Thus, it is well settled that two cases involving the same issues and same parties should not be permitted to proceed in separate federal courts. *Crosley Corp.*, 122 F.2d at 929-30 (holding that district court abused its discretion in denying declaratory plaintiff's motion to enjoin a second-filed infringement action).

When two separate actions have been instituted, the determination as to which action should proceed properly should be made by the court in which the first action is filed. *See Daimler Chrysler Corp. v. General Motors Corp.*, 133 F. Supp. 2d 1041, 1042 (N.D. Ohio 2001) ("[T]he most appropriate approach is for the court where a complaint is first filed to determine which case should go forward."). As the *Daimler* court explained, leaving the decision "to the court in which the first case was filed makes good sense, as it establishes a bright line rule, which

is as easy to apply as it is to understand," *id* at 1044, whereas leaving the decision to the second filed court would encourage a "kind of derivative forum shopping." *Id.* Thus, "this approach is supported by a body of case law that directs the court which first obtained jurisdiction to determine whether it should retain the case or let it proceed in the court of second filing." *Id.* at 1042. *See also Cadle Co. v. Whataburger Of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir. 1999) (determination as to which action should proceed "is reserved only for the first-filed court"); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94, 96 (9th Cir. 1982) (forum disputes should be addressed to the court in the first-filed action); *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir. 1982) ("the court which first obtains jurisdiction should be allowed to first decide issues of venue."); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) ("Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the [court in the second-filed action] to resolve the question of whether both should be allowed to proceed."); *National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961) ("Sound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated"); *MSK Ins., Ltd. v. Employers Corp.*, 212 F. Supp.2d 266, 267-68 (S.D.N.Y. 2002) (staying second-filed action pending resolution of forum dispute by first court); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp.2d 549, 557 n.4 (S.D.N.Y. 2000) ("[I]t is the court in which the first-filed action was brought that should decide whether an exception to the first-filed rule applies."); *Sawgrass Sys., Inc. v. BASF Corp.*, 50 U.S.P.Q. 2d 1692, 1693 (D.S.C. 1999) (staying second-filed infringement action pending resolution of forum dispute by court having jurisdiction over first-filed declaratory action); *Affinity Memory & Micro, Inc. v. K & Q Enters, Inc.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998) ("Because the Virginia action was filed first, this is the appropriate

forum to decide the venue and transfer issues. More precisely, this is the forum to decide whether to give effect to the first-filed rule."); *Ontel Prods., Inc. v. Project Strategies*, 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995) ("Case law indicates that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule applies."); *Boston & Maine Corp. v. United Transportation Union*, 110 F.R.D. 322, 332 (D. Mass. 1986) ("[T]he decision as to which of two reasonable forums is the preferable forum should be made by [the first-filing court]").

Because Thales instituted this action in the District of Delaware before Universal filed its complaint in the New Jersey case, this Court should determine which action should be permitted to proceed.

### B. The Court Should Enjoin Universal From Proceeding in the New Jersey Action

This Court clearly possesses the authority to enjoin Universal from pursuing its subsequently-filed parallel proceedings in the District of New Jersey. *See Laboratory Corporation of America Holdings v. Chiron Corp.*, 384 F.3d 1326, 1332-33 (Fed. Cir. 2004) (district court acted within its discretion by enjoining subsequent parallel proceedings); *Rohm & Haas Co. v. Brotech Corp.*, 770 F. Supp. 928, 935 (D. Del. 1991) (enjoining second-filed action); *Bamdad Mech. Co. v. United Techs. Corp.*, 109 F.R.D. 128, 134 (D. Del. 1985) (same); *Matsushita Battery Industrial Co. v. Energy Conversion Devices, Inc.*, 1996 WL 328594, at *2 (D. Del. Apr. 23, 1996) (the "first filed rule gives the district court hearing the first case the power to enjoin later filed cases involving the same parties and the same issues") (attached as Exhibit B hereto).

The Federal Circuit repeatedly has explained that the first-filed case "is preferred" and should be favored over any subsequently-filed parallel actions. *Electronics for Imaging, Inc. v.*

5

*Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) ("[w]e apply the general rule favoring the forum of the first filed case . . ."); *Serco Services Co. v. Kelley Co. Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) ("[t]he first-filed action is preferred"); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) ("as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances") (internal quotations omitted). This "first-filed" rule applies even in situations where the subsequent action was instituted shortly after the complaint in the first action was filed. *See Laboratory Corporation of America Holdings*, 384 F.3d at 1327, 1332-33 (affirming the district court's application of the first-filed rule where parallel action was filed only four and one-half hours after first complaint); *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (first-filed rule applied to complaint filed one day earlier than parallel complaint); *Chase Manhattan Bank, USA v. Freedom Card, Inc.*, 265 F. Supp.2d 445, 447, 451 (D. Del. 2003) (applying the first-filed rule even though a parallel action was commenced only one and a half hours later); *Datex-Ohmeda Inc. v. Hill-ROM Services, Inc.*, 185 F. Supp. 2d 407, 408, 412 (D. Del. 2002) (applying first filed rule even though the parallel case was filed later the same day); *Matsushita Battery Industrial Co.*, 1996 WL 328594 at *1, 2-3 (granting declaratory plaintiff's motion to enjoin an infringement action filed one day after the declaratory action) (attached as Exhibit B hereto).

As the Federal Circuit has made clear, the first-filed rule governs "unless considerations of judicial and litigant economy, and just and effective disposition of disputes, requires otherwise." *Electronics for Imaging, Inc.*, 394 F.3d at 1347; *Serco Services Co.*, 51 F.3d at 1039; *Genentech*, 998 F.2d at 938. In other words, there must be a "sound reason that would make it unjust or inefficient to continue the first filed action" before the subsequent action is permitted to proceed. *Electronics for Imaging, Inc.*, 394 F.3d at 1347; *Genentech*, 998 F.2d at 937. Here, no

such considerations exist which favor proceeding in the subsequently-filed New Jersey action. On the contrary, if anything, considerations of judicial economy and effective administration of justice favor proceeding with Thales' first filed action in Delaware.

For example, it is indisputable that Universal has sued the wrong defendant in the New Jersey action. *See* Declaration of Franck Legrand at ¶ 11 ("Legrand Decl.") (stating that Thales S.A. has no ownership or other interests in the Thales Patents) (attached hereto as Exhibit A). Thus, before the New Jersey action may proceed, Universal must file an amended complaint naming Thales Airborne and Thales Avionics S.A.—the true patent rights holders in this case. Furthermore, because both Thales Airborne and Thales Avionics S.A. are French corporations, Universal must serve the amended complaint under Hague Convention procedures. For these reasons, the proceedings in the New Jersey action are likely to be delayed for at least several more months. Thales' Delaware Complaint, on the other hand, already has been properly served upon Universal. Because the instant action will develop at a more rapid pace, the speedy and efficient administration of justice favors this action over the New Jersey case. *See Tuff Torq Corp. v. Hydro-Gear Ltd.*, 882 F. Supp. 359, 365 (D. Del. 1994) ("it is fundamentally unfair to stay litigation that has proceeded further than another . . . filed action"); *One World Botanical Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F.Supp. 317, 328 (D.N.J. 1997) (court should favor the case that has developed more rapidly).

Furthermore, even if Thales S.A.—the presently-named defendant in the New Jersey case—were a proper party to this dispute, it is unclear whether the New Jersey court has personal jurisdiction over that entity. *See* Legrand Decl. at ¶ 12 ("Thales S.A. does not own or lease any offices or facilities, does not maintain any bank accounts, and does not transact any business in the District of New Jersey, and has conducted no activities related to the Thales Patents in the

District of New Jersey"). On the other hand, Thales Airborne and Thales Avionics have consented to personal jurisdiction in this Court with the filing of the Delaware Complaint. As the Federal Circuit has noted, the ability of the respective courts to obtain personal jurisdiction over the parties necessary to the case is a relevant factor in determining the proper forum for the dispute. *Electronics for Imaging, Inc.*, 394 F.3d at 1348; *Genentech*, 998 F.2d at 938. Thus, where personal jurisdiction is questionable in one forum but clear in another, courts properly should favor the forum with clear jurisdiction over the parties to the dispute. *National Foam, Inc., v. Williams Fire & Hazard Control Co., Inc.*, 1997 WL 700496, at *10 (E.D. Pa. Oct. 29, 1997) (attached as Exhibit C hereto).

Other relevant factors likewise weigh against disregarding the "first-filed" rule in favor of proceeding in the second-filed New Jersey action. For example, Universal unquestionably has the resources to participate in litigation in Delaware. Universal is not some small start-up company whose primary or sole market is entirely within the District of New Jersey. Rather, Universal is a global company that transacts business in the District of Delaware, maintains sales operations in this District, and specifically sells it infringing products here. As a large company operating in a global marketplace, Universal "must be able to identify some unique or unexpected burden associated with defending this action" in the Delaware forum. *Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 358 (D. Del. 1999); *see also Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) ("As [defendant] is a substantial corporation that operates in the national market place and as it has developed its business in anticipation of doing business around the country, it has not been able to identify any unique or unusual burden that this litigation places on its business operations."). Universal, however, can make no such showing. Although it filed its declaratory judgment action in New Jersey,

Universal is *not* a New Jersey corporation. Rather, Universal is an Arizona corporation. Thus, litigation in Delaware poses no burdens or hardships on Universal that would not also be present in connection with a New Jersey action. Moreover, Universal already has litigated two patent infringement suits in this District brought by Honeywell Corporation that involved Honeywell's TAWS patents and the same infringing products of Universal that are the subject of the instant case.

Thales Airborne, Thales Avionics S.A., and Thales S.A. are all French companies. Furthermore, documents and witnesses relating to the Thales Patents all are located in France. *See* Legrand Decl. at ¶ 17, 18. Thus, on the Thales side, there are no advantages or efficiencies to be gained by litigating this dispute in New Jersey rather than Delaware.

Nor would permitting the New Jersey case to proceed conserve judicial resources by eliminating duplicative litigation. There are not now and never have been any related proceedings between the parties in New Jersey, apart from Universal's subsequently-filed duplicative action. However, as noted above, two lawsuits involving TAWS technology and the same Universal TAWS Products that are at issue in this case have already been litigated in this District.

Finally, permitting Universal's New Jersey suit to proceed would be entirely inconsistent with the purposes of the Declaratory Judgment Act—the very act under which Universal brings the New Jersey suit. As a general matter,

> [t]he purposes of the Declaratory Judgment Act are to clarify and settle the legal relations at issue and to terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings. A declaratory judgment is available when the controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e., a suit for damages or an injunction) ***but has not done so.***

*One World Botanical Ltd.*, 987 F.Supp. at 329 (emphasis in original) (internal quotations and citations omitted); *see also Serco Services Co.*, 51 F.3d at 1039 ("The purpose of the Declaratory Judgment Act [is] to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist."). In the patent law context, the act serves a specific purpose, which the Federal Circuit has explained:

> [A] patent owner engages in a *danse macabre*, brandishing a Damoclean threat with sheathed sword. . . . Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. Before the [Declaratory Judgment] Act, competitors victimized by the tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

*Arrowhead Indus. Water, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988); *see also Electronics for Imaging*, 394 F.3d at 1346-47; *Hunt Manufacturing Co. v. Fiskars OY AB*, 1997 WL 667117, at *3 (E.D. Pa. Oct. 2, 1997) ("the Act's purpose, in the patent context, [is to] provid[e] a remedy where a patentee delays suit in order to further damage the alleged infringer's business") (attached as Exhibit D hereto).

However, none of these purposes is served in any way by Universal's declaratory judgment action in this case. By the time Universal instituted its declaratory judgment action in the District of New Jersey, *Thales already had filed its infringement suit against Universal in this Court*. Obviously, Thales' infringement suit eliminated any need for Universal to institute proceedings to resolve uncertainty or insecurity on the issues in dispute. Moreover, with the infringement dispute already squarely and concretely before this Court, Universal clearly was not faced with a choice between incurring growing potential liability for patent infringement and abandonment of its enterprise. Because Universal's declaratory judgment action does not serve

the purposes of the Declaratory Judgment Act, the Court should enjoin Universal from pursuing its subsequently-filed New Jersey action. *See One World Botanical Ltd.*, 987 F. Supp. at 330 (appropriate to enjoin declaratory action where it does not serve the purposes of the Declaratory Judgment Act).

## CONCLUSION

For the foregoing reasons, the Court should grant Thales' motion to enjoin Universal from prosecuting its subsequently-filed New Jersey action.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Thales Airborne Systems S.A.
and Thales Avionics S.A.*

OF COUNSEL:

Elliot E. Polebaum
Deneen J. Melander
FRIED FRANK HARRIS SHRIVER &
  JACOBSON LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel.: (202) 639-7000
Fax: (202) 639-7004

Dated: January 3, 2006
165212.1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 3rd day of January, 2006, the attached **OPENING MEMORANDUM OF LAW IN SUPPORT OF THALES AIRBORNE SYSTEMS S.A. AND THALES AVIONICS S.A.'S MOTION TO ENJOIN DEFENDANT'S SUBSEQUENTLY-FILED NEW JERSEY PROCEEDINGS** was served upon the below-named defendants at the address and in the manner indicated:

| | |
|---|---|
| Scott J. Bornstein, Esquire<br>Greenberg Traurig LLP<br>Met Life Building<br>200 Park Avenue<br>New York, NY 10166 | <u>VIA FEDERAL EXPRESS</u> |
| Delaware Secretary of State<br>401 Federal Street, Suite 3<br>Dover, DE 19901 | <u>VIA FEDERAL EXPRESS</u> |

*/s/ John G. Day*
_____
John G. Day

165219.1