# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THALES AIRBORNE SYSTEMS S.A., and
THALES AVIONICS S.A.

        Plaintiffs,

    v.

UNIVERSAL AVIONICS SYSTEMS
CORPORATION

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. NO. 05-853-SLR

## DECLARATION OF FRANCK LEGRAND

Franck Legrand hereby declares and states as follows:

1.    My name is Franck Legrand. I have personal knowledge of the information set forth herein.

2.    I am the Legal Director of the Aerospace Division of Thales Group ("Thales Aerospace Division").

3.    Thales Airborne Systems S.A., a plaintiff in the above captioned action, is a French corporation with its corporate headquarters at 2, avenue Gay Lussac, 78851 Elancourt, France.

4.    Thales Avionics S.A., also a plaintiff in the above captioned action, is a French corporation with its corporate headquarters at 45, rue de Villiers, 92526 Neuilly, France.

5.    Thales Airborne Systems S.A. and Thales Avionics S.A. are subsidiaries of Thales S.A. within the Thales Aerospace Division.

6.    Thales Airborne Systems S.A. owns the patent rights to United States Patent Number 5,488,563 ("the '563 Patent") and United States Patent Number 5,638,282 ("the '282 Patent"), which are the patents in suit, and to United States Patent Number 5,414,631 ("the '631 Patent") and United States Patent Number 6,088,654 ("the '654 Patent") (collectively the "Thales Patents").

7.    Thales Airborne Systems S.A. has granted licenses of the Thales Patents to Thales Avionics S.A., which also has the right to enforce the Thales Patents and to sue and to recover for infringement of the Thales Patents.

8.    Thales S.A. is a French corporation with its corporate headquarters at 45, rue de Villiers, 92200 Neuilly-sur-Seine, France.

9.    Thales S.A. is a separate and distinct corporate entity from Thales Airborne Systems S.A. and Thales Avionics S.A.

10.    Thales S.A. is the parent corporation of Thales Airborne Systems S.A. and Thales Avionics S.A.

11.    Thales S.A. does not own or hold any rights or interests in the Thales Patents, does not employ any of the inventors named on the Thales Patents, and otherwise has no connection to the Thales Patents except as parent corporation of Thales Airborne Systems S.A. and Thales Avionics S.A.

12.    Thales S.A. does not own or lease any offices or facilities, does not maintain any bank accounts, and does not transact any business in the District of New Jersey, and has conducted no activities related to the Thales Patents in the District of New Jersey.

13.    Thales Avionics, Inc. is a Delaware corporation with a principal place of business at 3920 Park Avenue, Edison, New Jersey.

14.    Thales Avionics, Inc. is a separate and distinct corporate entity from Thales Airborne Systems S.A. and Thales Avionics S.A.

15.    Thales Avionics, Inc. is a subsidiary of Thales Holding Corporation, a Delaware corporation.  Thales Holding Corporation is a subsidiary of Thales North America, Inc., a Delaware corporation.  Thales North America, Inc. is a subsidiary of Thales S.A.

16.    Thales Avionics, Inc. does not own or hold any rights or interests in the Thales Patents, does not employ any of the inventors named on the Thales Patents, and otherwise has no connection to the Thales Patents.

17.    All of the inventors named on the Thales Patents are residents of France.

18.    Based on the information I have received to date, it appears that all documents and witnesses relating to the Thales Patents are located in France.

Dated: December 22, 2005

_____
Franck Legrand

274224

3

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.                                                                      Page 1
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: 1996 WL 328594 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
MATSUSHITA BATTERY INDUSTRIAL CO.,
LTD., Toyota Motor Corporation, and Toyota
Motor Sales, U.S.A., Inc., Plaintiffs,
v.
ENERGY CONVERSION DEVICES, INC. and
Ovonic Battery Company, Inc. Defendants.
**No. CIV. A. 96-101-SLR.**

April 23, 1996.

Kent A. Jordan, of Morris, James, Hitchens &
Williams, Wilmington, Delaware, for plaintiff. Of
Counsel for plaintiff Matsushita Battery Industrial
Co.: Morton Amster, Michael J. Berger, and
Abraham Kasdan, of Amster, Rothstein & Ebenstein,
New York, New York; Of Counsel for plaintiffs
Toyota Motor Corporation and Toyota Motor Sales,
U.S.A., Inc.: Edward W. Greason, and Arthur D.
Gray, of Kenyon & Kenyon, New York, New York.

Bruce M. Stargatt, Josy W. Ingersoll, and John W.
Shaw, of Young, Conaway, Stargatt & Taylor,
Wilmington, Delaware, for defendants. Of Counsel:
Chester T. Kamin, David J. Bradford, and Jeffrey A.
Koppy, of Jenner & Block, Chicago, Illinois;
Lawrence G. Norris, of Rothwell, Figg, Ernst &
Kurz, Washington, D.C.; and Marvin S. Siskind, Vice
President/Patent Counsel, Energy Conversion
Devices, Inc., Troy, Michigan.

MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 Plaintiff Matsushita Battery Industrial Co. Ltd.
("MBI") filed this declaratory judgment action on
February 28, 1996. [FN1] Plaintiffs seek a
declaration of invalidity and non-infringement of
Ovonic's United States Patent Number 5,348,822
("'822 patent"). On February 29, 1996, defendants
Energy Conversion Devices, Inc. ("ECD") and
Ovonic Battery Company Inc. ("Ovonic") filed suit

against plaintiffs in the United States District Court
for the Eastern District of Michigan, claiming
infringement of the same patent. Currently before the
court are defendants' motion to stay or dismiss the
declaratory judgment action or, in the alternative, to
transfer the case to the Eastern District of Michigan
(D.I. 6) and plaintiffs' motion to enjoin defendants'
infringement suit in the Eastern District of Michigan.
(D.I. 19) The motions have been fully briefed, and
the court heard oral arguments on April 10, 1996. For
the reasons set forth below, defendants' motion will
be denied and plaintiffs' motion to enjoin will be
granted.

II. BACKGROUND

Defendant ECD and its subsidiary Ovonic are
Delaware corporations whose principal place of
business is Troy, Michigan. (D.I. 8 at Ex. B) Over the
past fifteen years, Ovonic has developed new
technology in the field of rechargeable nickel metal
hydride ("NiMH") batteries, and holds numerous
patents in this area. (D.I. 8 at Ex. B) Batteries made
with this new technology have the advantages of long
life, no memory effect, and no environmentally
hazardous materials. Ovonic has found particular
success in marketing its technology for use in
"consumer batteries" (e.g., batteries for camcorders,
laptop computers, and cellular telephones) and in the
development of a commercially viable electric
vehicle ("EV") battery. (D.I. 8 at Ex. B) In June
1994, Ovonic formed a joint venture with General
Motors Corporation ("GM") to produce and market
batteries for EVs on a worldwide basis. (D.I. 8 at Ex.
B) Ovonic has also been awarded several contracts
by the United States Advanced Battery Consortium
("USABC"), which is composed of Ford Motor
Company, GM, and Chrysler Corporation, to further
develop EV battery technology. (D.I. 8 at Ex. B)

Plaintiff MBI, a Japanese corporation with its
headquarters in Osaka, operates worldwide as one of
the largest producers of batteries. (D.I. 11 at ¶ 3)
MBI has also conducted extensive research and
development in the area of NiMH batteries. Toyota, a
Japanese corporation, and Toyota Sales, which is
incorporated and based in California, have joined
MBI in testing programs for MBI's EV batteries. (D.I.
11 at ¶¶ 4, 5, 16, 17)

In 1992, defendants and MBI negotiated a series of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: 1996 WL 328594 (D.Del.))**

licensing agreements concerning NiMH technology for use in consumer batteries. During those negotiations, the parties apparently discussed licensing EV battery technology as well, but were unable to reach agreement. They did, however, execute a side letter in which they agreed "if necessary and appropriate, to explore the possibility of arriving at mutually acceptable terms for the grant to MBI of patent licenses under ECD/OBC's Hydride Battery Patents for large hydride battery applications such as electric vehicle propulsion." (D.I. 8 at Ex. 1)

**\*2** Between 1992 and 1995, ECD/Ovonic and MBI continued to communicate while working independently to develop NiMH batteries for EV application. The record indicates that fairly frequent correspondence, meetings between engineers from both companies, and an exchange of sample batteries took place during this period. (D.I. 8 at Ex. I-K)

In May 1995, Stanford Ovshinsky, President and CEO of ECD, contacted Steve Kawauchi, Executive Vice President of MBI, and requested a meeting to discuss ECD's proposal for the licensing of EV battery technology. (D.I. 21 at B109) Two months later, MBI broke off negotiations, indicating through its attorney that it had "no interest in pursuing the ECD/OBC Proposal given to Mr. Kawauchi by Mr. Ovshinsky and also does not have any counterproposal to make to ECD/OBC." (D.I. 21 at B111) In response to this communication, ECD notified MBI that it was prepared to take legal action, ostensibly for patent infringement. (D.I. 8 at Ex. B-2) After a conciliatory reply from MBI and a letter from GM to MBI's parent company urging that negotiations resume, ECD decided not to file suit, and negotiations of some sort apparently continued. (D.I. 8 at Ex. B-4, B-5, B-6, B-7; D.I. 21 at B113-B129)

The final breakdown in negotiations, which led to this suit, occurred after ECD learned that Toyota planned a program for testing EVs in the United States using NiMH batteries manufactured by MBI. On February 5, 1996 ECD sent letters protesting this action to Toyota Sales, Southern California Edison Company (which was involved in the planned project), and MBI. (D.I. 21 at B89-92; D.I. 8 at Ex. B-8) In its letter to MBI, ECD stated, "ECD would urge Matsushita to accelerate its discussions about the possibilities for the GM Ovonic J[oint] V [[[enture]. If a definite plan is developed for MBI participation and investment in GM Ovonic, ECD is prepared to resume discussions with MBI to resolve our outstanding issues in a satisfactory manner." (D.I.

8 at Ex. B-8) In response to this communication, ECD received a letter dated February 15 which stated, in its entirety, "Your letter to Steve Kawauchi was received while he is on a business trip out of the country. He will respond to you on his return." (D.I. 8 at Ex. B-9) On February 26, 1996 Ovonic, through its attorney, notified MBI of its belief that MBI was infringing Ovonic's '822 patent by supplying Toyota with EV batteries for testing in the United States. Ovonic demanded that MBI cease and desist or Ovonic would take legal action. (D.I. 8 at Ex. B-10) Two days later, without responding further to either of ECD/Ovonic's letters, MBI filed the instant declaratory judgment action.

### III. DISCUSSION

#### A. Dismissal under the Declaratory Judgment Act

Plaintiffs filed this suit pursuant to the Declaratory Judgment Act, *28 U.S.C. § § 2201*-02. The Act gives the court before which a declaratory judgment action is brought discretion to hear, or refuse to hear, the suit. *Wilton v. Seven Falls Co.,* 115 S. Ct. 2137 (1995); *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 936 (Fed. Cir. 1993), *cert. denied,* 114 S. Ct. 1126 (1994); *Samuel Goldwyn, Inc. v. United Artists Corp.,* 113 F.2d 703, 709 (3d Cir. 1940). In general, a court may not dismiss a suit for a declaration of noninfringement on the ground that an infringement suit was subsequently filed. *Genentech,* 998 F.2d at 937; *see generally Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1941), *cert. denied,* 315 U.S. 813 (1942) ("In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."). This "first filed rule" gives the district court hearing the first filed case the power to enjoin later filed cases involving the same parties and the same issues. *EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir. 1988), *aff'd,* 493 U.S. 182 (1990).

**\*3** There are, however, certain recognized exceptions to the first filed rule, and other exceptions may be made "when justice or expediency requires, as in any issue of choice of forum." *Genentech,* 998 F.2d at 937, *citing Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081-83 (Fed. Cir. 1989). Defendants urge the court to find an exception to the first filed rule in this case because plaintiffs engaged in an improper "race to the courthouse" in order to avoid litigating in the Eastern District of Michigan. Defendants maintain that plaintiffs filed this action in bad faith, knowing that defendants were awaiting a response to their request for further negotiations. To

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: 1996 WL 328594 (D.Del.))**

allow this action to proceed, they argue, would penalize good faith efforts to negotiate and reward precipitous litigation. In addition, defendants argue that the comparative convenience of each forum to the parties and nonparty witnesses weighs in favor of dismissing this action in favor of the later filed suit.

Whether a party has filed a declaratory judgment action anticipatorily or in bad faith is a proper factor for the court to consider in deciding whether to dismiss a first filed action. *Serco Services Co., L.P. v. Kelley Co., Inc.,* 51 F.3d 1037, 1039-40 (Fed. Cir. 1995); *Davox Corp. v. Digital Systems Int'l, Inc.,* 846 F. Supp. 144, 148 (D. Mass. 1993); *Bausch & Lomb Inc. v. Alcide Corp.,* 684 F. Supp. 1155, 1158-60 (W.D.N.Y. 1987). In *Serco Services,* the Federal Circuit held that "**we cannot say that it was an abuse of discretion to consider that [plaintiff] intended to preempt [defendant's] infringement suit, as the district court found, as one factor in the decision whether to dismiss the declaratory suit in favor of [the] subsequent infringement action.**" *Serco Services,* 51 F.3d at 1040 (emphasis added).

In the case at bar, the parties have offered conflicting versions of the tenor of their negotiations. Defendants maintain that they had a long and fruitful history of negotiations with plaintiffs, that they were patiently and in good faith awaiting a reply from Mr. Kawauchi, and that they were shocked to discover that plaintiffs had filed suit without having responded to defendants' offer to negotiate. Plaintiffs, on the other hand, characterize their decision to file suit as a reasonable response to defendants' repeated demands that MBI enter into a joint venture, despite MBI's emphatic rejection of previous such demands. Having received a letter from defendants explicitly threatening imminent legal action, plaintiffs argue that they reasonably and in good faith made the decision to file for declaratory judgment.

After reviewing the numerous affidavits and items of correspondence submitted by the parties, the court finds that the record is unclear as to the precise tone of the negotiations between the parties. Although MBI may have acted hastily in filing suit without responding to ECD/Ovonic's February 1996 letters, despite its indications that Mr. Kawauchi would respond, the court cannot conclude from the record before it that an improper race to the courthouse took place. Furthermore, even if plaintiffs' actions could be considered anticipatory, absent any other factors weighing toward dismissal or transfer, the court declines to grant defendants' motion on this ground

alone. *See Id.* [FN2]

B. Transfer of Venue

**\*4** Title 28, Section 1404(a) provides:
  For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
  Congress intended through Section 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of justice, and whether the action could have been brought in the transferee court." *SportsMEDIA Technology Corp. v. Upchurch,* 839 F. Supp. 8, 9 (D. Del. 1993). The parties do not dispute that the Eastern District of Michigan is a proper venue for this action.

A plaintiff's choice of forum should not be lightly disturbed. As a general rule, "[b]ecause plaintiffs' choice of forum is accorded substantial weight, the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F. Supp. 972, 973 (D. Del. 1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22,25 (3d Cir. 1970), *cert. denied,* 401 U.S. 910 (1971) (emphasis added). Plaintiffs' choice of forum is "paramount." *E.g.,* *Wesley-Jessen Corp. v. Pilkington Visioncare,* 157 F.R.D. 215, 216 (D. Del 1993).

  1. Convenience of Parties and Witnesses
  Defendants contend that "the Eastern District of Michigan is an unusually appropriate and convenient forum for all concerned." They assert that defendants and all of their likely fact witnesses reside in Michigan, that plaintiffs regularly conduct business there, and that third party witnesses, "all relevant files and corporate records," and Ovonic's testing facilities are located in Michigan.

Even if the Eastern District of Michigan were the more convenient trial forum for both the parties and the non-party witnesses, this factor would not be sufficient to compel a transfer. This case is analogous to *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215 (D. Del. 1993). In that case, a defendant made a similar showing regarding the locations of parties, documents, and nonparty

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: 1996 WL 328594 (D.Del.))**

witnesses. The court concluded that transfer was inappropriate for three reasons. First, the court noted that, for a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect. *Wesley-Jessen*, 157 F.R.D. at 218. Defendants in this case have argued that they do not operate nationally, and that their small size would result in a disproportionate burden on them if they were forced to litigate in Delaware. The record indicates, however, that defendants have attended meetings and negotiations throughout the world. The second factor noted by the court in *Wesley-Jessen* is the incorporation of defendant in Delaware. Here again, the court outlined the heightened burden on such a business. "Absent some showing of a unique or unexpected burden, these corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient." *Id.* Finally, the court noted the somewhat archaic nature of the "convenience of the parties" factor in determining a motion to transfer:

> **\*5** A third reason for denying the motion to transfer is that technological advances have substantially reduced the burden of having to litigate in a distant forum .... These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

*Id.* The court also notes that discovery in this case will take place throughout the United States and in Japan. The overall burden of litigating this case, therefore, will likely be the same regardless of where the trial itself is to be held. In light of these factors, the court finds that defendants have not demonstrated that litigation in Delaware imposes on them a unique or unexpected burden.

### 2. Interests of Justice

Defendants argue that a transfer is warranted in the interests of justice. In analyzing this claim, the court must consider judicial resources, cost to the parties, access to proof, and the availability of compulsory process. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F. Supp. 962, 966 (D. Del. 1993). No party contends that a transfer would have any impact on judicial resources or cost to the parties. Addressing compulsory process, defendants maintain that several important witnesses, who according to defendants are likely to be reluctant to testify, reside outside the reach of the court's subpoena power. The court addressed an analogous contention in *Critikon,* 821 F. Supp. at 967. In that case, defendant

ha[d] not represented to the [c]ourt that [the third party witness] would be unwilling to testify at trial voluntarily. Because [the witness] is a former employee of [defendant], ... the [c]ourt must assume that he would be willing to testify absent a subpoena.

In this case, defendants have offered the affidavit of David J. Bradford, who represented defendants in another patent infringement case in this district. Based on his experience in that case, Mr. Bradford asserts that GM, GM-Ovonic, Ford Motor Company, and USABC "will not voluntarily testify or produce documents in this case." (D.I. 29 at Ex. 3) Defendants have not specifically identified any witnesses who have refused to testify; despite Mr. Bradford's opinion, the court does not find defendants' showing of the necessity of compulsory process sufficient to warrant transfer.

With respect to the availability of records, this court held in *Critikon*:

> The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where the trial is held, [defendant's] ... counsel and [plaintiff's] ... counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.

**\*6** 821 F. Supp. at 966-67. In light of the wide geographical scope of discovery in this case, the possibility that the nonparties mentioned in Mr. Bradford's affidavit will have relevant evidence and will request protective orders in the Eastern District of Michigan is likewise unpersuasive. For these reasons, the court finds that defendants have not established that this factor compels the transfer of this action.

Based on the record as it presently stands, defendants have failed to demonstrate that the interests of justice dictate transferring this action.

### IV. CONCLUSION

For the forgoing reasons, defendants' motion to stay or dismiss the declaratory judgment action or, in the alternative, to transfer the case to the Eastern District of Michigan will be denied. Plaintiffs' motion to enjoin defendants' infringement suit in the Eastern District of Michigan will be granted. An order consistent with this opinion shall issue.

FN1. Toyota Motor Corporation ("Toyota")

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 5
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: 1996 WL 328594 (D.Del.))**

and Toyota Motor Sales, U.S.A., Inc. ("Toyota Sales") were added as plaintiffs in an amended complaint dated March 7, 1996. (D.I. 11)

FN2. Defendants also argue that Michigan is a more convenient forum for the parties and nonparty witnesses. As discussed fully in the following section, the court finds this argument unpersuasive. Thus, the court will not consider convenience a factor in deciding whether to make an exception to the first filed rule.

Not Reported in F.Supp., 1996 WL 328594 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:96CV00101 (Docket) (Feb. 28, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.                                                                                   Page 1
Not Reported in F.Supp., 1997 WL 700496 (E.D.Pa.)
**(Cite as: 1997 WL 700496 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
NATIONAL FOAM, INC., Boots & Coots Limited
Partnership, and Kenneth Baker
v.
WILLIAMS FIRE & HAZARD CONTROL, INC.,
cause consequence Analysis, Inc. and
Emergency One, Inc.
**No. CIV. A. 97-3105.**

Oct. 29, 1997.

*MEMORANDUM AND ORDER*

HUTTON, J.

**\*1** Presently before the Court are the Defendants'
Motions to Dismiss, or, Alternatively, to Stay or
Transfer to the Southern District of Texas, and the
Plaintiffs' opposition thereto.   For the following
reasons, the Defendants' Motions are GRANTED.

### I. BACKGROUND

Plaintiff, National Foam, Inc. ("National Foam"), is a
Pennsylvania corporation based in Exton,
Pennsylvania.   Plaintiff, Boots & Coots Limited
Partnership ("Boots & Coots"), is a Colorado limited
partnership with its principal place of business in
Houston, Texas.   Plaintiff, Kenneth Baker ("Baker"),
is an individual who resides in Pottstown,
Pennsylvania.   The defendants in this matter are
Williams Fire & Hazard Control, Inc. ("Williams")
and Cause Consequence Analysis, Inc. ("CCAI"),
both Texas corporations with their principal place of
business in Vidor, Texas, and Emergency One, Inc.
("Emergency One"), a Florida corporation with its
principal place of business in Ocala, Florida.   The
parties to this suit are in the business of inventing,
manufacturing, selling, delivering, using or installing
fire suppression systems.

National Foam is the owner of United States Patent
No. 4,436,487 (the "487 patent"), and CCAI is the
owner of United States Patent No. 4,460,461 (the
"461 patent").   The '487 patent, issued March 13,

1984, discloses a foam liquid concentrate supply
system.   The system, powered by a concentrate
pump, supplies the foam liquid concentrate to one or
more water pump discharge outlets.   The '461 patent,
issued on February 3, 1987, is titled "Foam-Applying
Nozzle."   The nozzle is used to apply a foam-
forming liquid from a hose.

Earlier this year, Williams determined that National
Foam was infringing the '461 patent through
National Foam's sale of its "Gladiator" nozzle.
Therefore, on March 3, 1997, Williams' attorney sent
a letter to National Foam's president, demanding an
"immediate confirmation ... that National Foam will
cease and desist from any such making, offering to
sell and selling of such a nozzle."   On March 20,
1997, National Foam's attorney responded with a
letter asserting that National Foam was not infringing
the '461 patent. Williams' counsel responded by letter
on April 21, 1997, rejecting National Foam's position
and again demanding that National Foam cease and
desist.

Meanwhile, on April 3, 1997, National Foam
independently wrote its own cease and desist letter to
Emergency One, claiming infringement of the '487
patent through Emergency One's use of one of
Williams' products.   On April 24, 1997, Williams'
attorney responded in a letter denying infringement.
National Foam received this letter on April 28, 1997,
and filed the instant action before this Court the next
day.

In its complaint, National Foam alleged that
Williams and Emergency One were infringing the
'487 patent in their use and sale of Williams' foam
proportioning systems.   National Foam also sought a
declaratory judgment that, by its manufacture and
sale of its "Gladiator" nozzle, it was not infringing
the '461 patent.   However, National Foam failed to
name CCAI as a defendant, even though CCAI is the
owner of the '461 patent.

**\*2** On May 9, 1997, CCAI and Williams filed an
action against National Foam, Boots & Coots, and
Baker in the Southern District of Texas (the "Texas
case").   Boots & Coots is allegedly a National Foam
distributor, and Baker is a former Williams employee
who now works for National Foam.   CCAI and
Williams alleged that:   1) National Foam and Boots
& Coots infringed CCAI's '461 patent;   2) National

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 2
Not Reported in F.Supp., 1997 WL 700496 (E.D.Pa.)
**(Cite as: 1997 WL 700496 (E.D.Pa.))**

Foam was liable for false advertising, misappropriation of trade secrets, tortious interference, and unfair competition; and 3) Baker was liable for his violation of a duty not to disclose and for misappropriation of trade secrets. Moreover, defendant Williams sought a declaratory judgment against National Foam's patent infringement case before this Court.

On June 9, 1997, National Foam filed an amended complaint in the action before this Court. In its amended complaint, National Foam was joined by Boots & Coots and Baker. The plaintiffs sought a declaratory judgment stating their non-liability on all counts in the Texas case. Further, National Foam and Boots & Coots named CCAI as a defendant in their declaratory judgment request regarding the '461 patent. Finally, National Foam continued to allege that Williams and Emergency One infringed the '487 patent.

On July 14, 1997, CCAI filed its Motion to Dismiss, or Alternatively, to Stay or to Transfer, arguing that this Court lacks personal jurisdiction over CCAI, that this Court does not have subject matter jurisdiction over certain counts, and that the first-filed rule favors maintenance of this suit in Texas. Currently, the sole issue before this Court is whether this suit should be dismissed, stayed, or transferred to the Southern District of Texas./ [FN1]

> FN1. On September 23, 1997, this Court ordered that the Plaintiffs had until October 31, 1997 to respond to the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Subject Matter Jurisdiction, but required the Plaintiffs to respond by September 29, 1997 to the Defendants' Motion to Dismiss or, Alternatively, to Stay or to Transfer to the Southern District of Texas.

## II. *DISCUSSION*

In the present motion, the defendants ask the Court either to dismiss, stay it or transfer venue to the Southern District of Texas. Plaintiffs oppose the motion, claiming that these alternatives are all improper.

### A. *Counts 2, 3 and 4*

In Counts 3 and 4 of the plaintiffs' complaint, National Foam and Baker seek a declaratory judgment stating their non-liability on all counts in the Texas case. In Count 2, National Foam and

Boots & Coots seek a declaratory judgment declaring their non-infringement of CCAI's '461 patent. Thus, this Court must discuss the applicability of the Declaratory Judgment Act to this matter.

### 1. *Jurisdiction Under the Declaratory Judgment Act*

The Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), provides that:

> In a case of *actual controversy* within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
> 28 U.S.C. § 2201(a) (emphasis added).

To demonstrate the presence of an actual controversy the declaratory plaintiff must show that (1) it has acted, or has made preparations to act, in a way that could constitute infringement, and (2) the patentee has created in the declaratory plaintiff a reasonable apprehension of suit for infringement. **Serco Servs. Co., L.P. v. Kelley Co., Inc., 51 F.3d 1037, 1038 (Fed.Cir.1995).** In the present case, this Court assumes the presence of an actual controversy for purposes of this motion.

**\*3** However, the presence of an actual controversy, while providing authority, does not require the Court to accept jurisdiction over a declaratory judgment action. *See EMC Corp. v. Norand Corp.,* 89 F.3d 807, 813 (Fed.Cir.1996), *cert. denied,* 519 U.S. 1101, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997). The Act's "may" language gives the Court "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). It grants the Court leeway in which to make **"a reasoned judgment whether the investment of time and resources will be worthwhile." *Serco Servs.,* 51 F.3d at 1039.** Both the Supreme Court and the Federal Circuit have emphasized recently that the Act is an *enabling act* that provides the courts with the power, rather than the obligation, to grant relief. *See Wilton,* 115 S.Ct. at 2144; *EMC Corp.,* 89 F.3d at 813. Accordingly, the district court's decision to accept or refuse jurisdiction is reviewed under an abuse of discretion standard. *EMC Corp.,* 89 F.3d at 813

### 2. *Motion to Dismiss*

In their motion, the defendants argue that Counts 2, 3 and 4 of this action should be dismissed in favor of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1997 WL 700496 (E.D.Pa.)
**(Cite as: 1997 WL 700496 (E.D.Pa.))**

the subsequently filed Texas litigation. First, the defendants state that these counts were added in their present form only after the Texas suit was filed. Thus, the defendants contend that the Southern District of Texas should hear Counts 2, 3, and 4 of the instant matter before this Court, because the Texas suit is the "first-filed" action. Second, the defendants claim that National Foam's inadequate investigation, as evidenced by its failure to join CCAI in its original complaint, was caused by National Foam's concern with winning the "race to the courthouse." This, they claim, is an abuse of the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), which was not meant to provide a potential defendant with a means of forum-shopping.

National Foam responds that this declaratory judgment action is appropriate under the circumstances, and that the matter before this Court is the "first-filed" action. Therefore, the plaintiffs argue that the Court should continue to entertain it under the principle that in all cases of concurrent federal jurisdiction the first-filed action should take precedence.

a. *The First-Filed Rule*

As between a mirror-image declaratory judgment action and an affirmative patent infringement action, the general rule favors the forum of the first-filed action, whether or not it is the declaratory action. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed.Cir.1993), *cert. denied, Regents of Univ. of Cal. v. Genentech, Inc.*, 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). In the instant matter, however, the parties are in dispute over which suit constitutes the "first-filed."

(1) *Count 2*

**\*4** As explained above, when National Foam initially filed its complaint seeking declaratory relief regarding the '461 patent, it failed to name CCAI as a defendant. CCAI, as the patent owner, is a necessary and indispensable party to the patent infringement action concerning the '461 patent. *Suprex Corp. v. Lee Scientific, Inc.*, 660 F.Supp. 89, 93 (W.D.Pa.1987). After CCAI filed its patent infringement action against National Foam in Texas, National Foam amended its complaint to include CCAI as a defendant in its declaratory judgment request.

CCAI now argues that because it was a necessary and indispensable party, the Texas case should be considered the "first-filed" because it was the first to include CCAI as a party. Further, CCAI contends that when a party is added through an amended complaint, the date of the amendment, rather than the date of the initial complaint, controls for first to file priority. Thus, CCAI reasons that the Texas action, filed prior to the amended complaint before this Court, is the first filed suit. The plaintiffs disagree, arguing that the date the complaint was originally filed with this Court controls. Thus, the issue before this Court is whether National Foam's amended pleading relates back to its initial filing of April 29, 1997.

The "first-filed rule, as its name indicates, is premised upon a priority of filing the complaint." *Peregrine Corp. v. Peregrine Indus., Inc.*, 769 F.Supp. 169, 172 (E.D.Pa.1991). However, when an amendment to the complaint adds a party, the priority is unclear. Although "the date of the amendment *seems* to be controlling when the amendment adds a party," 8 Donald S. Chisum, *Chisum on Patents,* § 21.02[4][b] at 21-206 (emphasis added), this assumption "is open to question." *Ronson Art Metal Works, Inc. v. Brown & Bigelow, Inc.*, 105 F.Supp. 169, 173 n. 4 (S.D.N.Y.), *aff'd,* 199 F.2d 760 (2d Cir.1952)./ [FN2]

> FN2. "This rule was assumed in the *Kerotest* case." 8 Donald S. Chisum, *Chisum on Patents,* § 21.02[4][b] at 21-206 n. 12 (citing *Kerotest Mfg. Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200).

Few courts have fully considered this issue in the context of a patent infringement case. The United States District Court for the Northern District of California discussed the applicability of Federal Rule of Civil Procedure 15(c)(2) to the first to file rule, but it recognized that:

> The Federal Circuit has yet to discuss the applicability of the relation back doctrine to patent infringement claims.
>
> ....
>
> [However, m]any of the cases dealing with relation back focus on whether fair notice was given to the opposing party. This interpretation agrees with the meaning underlying the intent of Rule 15.

*Applied Vision Inc. v. Optical Coating Lab., Inc.,* No. CIV.A.97-1233, 1997 WL 601425, at \*3-4 (N.D.Cal. Sept.23, 1997) (finding Rule 15(c)(2) applicable to the first-to-file analysis).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In *Optima, Inc. v. Republic Indus., Inc.,* No. CIV.A.94-3919, 1995 WL 72430 (E.D.La. Feb.21, 1995), the United States District Court for the Eastern District of Louisiana confronted the issue of whether the relation back doctrine applied to the first to file rule, when a plaintiff amended its complaint in order to add a party. *Id.* at *1. In *Optima, Inc.,* the plaintiff repeatedly spoke with the president of and counsel to Republic Industries, Inc. ("Republic") concerning the plaintiff's belief that Republic was infringing the plaintiff's patent. *Id.* When the parties were unable to amicably settle their dispute, the plaintiff filed a complaint in the United States District Court for the Eastern District of Louisiana and served Republic's president. *Id.* However, the plaintiff mistakenly named "Dor-O-Matic," the trade name used by Republic, as the defendant. *Id.* By the time the plaintiff amended its complaint two weeks later, adding Republic as a defendant, Republic had filed a declaratory judgment action in the Northern District of Illinois. *Id.*

**\*5** The *Optima, Inc.* court held that the plaintiff "was the first to file because its amended complaint relates back to the date of the original complaint." *Id.* (citing Fed.R.Civ.P. 15(c)). The court reasoned that because the plaintiff had corresponded with Republic's president and counsel regarding the allegedly infringed patent before filing suit and served its original complaint on Republic's president, Republic "should have known that 'but for a mistake concerning the identity of the proper party, the initial complaint would have been brought against it.' " *Id.* (quoting Fed.R.Civ.P. 15(c)). Further, the court stated that the plaintiff's "prompt amendment of its complaint has prevented any prejudice to Republic, and [the plaintiff] served the amended complaint within the required time under Rule 15(c)." *Id.* Thus, even though the plaintiff "kept Dor-O-Matic in the amended complaint as a precaution, instead of suing only Republic ... [the plaintiff's] amendment conforms to Rule 15(c)(3). *Id.* at *2.

The facts in the instant case are similar to those in *Optima, Inc.* Before Williams and CCAI filed in the Southern District of Texas, it is highly probable if not certain that Williams, as CCAI's licensee, told CCAI about the complaint before this Court. Thus, this Court finds that CCAI "should have known that 'but for a mistake concerning the identity of the proper party, the initial complaint would have been brought against it.' " *Id.* (quoting Fed.R.Civ.P. 15(c)). Further, the "prompt amendment of its complaint has prevented any prejudice to [CCAI], and [the plaintiff] served the amended complaint within the required

time under Rule 15(c)." *Id.* The sole distinguishing feature is that the *Optima, Inc.* plaintiff "kept Dor-O-Matic in the amended complaint as a precaution, instead of suing only Republic." *Id.* at *2. Thus, this Court must now consider whether the addition of CCAI, as a defendant and an indispensable party, and Boots & Coots, as a plaintiff, destroys the applicability of Rule 15(c)(3).

In *Wine v. EMSA Ltd. Partnership,* 167 F.R.D. 34, 37-38 (E.D.Pa.1996), the Honorable Judge Eduardo C. Robreno discussed the elements a court must consider when adding new defendants under the relation back provisions of Rule 15(c)(3):

As here, Plaintiff seeks to add new defendants, not new claims....

....

In deciding whether an amendment to add a new defendant relates back under Rule 15(c)(3), the focus of the Court is on whether the proposed new defendant had actual, constructive or imputed notice of the action within 120 days after the filing of the complaint or longer for good cause shown. Fed.R.Civ.P. 15(c)(3)(A); *Dean* [v. *Harold Ives Trucking* ], 1995 WL 540519 at *2 [ (E.D.Pa. Sept. 7, 1995) ]; *but see Cruz* [v. *City of Camden* ] 898 F.Supp. 1100, 1115 (D.N.J.1995) ] (actual notice of existence of litigation required to add newly named defendants). Notice may be imputed to proposed new parties ... " 'when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced.' " *Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc.,* 801 F.Supp. 1450, 1456 (E.D.Pa.1992) (quoting *Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 101-02 (1st Cir.1979)).

**\*6** *Wine,* 167 F.R.D. at 37-38.

Moreover, a similar analysis must be conducted when new plaintiffs are added. "In order to preserve this protection, the relation-back rule requires plaintiffs to show that the already commenced action sufficiently embraces the amended claims so that defendants are not unfairly prejudiced by these late-coming plaintiffs and that plaintiffs have not slept on their rights." *Nelson v. County of Allegheny,* 60 F.3d 1010, 1014 (3d Cir.1995), *cert. denied,* 516 U.S. 1173, 116 S.Ct. 1266, 134 L.Ed.2d 213 (1996). Thus, "[w]hile a literal reading of Rule 15(c)(3) might suggest that the mistake element only applies to misnamed or misdescribed parties, 'the Rule is widely-understood to allow the addition of new parties that were never originally named or

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 700496 (E.D.Pa.)
**(Cite as: 1997 WL 700496 (E.D.Pa.))**

described.' " *Wine,* 167 F.R.D. at 38 n. 7 (citations omitted).

Thus, the sole distinguishing feature in *Optima, Inc.* is immaterial. Although the amended complaint added Boots & Coots and CCAI, both CCAI and Williams would not be prejudiced in " 'assembling evidence and constructing a defense.' " *Nelson,* 60 F.3d at 1015 (quoting *Curry v. Johns-Manville Corp.,* 93 F.R.D. 623, 626 (E.D.Pa.1982)). This finding is premised on the fact that CCAI and Williams filed suit against National Foam and Boots & Coots in Texas, and thus have already started to prepare for a suit including CCAI and Boots & Coots. Further, as explained above, this Court finds that CCAI and Williams knew or should have known that, but for National Foam's mistake, CCAI would have been originally included in National Foam's original complaint. Therefore, the amended complaint adding Boots & Coots and CCAI falls within Rule 15(c)(3)'s ambit.

(2) *Counts 3 and 4*

Counts 3 and 4 before this Court were originally filed as Counts 3 through 7 in the Texas case. The defendants argue that the first to file rule therefore favors maintenance of this suit in Texas.

As stated above, the "Federal Circuit has yet to discuss the applicability of the relation back doctrine to patent infringement claims." *Applied Vision, Inc.,* 1997 WL 601425, at \*3. However, the few courts that have confronted this issue have found that the relation back doctrine should apply to amended complaints including additional issues. *See Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 424 (2d Cir.1965), *cert. dismissed,* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966) (finding plaintiff's original complaint controlled for first to file priority, even though defendant's later complaint in another district first raised issues plaintiff later included in amended complaint); *Applied Vision, Inc.,* 1997 WL 601425, at \*4 (applying relation back provision of Rule 15 to later amended complaint including additional issues); 8 Donald S. Chisum, *Chisum on Patents,* § 21.02[4][b] at 21-206 ("The priority rule relates to the date of the filing of the action between the parties, not the date when the issues were added by amendment of the pleadings or otherwise.").

\*7 This Court adopts the reasoning of these courts and holds that National Foam's original complaint controls for first to file purposes. The additional claims filed by the defendants in Texas raised similar issues to those presented in the ongoing dispute before this Court. Thus, the suit before this Court "was the first suit which made possible the presentation of all issues and which, by amendment of the complaint did raise all the substantial issues between the parties." *Mattel, Inc.,* 353 F.2d at 424.

This Court finds that the plaintiffs' amended complaint filed on June 9, 1997 relates back to its initial filing of April 29, 1997. National Foam's original filing preceded the defendants' filing in Texas. Thus, the plaintiffs were the first to file this case.

b. *First-Filed Rule Exceptions*

The general rule favors the forum of the first-filed action, whether or not it is the declaratory action. *Genentech, Inc.,* 998 F.2d at 937-38 (citing *Kerotest Mfg. Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200). However, this presumption is not unrebuttable. *Novo Nordisk of North America, Inc. v. Genentech, Inc.,* 874 F.Supp. 630, 632 (S.D.N.Y.1995). Exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech,* 998 F.2d at 937. Recognized exceptions include "when the choice of the forum of the first-filed case was the result of pure forum shopping, if the balance of convenience favors the second forum, or if the first filed action is against a customer of the alleged infringer and the second involves the infringer himself." *Novo Nordisk,* 874 F.Supp. at 632. The Court may also depart from the rule based on general considerations of "judicial and litigant economy" and **the just and effective disposition of disputes.**" *Serco Servs.,* 51 F.3d at 1039. "Thus, 'the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.' " *Id.* (quoting *Genentech,* 998 F.2d at 938).

c. *Forum-Shopping Exception Applies*

The purpose of the Declaratory Judgment Act is "to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Genentech,* 998 F.2d at 937. *See Serco Servs.,* 51 F.3d at 1039. In many cases, the declaratory defendant is prepared to, and does, file its own affirmative suit shortly afterwards. Therefore, a district court cannot dismiss a proper declaratory action merely because affirmative infringement litigation is subsequently brought elsewhere. *Genentech,* 998 F.2d at 938. It

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                  Page 6
Not Reported in F.Supp., 1997 WL 700496 (E.D.Pa.)
**(Cite as: 1997 WL 700496 (E.D.Pa.))**

may, however, dismiss the action where it is shown that the declaratory action was filed in anticipation of the impending litigation and motivated solely by considerations of forum shopping. *See Serco Servs.,* **51 F.3d at 1040;** *Novo Nordisk,* 874 F.Supp. at 633. Such a case falls outside the Act's purpose, in the patent context, of providing a remedy where a patentee delays suit in order to further damage the alleged infringer's business. *See* 10A Charles A. Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2761 (1983).

**\*8** In *Serco Services,* the Federal Circuit upheld the Northern District of Texas' decision to dismiss a similar declaratory judgment action as anticipatory. Both the declaratory plaintiff, Serco, and the declaratory defendant, Kelley, manufactured loading dock equipment used in the trucking industry. *Serco Servs.,* **51 F.3d at 1037.** Kelley sent Serco a December 23, 1992, letter charging Serco with patent infringement, and giving Serco until February 1, 1993 to reply. *Id.* at 1038. Serco responded on January 29th with its conclusion that its product did not infringe. *Id.* Kelley took no action for over eight months. Finally, on September 8, 1993, Kelley sent Serco a letter that reiterated the charges and threatened suit if Serco did not comply by September 20th. *Id.* On the 20th, Serco notified Kelley that it continued to deny the charge of infringement, and that it had taken "the necessary action in Texas" to protect itself. *Id.* In fact, Serco had filed its declaratory judgment action in the Northern District of Texas on September 17th. *Id.* Therefore, on the 20th, Kelley filed its own patent infringement action in the Eastern District of Wisconsin. *Id.*

The Northern District of Texas dismissed Serco's declaratory judgment action in favor of Kelley's subsequent infringement action. *Id.* at 1039. The Court found that Serco's suit was filed in anticipation of Kelley's, and that the balance of convenience favored proceeding in the Wisconsin forum. The Federal Circuit affirmed, finding that the district court had not abused its discretion in relying on forum-shopping considerations, in combination with other factors, in its decision. *Id.* at 1039-40.

In the present case, the Court finds that National Foam, like Serco, filed its declaratory judgment action solely for forum-shopping purposes. As the plaintiffs' state in their Preliminary Opposition to the Motion to Dismiss, Stay, or Transfer, Williams initially demanded that National Foam cease and desist on March 3, 1997. In that letter, Williams' counsel informed National Foam that the "Williams

HydroFoam Nozzle has long been available and marked with its patent number." Purvis Aff. Ex. A. National Foam's counsel responded on March 20, 1997, when it claimed that "the '461 patent is invalid, and not infringed by our client's product." Purvis Aff. Ex. B at 1.

After National Foam became aware of Williams' allegations and similar product, National Foam wrote a cease and desist letter to Emergency One, a Williams customer. In that letter, National Foam claimed that "Williams' HOT SHOT II Balanced Pressure Foam Proportioning System ... infringes [National's] '487 patent." Purvis Aff. Ex. D at 1. On April 21, 1997, Williams' counsel responded to National Foam's March 20th letter, rejecting National Foam's position and again demanding that National Foam cease-and-desist. On April 24, 1997, Williams' counsel responded to National Foam's cease and desist letter to Emergency One, claiming that Williams' product did not infringe the '487 patent. Purvis Aff. Ex. E at 1. National Foam received this letter on April 28, 1997. National Foam filed its complaint with this Court the next day, alleging that Williams and Emergency One infringed its '487 patent. In fact, National Foam acted so quickly that it failed to investigate the '461 patent to determine the owner. Thus, although National Foam sought declaratory relief concerning the '461 patent dispute, it failed to include CCAI as a defendant.

**\*9** As the communications between the parties indicate, National Foam threatened Emergency One only after Williams first sent National Foam a cease and desist letter. Thus, National Foam's strategy is clear. Instead of attempting to resolve its dispute with Williams, it chose to deny Williams' allegations while finding a Williams customer to threaten with a cease and desist letter of its own. While Williams' counsel sent three letters in an attempt to resolve this dispute, National Foam waited for a response from its own cease and desist letter to Emergency One. The day after Williams' counsel denied the allegations made against its customer by National Foam, National Foam filed the instant law suit. As stated previously, National Foam filed so quickly it failed to conduct research to determine the correct owner of the '461 patent, instead mistakenly naming Williams as the owner.

Permitting this case to go forward would discourage similar efforts at informal resolutions and promote "irresponsible litigation." *See Davox Corp. v. Digital Sys. Int'l, Inc.,* 846 F.Supp. 144, 148 (D.Mass.1993) (dismissing declaratory judgment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 7
Not Reported in F.Supp., 1997 WL 700496 (E.D.Pa.)
**(Cite as: 1997 WL 700496 (E.D.Pa.))**

action filed for forum-shopping purposes alone). National Foam employed a different type of subterfuge as the *Serco* plaintiff, but its actions constitute a similar attempt to preempt the "natural plaintiff" in its choice of forum.

In *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* the Federal Circuit explained the type of situation that the Declaratory Judgment Act was meant to prevent:

[A] patent owner engages in a *danse macabre,* brandishing a Damoclean threat with a sheathed sword.... Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity.... Before the Act, competitors victimized by the tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

*Arrowhead Indus. Water, Inc.,* 846 F.2d 731, 734-35 (Fed.Cir.1988). Obviously, Williams never placed National Foam in this type of position when National Foam filed the instant suit. Instead, National Foam brought this action as an offensive tactic, in an attempt to ensure this litigation took place in Pennsylvania. Therefore, the Court finds that National Foam filed its declaratory action solely for forum-shopping purposes.

### d. Judicial and Litigant Economy Favors Dismissal

Whether or not forum-shopping alone is a sufficient basis for dismissal, in this case considerations of judicial and litigant economy further counsel dismissal. *See Serco Servs.,* 51 F.3d at 1039. Considerations relevant to judicial and litigant economy include "the convenience and availability of witnesses," the possible "absence of jurisdiction over all necessary or desirable parties, ... the possibility of consolidation with related litigation, [and] considerations relating to the real party in interest." *Genentech, Inc.,* 998 F.2d at 938 (citations omitted). Further, considerations such as "the importance of conservation of judicial resources and the comprehensive disposition of litigation" may mandate dismissal. *Id.*

**\*10** The location of the witnesses and documents, as

well as the local interests, justifies dismissal of Counts 2, 3, and 4 in favor of the Texas suit. As the defendants argue, several witnesses relevant to Counts 2, 3, and 4 reside in Texas. The power of the Court to subpoena these witnesses may be necessary. Moreover, most of the documents and records relating to the '461 patent appear to be located in Texas. Although the plaintiffs may have witnesses from outside Texas, the operative facts relating to Counts 2, 3, and 4 appear to invoke a greater need for witnesses from Texas than Pennsylvania. The plaintiffs argue that the witnesses related to the '487 patent reside in Pennsylvania and Vermont, but the '487 patent is relevant only to the first count. Thus, the location of relevant documents and necessary witnesses favors maintenance of this suit in the Southern District of Texas.

Moreover, "the importance of conservation of judicial resources and the comprehensive disposition of litigation" would "make it unjust or inefficient to continue the first-filed action" in the present case. *Genentech, Inc.,* 998 F.2d at 938. First, this Court notes that CCAI has had very minimal contacts with Pennsylvania. Although this Court declines to rule on whether it has personal jurisdiction over defendant CCAI, it finds that litigation involving defendant CCAI would best be conducted in the Southern District of Texas. Second, on August 29, 1997, the United States District Court for the Southern District of Texas ordered that motions by these parties before the court would not be decided until this Court decided the instant motion./ [FN3] Thus, this case can be heard in Texas without interruption and without duplicative proceedings from this Court. Although duplicative proceedings could be avoided by enjoining the Texas action, doing so would unduly reward National Foam's forum-shopping conduct. Accordingly, this Court grants the defendants' motion to dismiss Counts 2, 3, and 4.

FN3. The only valid argument the plaintiffs raise to dispute these findings is that the Southern District of Texas might dismiss Baker as a plaintiff for lack of personal jurisdiction. However, the plaintiffs deliberately procured these circumstances by Baker's own motion to dismiss. The Court will not allow the plaintiffs to raise Baker's possible absence in the Texas litigation as grounds for continuing this litigation.

### B. Count 1

The sole issue remaining is whether to retain

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 700496 (E.D.Pa.)
**(Cite as: 1997 WL 700496 (E.D.Pa.))**

jurisdiction over Count 1 of the plaintiffs' complaint. In light of this Court's decision to dismiss Counts 2, 3, and 4, the Court also grants the defendants' motion to transfer Count 1 to the Southern District of Texas, pursuant to 28 U.S.C. § 1404(a)./ [FN4] The Southern District is now the only forum where "all of the related patent claims pending between the parties can be resolved." _Davox Corp._, 846 F.Supp. at 149. The parties agree that the factual issues necessary to resolve the defendants' and plaintiffs' claims will substantially overlap. Defs.' Mot. to Dismiss or, Alternatively, Stay or Transfer at p. 22; Pls.' Prelim. Opp'n to Mot. to Dismiss, Stay, or Transfer at p. 51. "Since these cases, concerning similar technologies, will involve common discovery and witnesses, the cases should be heard in a single forum, to conserve judicial resources and to promote an efficient resolution of all the related matters pending between the parties." _Davox Corp._, 846 F.Supp. at 149 (citations omitted).   Therefore, this Court transfers Count 1 of plaintiffs' amended complaint to the Southern District of Texas.

> FN4. Section 1404(a) states:   "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1993).

_C. Motion to Stay_

**\*11** Given the Court's disposition on the Defendants' Motions to Dismiss and Transfer, it need not reach their alternative Motion to Stay. Likewise, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Subject Matter Jurisdiction is necessarily denied as moot.

An appropriate Order follows.

### ORDER

AND NOW, this 28th day of October, 1997, upon consideration of the Defendants' Motion to Dismiss, or, Alternatively, Stay or Transfer to the Southern District of Texas, and the Plaintiffs' opposition thereto, IT IS HEREBY ORDERED that:

1) the Defendants' Motion to Dismiss Counts 2, 3, and 4 of the Plaintiffs' Amended Complaint (Docket Nos. 20 and 27, Docket No. 21 is a copy of Docket No. 20) is GRANTED;

2) the Defendants' Motion to Transfer Count 1 of the Plaintiffs' Amended Complaint (Docket No. 20) is

GRANTED; and

3) the Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (Docket No. 17) and Subject Matter Jurisdiction (Docket No. 27) is DENIED AS MOOT.

Not Reported in F.Supp., 1997 WL 700496 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:97cv03105 (Docket) (Apr. 29, 1997)

END OF DOCUMENT

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.                                                                                         Page 1
Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)
**(Cite as: 1997 WL 667117 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
HUNT MANUFACTURING CO.
v.
FISKARS OY AB, Fiskars Holdings, Inc., and
Fiskars, Inc.
**No. Civ.A. 97-2460.**

Oct. 02, 1997.

Joseph F. Posillico, Synnestvedt & Lechner, Philadelphia, PA, for Hunt Manufacturing Co., plaintiff.

Anthony R. Twardowski, Wolf, Block, Schorr and Solis-Cohen, Phila, PA, David J. Harth, Joan L. Eads, Foley and Lardner, Madison, WI, Nancy Y.T. Hanewicz, Foley and Lardner, Madison, WI, for Fiskars OY AB, defendant.

Anthony R. Twardowski, David J. Harth, Joan L. Eads, Nancy Y.T. Hanewicz, (See above), for Fiskars Holdings, Inc., defendant.

Anthony R. Twardowski, David J. Harth, Joan L. Eads, Nancy Y.T. Hanewicz, (See above), for Fiskars, Inc., defendant.

**MEMORANDUM AND ORDER**

HUTTON, J.

*1 Presently before the Court are the Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue, and the Plaintiff's opposition thereto. Also before the Court are the Plaintiff's Motion to Enjoin Defendants from Pursuing Judicial Action in Other Forums, and Defendants' response thereto. For the following reasons, Defendants' Motion to Dismiss is GRANTED and Plaintiff's Motion to Enjoin is DENIED.

**I. BACKGROUND**

The Plaintiff, Hunt Manufacturing Co. ("Hunt"), is a Pennsylvania corporation based in Philadelphia. The Defendants are Fiskars Oy AB, a Finnish corporation, and its subsidiaries Fiskars Inc. and Fiskars Holdings, Inc., both Wisconsin corporations (collectively "Fiskars"). Both Hunt and Fiskars are in the business of making paper-cutting products.

Fiskars Oy AB is the owner of United States Patent No. 5,322,001 (the "001 patent"), and Fiskars Inc. is its exclusive licensee. The 001 patent, issued June 21, 1994, discloses a paper cutter with a circular blade, mounted on a track. Paper is placed on a flat surface and the circular cutter is drawn along the track to cut the paper.

Hunt manufactures and sells a similar rotary paper-cutter product under the "BOSTON®" brand name. Although not relevant to the procedural question before the Court, Hunt alleges that its product does not incorporate the specific aspects of Fiskars' product embraced by the 001 patent.

Earlier this year, Fiskars determined that Hunt's product infringed on the 001 patent. Therefore, on March 4, 1997, Fiskars' attorney sent a letter to Donald L. Thompson, Hunt's President and Chief Operation Officer, charging Hunt with patent infringement and unfair competition, and demanding that Hunt immediately cease and desist from such activity. The letter imposed a 14 day deadline to comply in all respects or else Fiskars would bring suit.

On March 10, 1997, Hunt's attorneys notified Fiskars that they had been asked to review the matter, and that they would communicate with Fiskars promptly after completing the review.

The March 18 deadline passed without Fiskars taking any action. Fiskars' attorneys finally called Hunt's on March 28, and Hunt's returned the call on March 31. Hunt's attorneys told Fiskars' that Hunt would give its response to the infringement charges by April 11, 1997.

Hunt filed the present declaratory judgment action in the Eastern District of Pennsylvania on April 10, 1997. Fiskars first learned of the action on April 14, and was served with summons and complaint on April 17. Fiskars then filed its own affirmative patent infringement suit in the Western District of Wisconsin on April 18, 1997.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)
(Cite as: 1997 WL 667117 (E.D.Pa.))

Page 2

In the Wisconsin litigation, Hunt sought only the dismissal of Fiskars, Inc. as a plaintiff against it in the action. *See Fiskars, Inc. v. Hunt Mfg. Co.*, No. 97-C-0255-C, slip op. at 1-2 (W.D.Wi. August 15, 1997) (dismissing plaintiff Fiskars, Inc. for lack of standing as a patentee under 35 U.S.C. § 281 (1994)). Hunt apparently did not file a motion to dismiss the Wisconsin litigation or transfer venue to this Court.

## II. DISCUSSION

*2 In the present motion, Fiskars asks the Court either to dismiss this action or transfer venue to the Western District of Wisconsin. Hunt opposes the motion, and further requests that the Court enjoin the Wisconsin litigation.

### A. *Jurisdiction Under the Declaratory Judgment Act*

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1994), provides that:

> In a case of *actual controversy* within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

To demonstrate the presence of an actual controversy the declaratory plaintiff must show that (1) it has acted, or has made preparations to act, in a way that could constitute infringement, and (2) the patentee has created in the declaratory plaintiff a reasonable apprehension of suit for infringement. *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed.Cir.1995). In the present case, the parties do not dispute that Hunt has designed and sold a rotary paper-cutter similar to that disclosed in the 001 patent. Likewise, there is little question that Fiskars' March 4th letter to Hunt placed Hunt in reasonable apprehension of being sued for infringement. Therefore, the case presents a controversy sufficient to establish this Court's capacity to hear the case under the Declaratory Judgment Act.

However, the presence of an actual controversy, while providing authority, does not require the Court to accept jurisdiction over a declaratory judgment action. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed.Cir.1996), *cert. denied*, 519 U.S. 1101, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997). The Act's "may" language gives the Court "unique and substantial discretion in deciding whether to declare

the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). It grants the Court leeway in which to make **"a reasoned judgment whether the investment of time and resources will be worthwhile."** *Serco Services*, 51 F.3d at 1039. Both the Supreme Court and the Federal Circuit have emphasized recently that the Act is an *enabling act* that provides the courts with the power, rather than the obligation, to grant relief. *See Wilton*, 115 S.Ct. at 2144; *Norand*, 89 F.3d at 813. Accordingly, the district court's decision to accept or refuse jurisdiction is reviewed under an abuse of discretion standard. *Norand*, 89 F.3d at 813.

### B. *Motion to Dismiss*

In their motion, the Defendants argue that this action should be dismissed in favor of the subsequently filed Wisconsin litigation. They state that Hunt mislead them of its intention to bring the present action for the sole purpose of winning the "race to the courthouse." This, they claim, is an abuse of the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), which was not meant to provide a potential defendant with a means of forum-shopping. Hunt responds that this declaratory judgment action was appropriate under the circumstances, and that the Court should continue to entertain it under the principle that in all cases of concurrent federal jurisdiction the first-filed action should take precedence.

#### 1. *First-Filed Rule and Exceptions*

*3 Hunt is correct that as between a mirror-image declaratory judgment action and affirmative patent infringement action, the general rule favors the forum of the first-filed action, whether or not it is the declaratory action. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed.Cir.1993) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). However, this presumption is not so firm as Hunt suggests. *Novo Nordisk of North America, Inc. v. Genentech, Inc.*, 874 F.Supp. 630, 632 (S.D.N.Y.1995). Exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech*, 998 F.2d at 937. Recognized exceptions include "when the choice of the forum of the first-filed case was the result of pure forum shopping, if the balance of convenience favors the second forum, or if the first filed action is against a customer of the alleged infringer and the second involves the infringer himself." *Novo Nordisk*, 874 F.Supp. at 632. The Court may also depart from the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)
(Cite as: 1997 WL 667117 (E.D.Pa.))

rule based on general considerations of "judicial and litigant economy" and "**the just and effective disposition of disputes.**" *Serco Services,* 51 F.3d at 1039. "Thus, the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served." *Id.* (quoting *Kerotest, 342 U.S. at 184).*

## 2. *Forum-Shopping Exception Applies*

The purpose of the Declaratory Judgment Act is "to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Genentech, 998 F.2d at 937. See Serco Services,* 51 F.3d at 1039. In many cases, the declaratory defendant is prepared to, and does, file its own affirmative suit shortly afterwards. Therefore, a district court cannot dismiss a proper declaratory action merely because affirmative infringement litigation is subsequently brought elsewhere. *See Genentech,* 998 F.2d at 938. It may, however, dismiss the action where it is shown that the declaratory action was filed in anticipation of the impending litigation and motivated solely by considerations of forum shopping. *See Serco Services,* 51 F.3d at 1040; *Novo Nordisk,* 874 F.Supp. at 633. Such a case falls outside the Act's purpose, in the patent context, of providing a remedy where a patentee delays suit in order to further damage the alleged infringer's business. *See* 10A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2761 (1983).

In *Serco Services,* the Federal Circuit upheld the Northern District of Texas' decision to dismiss a similar declaratory judgment action as anticipatory. Both the declaratory plaintiff, Serco, and the declaratory defendant, Kelly, manufactured loading dock equipment used in the trucking industry. *Serco Services,* 51 F.3d at 1037. Kelly sent Serco a December 23, 1992 letter charging Serco with patent infringement, and giving Serco until February 1, 1993 to reply. *Id.* at 1038. Serco responded on January 29th with its conclusion that its product did not infringe. *Id.* Kelly took no action for over eight months. Finally, on September 8, 1993, Kelly sent Serco a letter that reiterated the charges and threatened suit if Serco did not comply by September 20th. *Id.* On the 20th, Serco notified Kelly that it continued to deny the charge of infringement, and that it had taken "the necessary action in Texas" to protect itself. *Id.* In fact, Serco had filed its declaratory judgment action in the Northern District of Texas on September 17th. *Id.* Therefore, on the

20th, Kelley filed its own patent infringement action in the Eastern District of Wisconsin. *Id.*

**\*4** The Northern District of Texas dismissed Serco's declaratory judgment action in favor of Kelly's subsequent infringement action. *Id.* at 1039. The Court found that Serco's suit was filed in anticipation of Kelley's, and that the balance of convenience favored proceeding in the Wisconsin forum. The Federal Circuit affirmed, finding that the district court had not abused its discretion in relying on forum-shopping in combination with other factors. *Id.* at 1039-40.

In the present case, the Court finds that Hunt, like Serco, filed its declaratory judgment action solely for forum-shopping purposes. Fiskars believed that Hunt would enter settlement negotiations, as it had in a previous infringement dispute. Its demand letter was merely the first step in the process. Fiskars' failure to bring suit at the conclusion of the fourteen day period indicates not that Fiskars was "hanging the Sword of Damocles" over Hunt, but that Fiskars hoped to settle matters without litigation. Hunt's declaratory judgment action cut short the possibility of extra-judicial settlement. Permitting this case to go forward would discourage similar efforts at informal settlement and promote "irresponsible litigation." *See Davox Corp. v. Digital Sys. Int'l, Inc.,* 846 F.Supp. 144, 148 (D.Mass.1993) (dismissing declaratory judgment action filed for forum-shopping purposes alone).

Hunt seeks to portray Fiskars as wielding its claim of infringement in a menacing manner, to place a cloud over Hunt's business. However, Hunt does not allege that Fiskars took any threatening action other than sending its demand letter. Fiskars did not, for example, publicize its claim or threaten Hunt's customers with suit. Instead, Hunt employed the same subterfuge as Serco in an attempt to preempt the "natural plaintiff" in its choice of forum. Hunt's only purpose for bringing this action on the 10th must have been to surprise Fiskars and have this litigation take place in Pennsylvania rather than Wisconsin. Therefore, the Court finds that Hunt filed its declaratory action solely for forum-shopping purposes.

## 3. *Judicial and Litigant Economy Favors Dismissal*

Whether or not forum-shopping alone is a sufficient basis for dismissal, in this case considerations of judicial and litigant economy further counsel dismissal. *See Serco Services,* 51 F.3d at 1039.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4
Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)
**(Cite as: 1997 WL 667117 (E.D.Pa.))**

In the Wisconsin litigation, Hunt did not move to dismiss or transfer the proceedings to this Court. Instead, it sought and obtained only the dismissal of Fiskars, Inc. As a result, the Wisconsin litigation continued, and has already been scheduled for trial. Therefore, if the Court does not dismiss this matter there will be duplicative proceedings, wasting the resources of both the litigants and the federal judiciary.

Hunt argues that the Western District of Wisconsin's dismissal of Fiskars, Inc. as a plaintiff means that only this litigation can afford Hunt complete relief. But Hunt deliberately procured these circumstances by its own motion to dismiss.   The Court will not allow Hunt to raise Fiskars, Inc.'s absence in the Wisconsin litigation as grounds for continuing this litigation.   Finally, although duplicative proceedings could be avoided by enjoining the Wisconsin action, doing so would unduly reward Hunt's forum-shopping conduct.

**C. *Motions to Transfer Venue and to Enjoin Judicial Action***

**\*5** Given the Court's disposition on Fiskars' Motion to Dismiss, it need not reach its alternative Motion to Transfer Venue.   Likewise, Hunt's Motion to Enjoin the Wisconsin action is necessarily denied as moot.

An appropriate Order follows.

### ORDER
AND NOW, this 30th day of September, 1997, upon consideration of the Defendants' Motion to Dismiss, or in the Alternative, To Transfer Venue, and the Plaintiff's opposition thereto, IT IS HEREBY ORDERED that the Defendant's Motion to Dismiss is **GRANTED.**

IT IS FURTHER ORDERED that Plaintiff's Motion to Enjoin Defendants from Pursuing Judicial Action in Other Forums is **DENIED** as moot.

Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:97cv02460 (Docket) (Apr. 10, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.