# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THALES AIRBORNE SYSTEMS S.A. and
THALES AVIONICS S.A.,

          Plaintiffs,

       v.

UNIVERSAL AVIONICS SYSTEMS
CORPORATION,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No 05-853 (SLR)


# UNIVERSAL'S MEMORANDUM OF LAW
## IN OPPOSITION TO THALES' MOTION TO
## ENJOIN AND IN SUPPORT OF ITS CROSS-MOTION
## <u>TO TRANSFER TO THE DISTRICT OF NEW JERSEY</u>


OF COUNSEL:

Scott J. Bornstein
Greenberg Traurig, LLP
200 Park Ave
34th Floor
New York, NY 10166
(212) 801-9200

Dated: January 18, 2006

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendant*
*Universal Avionics Systems Corp.*

## TABLE OF CONTENTS

I.    Introduction ........................................................................................................... 1

II.   Argument ............................................................................................................... 3

   A.   The New Jersey Court Has Jurisdiction ...................................................... 3

   B.   The First-Filed Rule is Not Absolute ......................................................... 5

   C.   Neither Action Should be Afforded First-Filed Status ............................. 6

   D.   The Presence of Two Additional Patents in the New Jersey Action Further
        Renders the "First-Filed" Rule Inapplicable ........................................... 10

   E.   Regardless of Whether the Delaware Action is Viewed as First-Filed, the Court
        Should Deny Plaintiffs' Motion to Enjoin .............................................. 11

   F.   An Exception to the First-Filed Rule is Applicable in this Case ............. 11

   G.   Delaware Has No Ties to the Present Dispute or to the Parties .............. 12

   H.   The Thales Entities Have Significant Ties to New Jersey ....................... 13

   I.    The Other Arguments Made by Plaintiffs are Wholly Without Merit .......... 13

III.  The Court Should Transfer this Action to the  District Court for the District of
      New Jersey ........................................................................................................... 15

IV.   Conclusion ........................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*APV N. America v. Sig Simonazzi N. America, Inc.*,
295 F. Supp. 2d 393 (D. Del. 2002) ..............................................................10, 11

*Affinity Memory & Micro, Inc. v. K & Q Enterprises*,
20 F. Supp. 2d 948 (E.D. Va. 1998) ...................................................................7

*Arrow Communication Laboratoriess, Inc. v. John Mezzalingua Associates, Inc.*,
2005 WL. 2786691 (D. Del. Oct. 26, 2005) ..........................................................5

*Bayer Bioscience N.V. v. Monsanto Co.*,
2003 WL. 1565864 (D. Del. Mar. 25, 2003) .........................................................6

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*,
265 F. Supp. 2d 445 (D. Del. 2003) ....................................................................8

*Citibank, N.A. v. Affinity Processing Corp.*,
248 F. Supp. 2d 172 (E.D.N.Y. 2003) ..................................................................7

*Clopay Corp. v. Newell Cos.*,
527 F. Supp. 733 (D. Del. 1981) .......................................................................11

*Datex-Ohmeda, Inc. v. Hill-Rom Services, Inc.*,
185 F. Supp. 2d 407 (D. Del. 2002) ....................................................................9

*E.E.O.C. v. University of Pa.*,
850 F.2d 969 (3d Cir. 1988) ...............................................................5, 10, 13, 14

*Electronics for Imaging, Inc. v. Coyle*,
394 F.3d 1341 (Fed. Cir. 2005) .....................................................................3, 4, 11

*Fina Oil & Chemical Co. v. Ewen*,
123 F.3d 1466 (Fed. Cir. 1997) ...........................................................................3

*Genentech, Inc. v. Eli Lilly & Co.*,
998 F.2d 931 (Fed. Cir. 1993) ..........................................................................4, 9

*In re IBP S'holders Litigation*,
2001 WL. 406292 (Del. Ch. Apr. 18, 2001) ...........................................................7

*Jumara v. State Farm Insurance Co.*,
55 F.3d 873 (3d Cir. 1995) ...............................................................................15

*Laboratory Corp. of America Holdings v. Chiron Corp.*,
384 F.3d 1326 (Fed. Cir. 2004) ...........................................................................8

ii

*Matsushita Battery Industrial Co. v. Energy Conversion Devices, Inc.*,
  1996 WL 328594 (D. Del. Apr. 23, 1996) ................................................................. 9

*Mellon Bank, N.A. v. IBJ Schroder Bank & Trust Co.*,
  1989 WL 200443 (W.D. Pa. Aug. 17, 1989) ............................................................ 15

*Narco Avionics, Inc. v. Sportsman's Market, Inc.*,
  1992 WL 74192 (E.D. Pa. Mar. 30, 1992) ............................................................... 12

*Ontel Products v. Project Strategies Corp.*,
  899 F. Supp. 1144 (S.D.N.Y. 1995) ......................................................................... 7

*Osteotech, Inc. v. GeneralSci Regenaration Sciences, Inc.*,
  6 F. Supp. 2d 349 (D.N.J. 1998) ............................................................................. 11

*Schmitt v. JD Edwards World Solutions Co.*,
  2001 WL 590039 (N.D. Cal. May 18, 2001) ............................................................. 7

*Smiths Industrial Medical System, Inc. v. Ballard Medical Products, Inc.*,
  728 F. Supp. 6 (D.D.C. 1989) ................................................................................. 12

*Spectronics Corp. v. H.B. Fuller Co.*,
  940 F.2d 631 (Fed. Cir. 1991) ............................................................................. 4, 5

*Symbol Techs. Inc. v. Data General Corp.*,
  40 U.S.P.Q. 2d 1216 (S.D.N.Y. 1996) .................................................................. 6, 7

*Universal Premium Acceptance Corp. v. Oxford Bank & Trust*,
  2002 WL 31898217 (D. Kan. Dec. 10, 2002) .......................................................... 7

*Virgin Wireless, Inc. v. Virgin Enterprise Ltd.*,
  201 F. Supp. 2d 294 (D. Del. 2002) ......................................................... 6, 11, 13, 16

## STATUTES

28 U.S.C. § 1404(a) ................................................................................... 15, 16

28 U.S.C. § 2201(a) (2000) .............................................................................. 3

Defendant, Universal Avionics Systems Corporation ("Universal"), submits this memorandum of law in opposition to plaintiffs Thales Airborne Systems S.A.'s ("Thales Airborne") and Thales Avionics S.A.'s ("Thales Avionics") (collectively, "Thales") motion to enjoin Universal from prosecuting its pending litigation in the United States District Court for the District of New Jersey[1] and in support of its cross-motion to transfer this action, pursuant to 28 U.S.C. § 1404(a), to the District of New Jersey.

## I.     **Introduction**

This action -- as well as the action filed virtually contemporaneously by Universal in the District of New Jersey -- concerns alleged infringement and invalidity of certain patents owned by Thales that generally relate to avionics systems for aircraft.[2]  Plaintiff Thales Airborne is a French corporation with corporate headquarters in Elancourt, France.  Plaintiff Thales Avionics is a French corporation with corporate headquarters in Neuilly, France.  Defendant Universal is an Arizona corporation with its principal place of business in Tucson, Arizona.   None of the parties are incorporated or domiciled in Delaware; and, upon information and belief, none of the potential witness are located in this jurisdiction.

The accused product is Universal's Terrain Awareness and Warning System (TAWS).  On May 26, 2005, Elliot E. Polebaum, counsel for Thales, sent a letter to J. L. Naimer, the President of Universal.  The subject of the correspondence was "Thales S.A.

---

[1] The action filed by Universal in the District of New Jersey is styled *Universal Avionics Systems Corporation v. Thales S.A., Thales Airborne Systems S.A. and Thales Avionics S.A.*, Civ. Action No. 05-CV-5764 (the "New Jersey action").  For the purposes of this memorandum, the instant case is referred to as the "Delaware action."

[2] U.S. Patent Nos. 5,488,563 (the "'563 patent") and 5,638,282 (the "'282 patent") are at issue in the instant action.  The New Jersey action involves these same two patents.  But, U.S. Patent Nos. 5,414,631 (the "'631 patent") and 6,088,654 (the "'654 patent") are also at issue in the New Jersey action.

1

Patent Licensing." (Ex. 1).[3]  Mr. Polebaum indicated that he was "writing to [Universal] on behalf of [his] client Thales S.A. [which] owns a portfolio of patents relating to Terrain Awareness and Warning Systems (TAWS) technologies." *Id.*  Mr. Polebaum identified four specific Thales S.A. patents that allegedly relate to TAWS technology, as follows.

> Because your company manufactures a TAWS product, we would like to bring to your attention patents belonging to Thales relating to TAWS technology that may be of interest to you.  Enclosed are: (1) U.S. Patent No. 5,488,563, to Chazelle et al.; (2) U.S. Patent No. 5,638,282, to Chazelle et al.; (3) U.S. Patent No. 5,414,631, to Denoize et al.; and (4) U.S. Patent No. 6,088,654, to Lepere et al ; all relate to TAWS technology. *Id.*

After a responsive communication from counsel for Universal, Thales wrote another letter on July 28, 2005.  (Ex. 2).  In that correspondence, Thales threatened Universal with infringement.  Relevant text is reprinted below for convenience.

> We believe that none of your points provides a plausible basis for concluding that the Universal TAWS device does not practice the Thales patents.  Accordingly, we think it appropriate that we begin to negotiate the terms by which Thales would license use of the patents to Universal.  (Ex. 2).

Importantly, the July 28 correspondence identified all four Thales S.A. patents previously mentioned in the May 26 letter.

In addition to exchanging correspondence, counsel for the parties engaged in detailed discussions relating to the four patents raised in previous communications.  As part of those discussions, Universal and Thales entered into a standstill agreement that was repeatedly extended "through and including December 9 [2005]."  (Ex. 3).  The standstill agreement established that neither party would institute litigation until its

---

[3] All referenced exhibits are attached to the Declaration of Allan A. Kassenoff filed simultaneously herewith.

expiration. The need for a standstill agreement independently demonstrates that litigation between the parties was realistic; and the expiration of the agreement on December 10, 2005 created a reasonable apprehension that a suit could be imminent. Rather than continuing to wait for Thales to bring an infringement lawsuit, Universal exercised its right to file a declaratory judgment action in order to remove itself from the "shadow of threatened litigation." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1470 (Fed. Cir. 1997).

On December 12, 2005, Universal filed a declaratory judgment action against Thales S.A. in the District of New Jersey asserting non-infringement and invalidity of the '563, '282, '631 and '654 patents. As it turned out, Thales filed this action on the same day, alleging that Universal's TAWS infringed the '563 and '282 patents.

## II.    Argument

### A.    The New Jersey Court Has Jurisdiction

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a) (2000).

"A declaratory action allows a party 'who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side.'" *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993)). Declaratory judgment actions are particularly well-suited to dispose of threats of patent infringement litigation. "We have stated that

3

'the purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights.'" *Id.* at 1346 (quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc*, 824 F.2d 953, 956 (Fed. Cir. 1987)).

"To meet the requirements of the Declaratory Judgment Act there must be a 'case of actual controversy,' as the Constitution requires for any invocation of federal judicial authority." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993) (citation omitted). The Federal Circuit has set forth the following two-prong test for determining if there is an actual case and controversy in actions seeking a declaratory judgment of patent invalidity and/or non-infringement.

> First, the accused infringer must have actually produced or prepared to produce an allegedly infringing product. The first prong 'looks to the accused infringer's conduct and ensures that the controversy is sufficiently real and substantial.' Second, the patent holder's conduct must create an objectively reasonable apprehension on the part of the accused infringer that the patent holder will initiate suit if the allegedly infringing activity continues. *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991) (quoting *Lang v. Pacific Marine and Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990)) (internal citations omitted).

Universal first introduced TAWS in 1998.[4] Accordingly, the first prong of the *Spectronics* test is clearly met. The correspondence and related discussions between the parties beginning on May 26, 2005, as well as the expiration of the standstill agreement, "create[d] an objectively reasonable apprehension on the part of" Universal that litigation

---

[4] Universal's Answer contains an affirmative defense of laches due to the inexcusable delay -- approximately eight (8) years -- between Universal's introduction of TAWS and the inception of this litigation

could be imminent.[5] *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d at 634. As such, the second prong of the *Spectronics* test is also met. Based on these facts, the District of New Jersey has jurisdiction over Universal's declaratory judgment action.

### B.   The First-Filed Rule is Not Absolute

Thales filed its Complaint in Delaware on December 12, 2005 at 8:34 a.m. (Ex. 4). The New Jersey action was filed that same day, at 9:46 a.m. (Ex. 5). Based on this seventy-two (72) minute differential, Thales asserts that the first-filed rule requires dismissal of the New Jersey action. But, that argument is misplaced for several reasons. First, as Thales acknowledged in its moving brief, the first-filed rule does not create an absolute requirement that the second action filed be stayed or dismissed. (Plaintiffs' Motion to Enjoin at 5; D.I. 5). To the contrary, the Third Circuit has expressly noted that "courts have consistently recognized that the first-filed rule 'is not a rigid or inflexible rule to be mechanically applied . . . .'" *E.E.O.C. v. University of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)). A court's power to enjoin a subsequently filed proceeding "is not a mandate directing wooden application of the [first-filed] rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *E.E.O.C. v. University of Pa.*, 850 F.2d at 972.

In *Arrow Communication Labs., Inc. v. John Mezzalingua Assocs., Inc.*, 2005 WL 2786691, at *1, 4 (D. Del. Oct. 26, 2005) (Robinson, J.), this Court granted defendant's

---

[5] The fact that Thales filed an infringement action against Universal at virtually the same time that Universal filed the New Jersey action provides further evidence of the reasonableness of Universal's apprehension.

motion to transfer a patent infringement case to the Northern District of New York where a declaratory judgment action had been filed. The transfer was ordered despite the fact that defendant was incorporated in Delaware and the Delaware action had been filed three days earlier than the New York action. The Court's decision in *Arrow* was not altered by the fact "that the parties have taken significant steps to advance the instant litigation in the District of Delaware. The parties have exchanged initial disclosures, are set to explore settlement with the magistrate judge, and have arranged a schedule for litigation, with trial set to occur in about one year." *Id.* at *4.

Similarly, in *Virgin Wireless, Inc. v. Virgin Enter. Ltd.*, 201 F. Supp. 2d 294, 295, 298 (D. Del. 2002) (Robinson, J.), this Court granted defendant's motion to transfer the case to the Eastern District of New York, the site of a parallel action filed more than six (6) weeks after the Delaware action. *See also Bayer Bioscience N.V. v. Monsanto Co.*, 2003 WL 1565864, at *1, 2 (D. Del. Mar. 25, 2003) (granting defendant's motion to transfer the case to the Eastern District of Missouri, the site of a parallel action filed subsequent to the Delaware action).

C.    **Neither Action Should be Afforded First-Filed Status**

According the Delaware action first-filed status would be elevating form over substance. As indicated above, Thales filed the Delaware action approximately one (1) hour earlier than Universal filed its Complaint in the District of New Jersey. In fact, the disparity is not even that dramatic. The Clerk's office in the District of Delaware opens at 8:30 a.m. while the Clerk's office in the District of New Jersey does not open until 9:00 a.m. In other words, there was no possible way that Universal could have been the first to file. Under these circumstances, Thales should not be afforded first-filed status. *Symbol Techs. Inc. v. Data Gen. Corp.*, 40 U.S.P.Q.2d 1216, 1217 (S.D.N.Y. 1996)

6

(declining to apply the "first-filed case" rule when the approximate 9-hour difference in filing was "due to the fact that the Southern District has a night depository box and accepts papers for filing at all hours, and the Western District does not").

Many courts have refused to apply the first-filed rule when two cases are filed on the same day (let alone one hour apart). *See, e.g., Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 175 (E.D.N.Y. 2003) ("[M]ost of the cases in this Circuit have disregarded the first filed rule where the competing suits were filed only days apart."); *Symbol Techs., Inc. v. Data Gen. Corp.*, 40 U.S.P.Q.2d at 1217 ("[W]here the cases are filed merely days apart, the first-filed rule is usually disregarded."); *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 2002 WL 31898217, at *2 (D. Kan. Dec. 10, 2002) ("[W]hen competing actions are filed within a short time of each other, courts may disregard the first-filed rule."); *Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995) (the first-filed rule held inapplicable where competing suits were filed on same day); *Affinity Memory & Micro, Inc. v. K & Q Enters.*, 20 F. Supp. 2d 948, 954-56 (E.D. Va. 1998) (case transferred to second court and rigid application of first-filed rule deemed unwarranted because second action was filed only two weeks after first action); *Schmitt v. JD Edwards World Solutions Co.*, 2001 WL 590039, at *2 (N.D. Cal. May 18, 2001) (the first to file rule "does not control in this situation" because the suits were filed only hours apart and there was substantial evidence that the first-filed suit was filed preemptively). State courts in Delaware have applied the same rule. *See, e.g., In re IBP S'holders Litig.*, 2001 WL 406292, at *7 (Del. Ch. Apr. 18, 2001) (unpublished) (noting that first-filed doctrine "does not denude a trial court of all discretion simply based on the fact that one party won a filing race in a photo-finish"

7

and holding that Delaware courts have considered such actions as "filed contemporaneously").[6]

The cases cited by plaintiffs in support of their argument that the first-filed rule "applies even in situations where the subsequent action was instituted shortly after the complaint in the first action was filed" are inapposite. (Plaintiffs' Motion to Enjoin at 6; D.I. 5). Specifically, none of plaintiffs' cited cases support the notion that courts must blindly adhere to the first-filed rule. Although the fact that the Delaware action was filed first is one factor that may be considered, each of the cited decisions also involved significant connections between the parties and Delaware, which are notably absent in the instant case.

For example, in *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 265 F. Supp. 2d 445 (D. Del. 2003), the court granted plaintiff's motion to enjoin a second filed action in Indiana. However, in addition to the fact that the Delaware action was filed 1.5 hours earlier than the Indiana action, the following connections to Delaware existed: the plaintiff's principal place of business was in Delaware; all of plaintiff's 1,800 employees were based in Delaware; both defendants were Delaware corporations; and, most importantly, the dispute arose out of a confidentiality agreement entered into between the parties, which, as the court noted, provided that "[a]ny dispute over the Confidentiality Agreement can only be decided in a state or federal court within Delaware." *Id.* at 446, 449. Accordingly, the fact that the Delaware action was filed first was not the controlling factor in the *Chase* Court's decision. *See also Laboratory Corp. of Am. Holdings v*

---

[6] Arguably, the Federal Rules of Civil Procedure also support treating cases filed on the same day as filed simultaneously. For example, the answers to two different complaints, both filed and served in the same manner, but one at 9:00 a.m. and the other at 9:00 p.m. on the same day, would both be due on the same day at any time

*Chiron Corp.*, 384 F.3d 1326, 1332-33 (Fed. Cir. 2004) (in affirming the District Court's granting of plaintiff's motion to enjoin a subsequently filed lawsuit, the Federal Circuit never addressed Chiron's argument that "two actions . . . filed on the same day . . . should be treated as filed simultaneously." Instead, the court simply held that the district court did not abuse its discretion in finding that "'the parties are Delaware corporations; the parties conduct business on a national basis, including in Delaware' and 'the prior California litigation involving some of the patents in issue was filed in 1998, resolved by settlement and was not filed against plaintiffs.'") (quoting *Laboratory Corp. of Am. Holdings v. Chiron Corp.*, No. 03-364-SLR (D. Del. Aug. 4, 2003)); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d at 938 (noting that "there were sound reasons presented for Genentech's choice of the Indiana forum, for in its suit Genentech joined Lilly, an Indiana corporation, and sought consolidation with suits already pending in Indiana"); *Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002) (in declining to transfer the case to Indiana, the site of the second filed case, the court stated that it "is persuaded that Delaware has an interest in adjudicating this action because it involves two Delaware corporations"); *Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.*, 1996 WL 328594, at *1, 4 (D. Del. Apr. 23, 1996) (in enjoining the second filed action in the Eastern District of Michigan, the court noted that both defendants were incorporated in Delaware and "'[a]bsent some showing of a unique or unexpected burden, these corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient'") (quoting *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993)). The cases cited by

Thales are readily distinguishable. The Court should not apply the first-filed rule to the Delaware action.

**D.    The Presence of Two Additional Patents in the New Jersey Action Further Renders the "First-Filed" Rule Inapplicable**

As indicated above, the '631 and '654 patents were asserted in the New Jersey action, but not in the Delaware action. The absence of these two patents from the instant action provides an additional basis to hold the first-filed rule inapplicable. It is well-settled that the purpose of the first-filed rule is to prevent "concurrent duplicative litigation of the <u>same issues</u> between the <u>same parties</u> in more than one federal court." *APV N. Am. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 396 (D. Del. 2002) (citing *E.E.O.C. v. University of Pa.*, 850 F.2d at 971-72) (emphasis added).

In *APV*, defendant made a motion to transfer a Delaware case to the Eastern District of Texas, where it had previously filed a patent action alleging infringement of five patents. *Id.* at 395. The Delaware case was filed four months later, and sought a declaration of non-infringement and invalidity of the five patents at issue in the Texas action, along with two additional patents. *Id.* at 395-96.[7] In response to defendant's motion to transfer, APV argued that "the first-filed rule is inapplicable, because the Texas action does not involve the same patents as the Delaware action." *Id.* The Court agreed, and stated that: "[I]n sum, the Court finds that the Texas action and the Delaware action are not the same, because they implicate different patents and different technologies. Thus, the Court concludes that the first-filed rule is inapplicable to this case." *Id.* at 398.

The facts in *APV* are analogous to the instant case. Because the '631 and '654 patents were not asserted by Thales in Delaware, but are the subject of the New Jersey

---

[7] Additionally, APV asserted a claim for infringement of two patents that it owned. *Id.* at 396.

action, the cases "implicate different patents." Because the entire dispute between the parties could not be resolved by the Delaware action, the first-filed rule should not be applied. *Id.* at 398; *see also Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 357 (D.N.J. 1998) (holding that the first-filed rule did not apply because "although the New Jersey and California Actions are similar, they are not the same. The California Action involves three patent claims not at issue in the New Jersey action and, as well, three California tort claims.").

### E. Regardless of Whether the Delaware Action is Viewed as First-Filed, the Court Should Deny Plaintiffs' Motion to Enjoin

As a preliminary matter, while courts may apply a preference for the forum selected by a plaintiff, "[t]he preference . . . is not adopted blindly or without reason. [Rather], Courts expect that plaintiffs' choices will generally reflect their rational and legitimate concerns." *Clopay Corp. v. Newell Cos.*, 527 F. Supp. 733, 736 (D. Del. 1981). Furthermore, Thales' preference for Delaware is entitled to little, if any, weight because they have not chosen their "home turf." *Virgin Wireless, Inc. v. Virgin Enter. Ltd.*, 201 F. Supp. 2d at 300. Plaintiffs are each French corporations with no significant ties to this District. They are not incorporated in Delaware; nor do they have any physical presence in Delaware. This is clearly not their "home turf." As such, their choice of forum should not be given any preference.

### F. An Exception to the First-Filed Rule is Applicable in this Case

Even if the Court were inclined to apply the first-filed rule, "considerations of judicial and litigant economy, and just and effective disposition of disputes" suggest otherwise. *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d at 1347 (citation omitted). The very same concerns contemplated by the Federal Circuit in *Electronics for Imaging*

11

are present here. Thales originally threatened Universal with infringement of the '563, '282, '631, and '654 patents -- the patents at issue in the New Jersey action. But, the instant action only alleges infringement of the '563 and '282 patents. Accordingly, the Delaware action will not fully dispose of the current dispute between the parties. If this case were to go forward and the Court were to find the '563 and '282 patents invalid and/or not infringed by Universal, notwithstanding obvious laches issues, plaintiffs could conceivably file another action alleging infringement of the previously threatened '631 and '654 patents. "It clearly would be more efficient to try all related issues in a single action. This principle is particularly germane to a patent case." *Narco Avionics, Inc. v. Sportsman's Mkt., Inc.*, 1992 WL 74192, at *2 (E.D. Pa. Mar. 30, 1992); *see also Smiths Indus. Med. Sys., Inc. v. Ballard Med. Prods., Inc.*, 728 F. Supp. 6, 7 (D.D.C. 1989) ("Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable."). Litigating the entire dispute in New Jersey will prevent "piecemeal litigation."

### G.    Delaware Has No Ties to the Present Dispute or to the Parties

Delaware has virtually no connection to the conduct at issue in this case. Upon information and belief, no witnesses or documents are located in Delaware. In fact, no party to this suit is incorporated in or has an actual place of business in Delaware. To the contrary, plaintiffs are both French corporations with corporate headquarters in France. Thus, there would be no hardship on Thales if the litigation proceeded in New Jersey. Delaware has no interest in this dispute.

Moreover, as set forth above, Universal is incorporated in Arizona and has its principal place of business there as well. Thales could have -- and perhaps should have -- brought this suit in Arizona. The fair presumption is they selected Delaware as a matter

12

of forum shopping.[8]  Granting plaintiffs' motion to enjoin would reward gamesmanship

by plaintiffs, and is wrong as a matter of public policy.  *E.E.O.C. v. University of Pa.*,

850 F.2d at 976 ("Bad faith and forum shopping have always been regarded as proper

bases for departing from the [first-filed] rule.") (citation omitted); *Virgin Wireless, Inc. v.*

*Virgin Enter. Ltd.*, 201 F. Supp. 2d at 301.

### H.    The Thales Entities Have Significant Ties to New Jersey

Each of the plaintiffs in the instant case as well as Thales S.A., an additional party

to the New Jersey action, have significant ties to New Jersey.  Thales conducts business

in New Jersey through Thales Avionics, Inc., located in Edison, New Jersey.  (Ex. 6 at

page 5).  According to literature published by Thales, "Thales Avionics, Inc., based in

Edison, New Jersey, is one of the major support centers for Thales Avionics worldwide."

(Ex. 7).  Because the patents-in-suit all relate to avionics systems for aircraft and New

Jersey is "now Thales world wide headquarters for avionics support," plaintiff Thales

Avionics, plaintiff Thales Airborne, and Thales S.A. all have substantial ties to New

Jersey in connection with their avionics business.  (Ex. 8 at page 2).

### I.    The Other Arguments Made by Plaintiffs are Wholly Without Merit

Thales asserted various additional arguments in support of its motion to enjoin.

However, each of these arguments is easily discounted.  First, plaintiffs assert that "it is

indisputable that Universal has sued the wrong defendant in the New Jersey action."

(Plaintiffs' Motion to Enjoin at 7; D.I. 5.)  However, the fact that Universal sued Thales

---

[8] In fact, virtually the only "connection" to Delaware asserted by plaintiffs is the fact that "Universal already has litigated two patent infringement suits in this District brought by Honeywell Corporation." (Plaintiffs' Motion to Enjoin at 9; D.I. 5.)  However, this assertion is of no moment  Different parties and patents were involved in the Honeywell cases; and the cases were litigated and tried before Magistrate Judge Thynge while the instant action has been assigned to Chief Judge Robinson.  If Thales truly believed the previous litigations involving Universal were relevant, they would have filed the instant action as a related case.  They did not.

S.A. -- rather than Thales Airborne and Thales Avionics -- is irrelevant for two reasons. First, Universal sued Thales S.A. based on representations by counsel for Thales in the May 26, 2005 correspondence. There, counsel represented incorrectly that Thales S.A. was the patent owner. (Ex. 1) ("I am writing to you on behalf of my client Thales S.A. [which] owns a portfolio of patents relating to Terrain Awareness and Warning Systems (TAWS) technologies.")). Universal should not be penalized because they relied upon misinformation provided by Thales. *E.E.O.C. v. University of Pa.*, 850 F.2d at 976. Even if Thales S.A. is not the rightful owner of the patents (as plaintiffs now contend), Universal filed an Amended Complaint in New Jersey on December 30, 2005, adding Thales Airborne and Thales Avionics as co-defendants. (Ex. 9).

Plaintiffs also allege that the New Jersey action will likely be delayed "at least several more months" as a result of Universal having to serve the Amended Complaint on the foreign defendants under Hague Convention procedures. (Plaintiffs' Motion to Enjoin at 7; D.I. 5). This argument, however, is specious at best. First, upon information and belief, service of the Amended Complaint pursuant to Hague Convention procedures will likely take approximately two (2) to four (4) weeks. Furthermore, while a courtesy copy of Universal's Amended Complaint was previously provided to counsel for Thales, they refused to accept informal service, thereby causing Universal to incur unnecessary cost and the resulting delay. In short, service of the Amended Complaint will not result in undue delay sufficient to support plaintiffs' motion to enjoin.

Curiously, Thales also argued that the instant action is further along than the New Jersey case. This argument is legally irrelevant and factually incorrect. Both cases are in the initial pleadings phase. Discovery has not begun in either case; nor has a Rule 26

14

discovery conference been scheduled. In reality, the Delaware action has a one-hour head start. That is certainly not a sufficient basis to argue that the Delaware case is further along; nor does it justify enjoining the New Jersey action. *Mellon Bank, N.A. v. IBJ Schroder Bank & Trust Co.*, 1989 WL 200443, at *6 (W.D. Pa. Aug. 17, 1989) (stating that "even if we assume that Mellon filed this action first, the minimal difference in filing time would further support our decision to depart from the 'first-filed' rule. In particular, no discovery or pretrial procedures have occurred, to our knowledge, in this district. Thus, no judicial inefficiency or duplication of efforts will result from requiring the parties to litigate their dispute in New York.").

### III.    The Court Should Transfer this Action to the District Court for the District of New Jersey

Title 28 U.S.C. § 1404(a) (1996) governs motions to transfer. It provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

According to the seminal case of *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), the following factors should be considered in deciding a motion to transfer, pursuant to 28 U.S.C. § 1404(a):

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in

15

> deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. (Citations omitted).

As indicated above, Thales' preference for Delaware should not be "given . . . much deference because they have not chosen their 'home turf.'" *Virgin Wireless, Inc. v. Virgin Enter. Ltd.*, 201 F. Supp. 2d at 300. Accordingly, the first *Jumara* factor should carry no weight in this determination. The second factor, defendant's preference, obviously favors New Jersey. The remaining factors do not favor either venue. But, that does not end the inquiry. Section 1404(a) expressly sets forth "the interest of justice" as a primary consideration regarding the transfer of a civil action. For the reasons stated above in connection with Universal's opposition to Thales' motion to enjoin, the interest of justice favor transfer. These interests include the lack of a physical presence by any of the parties in Delaware, that none of the parties are incorporated in Delaware, and the fact that Thales has a significant presence in New Jersey. In addition, as indicated above, despite threatening infringement of the '563, '282, '631 and '654 patents, Thales only asserted the '563 and '282 patents in the instant case. Thus, resolution of the Delaware action could not dispose of all remaining issues between the parties. In the interest of justice, this Court should transfer the pending action to New Jersey.

## IV.    Conclusion

For the foregoing reasons, Universal respectfully requests that plaintiffs' motion to enjoin Universal's New Jersey action should be denied and Universal's cross-motion to transfer this action to the District of New Jersey, pursuant to 28 U.S.C. § 1404(a), should be granted.

OF COUNSEL:

Scott J. Bornstein
Greenberg Traurig, LLP
200 Park Ave,
34th Floor
New York, NY  10166
(212) 801-9200

Dated:  January 18, 2006

_____
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE   19899
(302) 651-7700
*Attorneys for Defendant*
*Universal Avionics Systems Corp.*

17

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2006, I electronically filed the foregoing Rule 7.1

Disclosure Statement with the Clerk of Court using CM/ECF which will send notification of

such filing(s) to the following and which has also been served as noted:

### BY HAND

Steven J. Balick
John G. Day
Tiffany Geyer Dydon
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P. O. Box 1150
Wilmington, DE   18999


I hereby certify that on January 18, 2006, the foregoing document was sent to the

following non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Elliot E. Polebaum
Deneen J. Melander
Fried Frank Harris Shriver & Jacobson LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC   20004

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com