# EXHIBIT 1

# FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

1001 Pennsylvania Avenue, NW
Washington, DC 20004-2505
Tel: 202.639.7000
Fax: 202.639.7003
www.friedfrank.com

Direct Line:  7067
Fax:  202-639-7008
elliot.polebaum@friedfrank.com

May 26, 2005

*Via Federal Express*

J. L. Naimer, President
Universal Avionics
3260 E. Universal Way
Tucson, AZ 85706

Re:    Thales S.A. Patent Licensing

Dear Mr. Naimer:

I am writing to you on behalf of my client Thales S.A. Thales owns a portfolio of patents relating to Terrain Awareness and Warning System (TAWS) technologies. Because your company manufactures a TAWS product, we would like to bring to your attention patents belonging to Thales relating to TAWS technology that may be of interest to you. Enclosed are: (1) U.S. Patent No. 5,488,563, to Chazelle et al.; (2) U.S. Patent No. 5,638,282, to Chazelle et al.; (3) U.S. Patent No. 5,414,631, to Denoize et al.; and (4) U.S. Patent No. 6,088,654, to Lepere et al.; all relate to TAWS technology.

I would like to arrange a meeting between Thales representatives and Universal representatives to discuss the Thales portfolio and the possibility of Universal's obtaining a license to the patented technology. Please contact me at your earliest convenience regarding this matter.

Sincerely,

Elliot E. Polebaum

Enclosures



EXHIBIT

1

# EXHIBIT 2

# FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

1001 Pennsylvania Avenue, NW
Washington, DC 20004-2505
Tel: 202.639.7000
Fax: 202.639.7003
www.friedfrank.com

*Confidential*

Direct Line: (202) 639-7067
elliot.polebaum@friedfrank.com

July 28, 2005

**By Facsimile**

Scott Bornstein, Esq.
Greenberg Traurig LLP
MetLife Building
200 Park Avenue
New York, NY 10166

Dear Scott:

We have considered further the points you made at our meeting on July 19, 2005, and in your earlier letter dated July 15, 2005, regarding the Thales patents that we have brought to your attention. We believe that none of your points provides a plausible basis for concluding that the Universal TAWS device does not practice the Thales patents. Accordingly, we think it appropriate that we begin to negotiate the terms by which Thales would license use of the patents to Universal. Please let me know at your earliest convenience whether Universal is prepared to enter into such negotiations with Thales.

At our meeting, we agreed to give you a written response to the points you raised. You and we have further agreed that our exchanges are confidential, subject to Rule 408 of the Federal Rules of Evidence, may not be used in any subsequent proceedings, and do not constitute any waiver of the attorney client privilege and/or work product doctrine. On that understanding, our response to your points is as follows:

**I.    Mass Memory Means.**

First, the "mass memory means" element of both Claim 1 of U.S. Patent 5,488,563 (the "'563 Patent") and Claim 1 of U.S. Patent 5,638,282 (the "'282 Patent") is not a means-plus-function element, subject to §112(6) of the Patent Act, because the element contains sufficient structure to perform the claimed function. Therefore, interpreting the claim language by looking

New York • Washington • Los Angeles • London • Paris
A Delaware Limited Liability Partnership



FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Letter to Scott Bornstein, Esq.
July 28, 2005
Page 2

to the structure disclosed in the specification and its equivalents is not warranted. Instead, this claim element must be construed in accordance with standard claim-construction principles and be given its plain meaning to one of ordinary skill in the art.

### A.   Relative Altitude Values.

At the July 19 meeting, you argued that the "mass memory means" element of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent and the "mass memory" element of Claim 20 of the '563 Patent require the use of relative altitude values for storing terrain data. Proper claim construction, however, would not allow reading into these elements such a relative altitude limitation. First, a person of ordinary skill in the art would not conclude that the elements "mass memory" or "mass memory means" require such a limitation. To add such a limitation would violate the Federal Circuit's repeated admonition, most recently re-affirmed in *Phillips v. AWH Corp.*, that one should avoid importing limitations from the specification into the claims.

Additionally, the principle of claim differentiation prevents the "mass memory means" element of Claim 1 of the '563 Patent from having the same scope as its dependent Claim 8, which specifically adds the limitation of using relative altitude values. Claim differentiation also prevents reading the relative altitude value limitation into the "mass memory" element of Claim 20 because its dependent Claim 24 adds the precise limitation of using relative altitude values. If the relative altitude limitation were already part of Claims 1 and 20, there would be no reason to have claims 8 and 24.

Regardless, the Universal TAWS infringes the Thales patents under the doctrine of equivalents, because the memory device of the Universal TAWS is equivalent to the claimed memory.

### B.   Updated by A Data Processing Device.

You also claimed in your July 15, 2005 letter and at our meeting that the "mass memory means" element of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent and the "mass memory" element of Claim 20 of the '563 Patent requires regular updating by a data processing device "[o]n the ground, outside the aircraft." It would be improper, however, to import this limitation from the specification into these claims because a person of ordinary skill in the art would not interpret a mass memory means to require a data processing device on the ground outside the aircraft. These claims relate to means for storing, not updating, a database. Even if these claims were subject to §112(6), this limitation is not properly read into the claims because it is not part of the structure disclosed in the specification corresponding to the claimed function.

If one accepted your construction for the sake of argument and added the "updating on the ground, outside the aircraft" limitation, the Universal TAWS practices the "mass memory means" element of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent. As specified in the Product Summary found in Tab E of the attachments that we provided at the July 19 meeting

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Letter to Scott Bornstein, Esq.
July 28, 2005
Page 3

(the "Attachments"), the Universal terrain database is stored in "internal flash memory." Additionally, page 48 of the TAWS Operator's Manual (Tab G of the Attachments), states that: "Installation and update of Airport and Terrain databases are accomplished through Universal's Flight Management System and DTU [Data Transfer Unit]-100. If there is not a Universal FMS installed, TAWS is updated directly from the DTU-100 using an IBM compatible computer." You also explained to us that Universal does in fact update its TAWS using a data processing device on the ground. Such a configuration practices the "mass memory means" element of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent. Even if one assumed for the sake of argument that the Universal TAWS does not infringe directly the "mass memory" element, an assumption with which we do not agree, the device infringes under the Doctrine of Equivalents.

Finally, we note that your means-plus-function argument fails to address Claim 20 of the '563 Patent, a method claim.

II.    Validation.

During the July 19 meeting, you asserted that the independent claims of the '563 and '282 Patents in some way require the validation of data. Reading in such a requirement would also be an improper importation of a limitation from the specification into the claims. The principle of claim differentiation also shows that Claims 1 and 20 of the '563 Patent do not include a requirement of data validation because such a requirement is included in dependent Claims 2 and 21, respectively.

III.    Input Means.

You stated in your letter and at our meeting your view that the Universal TAWS does not practice the "input means" limitation of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent because the Universal TAWS does not receive a velocity vector into the terrain alerting function. This is incorrect for several reasons. Claim 1 of the '282 Patent, for example, states as follows: "input means for receiving status indications representing . . . the velocity vector . . . ." This claim element only requires an input means that receives status indications representing the velocity vector and not the velocity vector itself. As the specification of the '282 Patent clearly discloses at Column 4, lines 51-61, these status indications may include the components of the vector, such as track and speed which the Universal TAWS does receive. Additionally, such status indications only need to be received by the input means and not by the alerting function/anti-collision means. In order to encompass the limitation that you suggest, Claim 1 of the '282 Patent would have to be written in a manner similar to Claim 7, in which the anti-collision means takes into account the velocity vector data. Claims 1 and 20 of the '563 Patent similarly do not require the velocity vector to be input into the alerting function. Because the Universal TAWS does accept as inputs the velocity and acceleration vectors, as well as speed and track information, it practices this element literally and under the Doctrine of Equivalents.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Letter to Scott Bornstein, Esq.
July 28, 2005
Page 4


IV.     Anticollision Processing Means.

In our meeting, you also asserted that the "anticollision processing means" of Claim 1 of the '563 Patent and the "anticollision means" element of Claim 1 of the '282 Patent somehow require use of curves, such as those described at Column 10, lines 1-12 of the '563 Patent. Such curves are not part of the structure disclosed in the specification corresponding to the claimed function. Furthermore, the doctrine of claim differentiation shows that this limitation cannot be included in Claim 1 of the '563 Patent and Claim 1 of the '282 Patent, because the disclosed curves are utilized in the specification in cases where the claimed condition or anticollision law includes consideration of or corresponds to a "piloting flight path for pulling up with a virtually maximum amplitude after a brief delay," limitations of dependent Claim 16 of the '563 Patent and dependent Claim 11 of the '282 Patent.

V.      U.S. Patents 5,414,631 (the "'631 Patent) and 6,088,654 (the "'654" Patent).

The arguments that you raised with regard to the '631 Patent and '654 Patents are very similar to those made with regard to the '563 Patent and '282 Patent. Accordingly, we refer you to the discussion above.


                                        Sincerely,

                                        *Elliot E. Polebaum* [signature]

                                        Elliot E. Polebaum

EEP:odr:271069

# EXHIBIT 3

**Bornstein, Scott (OfCnsl-NY-IP)**

| | |
|---|---|
| **From:** | Polebaum, Elliot E. [PolebEl@friedfrank.com] |
| **Sent:** | Wednesday, November 30, 2005 5:13 PM |
| **To:** | Bornstein, Scott (OfCnsl-NY-IP); PolebEl@friedfrank.com |
| **Subject:** | RE: Standstill/Meeting |

This will confirm that we have agreed to extend the standstill through and including
December 9.

Can you confirm a meeting on December 8?

-----Original Message-----
From: BornsteinS@gtlaw.com [mailto:BornsteinS@gtlaw.com]
Sent: Monday, November 14, 2005 12:46 PM
To: PolebEl@friedfrank.com
Subject: Re:


Ok with us. Let's shoot for the 22nd.
Scott Bornstein
Sent from my BlackBerry Wireless Handheld



---------------------------------------------------------

     Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under
Circular 230, we inform you that any U.S. federal tax advice contained in this
communication (including any attachments), unless otherwise specifically stated, was not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding
penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to
another party any matters addressed herein.


     The information contained in this transmission may contain privileged and
confidential information. It is intended only for the use of the person(s) named above.
If you are not the intended recipient, you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email administrator directly,
please send an email to postmaster@gtlaw.com.

---------------------------------------------------------


From: Polebaum, Elliot E. <PolebEl@friedfrank.com>
To: Polebaum, Elliot E. <PolebEl@friedfrank.com>; Bornstein, Scott (OfCnsl-NY-IP)
<BornsteinS@gtlaw.com>
CC: Melander, Deneen J. <MelanDe@friedfrank.com>
Sent: Mon Nov 14 12:03:25 2005
Subject: RE:

Scott,

     It appears that Thales will need a bit more time to collect the information that we
had planned to exchange on November 15. I suggest that we put this off until November 22.
If we can do it earlier, I will let you know. Regards.

-----Original Message-----
From: Polebaum, Elliot E. [mailto:PolebEl@friedfrank.com]
Sent: Thursday, November 03, 2005 5:55 PM
To: BornsteinS@gtlaw.com; PolebEl@friedfrank.com

EXHIBIT
3

1

Subject: RE:

We have now agreed to extend the standstill through and including December 2, 2005.

-----Original Message-----
From: BornsteinS@gtlaw.com [mailto:BornsteinS@gtlaw.com]
Sent: Friday, October 14, 2005 5:37 PM
To: PolebEl@friedfrank.com
Subject: Re:

Agreed.

-----------------------------------------------------------

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

    The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

-----------------------------------------------------------

From: Polebaum, Elliot E.
To: Scott Bornstein
To: PolebEl@ffhsj.com
Cc: MelanDe@ffhsj.com
Sent: Oct 14, 2005 3:31 PM
Subject: RE:

We've agreed to extend through and including Friday, November 4.  Regards.

-----Original Message-----
From: BornsteinS@gtlaw.com [mailto:BornsteinS@gtlaw.com]
Sent: Wednesday, September 07, 2005 5:24 PM
To: PolebEl@friedfrank.com
Cc: MelanDe@friedfrank.com
Subject: RE:

Agreed.  Thanks.  Scott

-----------------------------------------------------------

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

    The information contained in this transmission may contain privileged and

2

confidential information.  It is intended only for the use of the person(s) named above.
If you are not the intended recipient,  you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email administrator directly,
please send an email to postmaster@gtlaw.com.

-------------------------------------------------------------

From: Polebaum, Elliot

------Original Message Truncated------

Scott Bornstein
Sent from my BlackBerry Wireless Handheld

Confidentiality Notice: The information contained in this e-mail and any attachments may
be legally privileged and confidential. If you are not an intended recipient, you are
hereby notified that any dissemination, distribution or copying of this e-mail is strictly
prohibited. If you have received this e-mail in error, please notify the sender and
permanently delete the e-mail and any attachments immediately. You should not retain, copy
or use this e-mail or any  attachment for any purpose, nor disclose all or any part of the
contents to any other person. Thank you .                         Confidentiality Notice:
The information contained in this e-mail and any attachments may be legally privileged and
confidential. If you are not an intended recipient, you are hereby notified that any
dissemination, distribution or copying of this e-mail is strictly prohibited. If you have
received this e-mail in error, please notify the sender and permanently delete the e-mail
and any attachments immediately. You should not retain, copy or use this e-mail or any
attachment for any purpose, nor disclose all or any part of the contents to any other
person. Thank you .

Confidentiality Notice: The information contained in this e-mail and any attachments may
be legally privileged and confidential. If you are not an intended recipient, you are
hereby notified that any dissemination, distribution or copying of this e-mail is strictly
prohibited. If you have received this e-mail in error, please notify the sender and
permanently delete the e-mail and any attachments immediately. You should not retain, copy
or use this e-mail or any  attachment for any purpose, nor disclose all or any part of the
contents to any other person. Thank you .

3

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THALES AIRBORNE SYSTEMS S.A., and THALES AVIONICS S.A., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| UNIVERSAL AVIONICS SYSTEMS CORPORATION, | ) ) ) |
| Defendant. | ) |

C.A. No. _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Thales Airborne Systems ("Thales Airborne") and Thales Avionics S.A. ("Thales Avionics") (collectively "Thales") for their Complaint against Defendant Universal Avionics Systems Corporation ("Universal") hereby allege as follows:

### Nature of the Claim

1.    This civil action involves the willful infringement of United States Patents -- Numbers 5,488,563 ("the '563 Patent") and 5,638,282 ("the '282 Patent") (collectively, the "Thales Patents"). This claim is based on the Patent Laws of the United States, 35 U.S.C. §§ 100 *et seq*. Copies of the Thales Patents are attached hereto as Exhibits A and B.

### The Parties

2.    Plaintiff Thales Airborne is a French corporation with its corporate headquarters at 2, avenue Gay Lussac, 78851 Elancourt, France.

3.    Plaintiff Thales Avionics is a French corporation with its corporate headquarters at 45, rue de Villiers, 92526 Neuilly, France.

4.    Defendant Universal is an Arizona corporation with its principal place of business at 3260 E. Universal Way, Tucson, AZ 85706.

## Jurisdiction and Venue

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.    This Court has personal jurisdiction over Universal because Universal regularly transacts business in this district and markets and sells its infringing products in this district.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

## The Thales Patents

8.    On January 30, 1996, the '563 Patent, entitled "Method and Device for Preventing Collisions With the Ground for an Aircraft," was duly and legally issued to Dassault Electronique S.A., a predecessor of Thales Airborne, as assignee.

9.    On June 10, 1997, the '282 Patent, entitled "Method and Device for Preventing Collisions With the Ground for an Aircraft," was duly and legally issued to Dassault Electronique S.A., a predecessor of Thales Airborne, as assignee.

10.    Thales Airborne has granted a license of the Thales Patents to Thales Avionics, which also has the right to enforce the Thales Patents and to sue and to recover for infringement of the Thales Patents.

## Universal's Infringement of the Thales Patents

11.    Thales and Universal are competitors in the market for avionics equipment, including terrain awareness and warning systems ("TAWS").

12.    Universal makes, uses, imports, offers to sell and/or sells TAWS products, which it refers to as its Class A and Class B TAWS products (the "Universal TAWS Products").

2

13.    The Universal TAWS Products infringe at least one claim of each of the Thales Patents, either literally or with only insubstantial differences.

14.    Thales has been and will continue to be injured by Universal's infringement of the Thales Patents and is without an adequate remedy at law.

15.    Thales put Universal on notice of Universal's infringement of the Thales Patents no later than May 27, 2005, by a letter from Thales' counsel dated May 26, 2005 (attached as Exhibit C). Nevertheless, Universal has continued to make, sell or offer for sale its infringing TAWS products.

16.    Universal's infringement has been, and continues to be willful, so as to warrant enhancement of the damages awarded as a result of its infringement.

### Prayer for Relief

WHEREFORE, Thales prays for judgment as follows:

A.    That Universal has willfully infringed the Thales Patents;

B.    That Universal, its officers, agents, servants and employees, and persons in active concert or participation with any of them, are preliminarily and permanently enjoined from making, using, importing, offering for sale, or selling the Universal TAWS Products and any other product that infringes, or induces or contributes to the infringement of, the Thales Patents, prior to the expiration of the Thales Patents, including any extensions;

C.    That Thales be awarded monetary relief adequate to compensate Thales for Universal's acts of infringement within the United States prior to the expiration of the Thales Patents, including any extensions, and, due to the willful nature of Universal's infringement, that any such monetary relief be trebled and awarded to Thales with prejudgment interest;

3

D.    That Thales be awarded the attorneys' fees, costs and expenses that it incurs prosecuting its claim for infringement; and

E.    That Thales be awarded such other and further relief as this Court deems just and proper.

ASHBY & GEDDES

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Thales Airborne S.A. and Thales Avionics S.A.*

OF COUNSEL:

Elliot E. Polebaum
Deneen J. Melander
FRIED FRANK HARRIS SHRIVER &
    JACOBSON LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel.: (202) 639-7000
Fax: (202) 639-7004

Dated: December 12, 2005
164481 1

# EXHIBIT 5

**GREENBERG TRAURIG, LLP**
Douglas R. Weider (DW-5396)
200 Campus Drive
Florham Park, NJ 07932
(973) 360-7900
(973) 301-8410 (fax)

**GREENBERG TRAURIG, LLP**
William G. Todd
Scott J. Bornstein
200 Park Avenue, 34th Floor
New York, NY 10166
(212) 801-2100

Attorneys for Plaintiff
Universal Avionics Systems Corp.

RECEIVED-CLERK
U.S. DISTRICT COURT

2005 DEC 12  A 9:46

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNIVERSAL AVIONICS SYSTEMS CORP., | ) | Civil Action No. 05-_____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| THALES S.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Universal Avionics Systems Corporation ("Universal"), for its Complaint against defendant Thales S.A. ("Thales"), states as follows.

### The Parties

1.    Plaintiff Universal Avionics is a corporation organized and existing under the laws of the State of Arizona, having its principal place of business for Terrain Awareness and Warning Systems (TAWS), the subject of this dispute, in Tucson, Arizona.

2.      Universal is a leading manufacturer of avionics systems used worldwide. It's products are designed for a full range of aircraft types from helicopters to corporate turbine aircraft and large commercial airliners.

3.      Founded in 1981, Universal is currently composed of four divisions including (1) Research, Development and Engineering; (2) Manufacturing; (3) Marketing; and (4) Instrument and a supporting independent subdivision (American Panel Corporation).

4.      Product offerings include TAWS, a complete line of flight management systems, cockpit instrument displays, a cockpit/ground communications datalink, navigation position sensors, satellite communications, a cabin information/entertainment system and cockpit voice recorders.

5.      Thales S.A. is a French corporation with a principal place of business at 45 rue de Villiers, 92526 Neuilly Sur Seine Cedex, France.  Upon information and belief, Thales S.A. conducts business in this jurisdiction, both individually and through its wholly-owned subsidiary Thales Avionics, Inc.  This entity is a New Jersey company with its principal place of business at 3920 Park Avenue, Edison, New Jersey 08820.

6.      The principal activities of Thales are grouped into the following areas: AIR: radars, electronic warfare systems and missile electronics; AVIONICS: systems and equipment for civil and military aircraft including flight control and navigation; COMMUNICATION: tactical mobile and defense communication networks; INFORMATION SYSTEMS & SERVICES: development of service-oriented business, development support in commercial computing and related services; NAVAL: integrated naval combat systems for warships, submarines and undersea warfare; OPTRONICS: detection, guidance and optronic warfare equipment and systems for air, land-based, naval and space applications; AIR SECURITY &

MISSILES: ground-based detection and missile systems, armaments and propulsion; and TUBES & COMPONENTS: professional electron tubes, image-intensification tubes for medical and industrial applications.

<u>Jurisdiction and Venue</u>

7.    This is a civil action arising under the patent laws of the United States, Title 35 of the United States Code and The Declaratory Judgment Act. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c).

<u>Nature of the Dispute</u>

8.    In or about November 1998, Universal introduced its Terrain Awareness and Warning System. TAWS is designed to provide the pilot with increased situational awareness and reduce the possibility of accidents associated with Controlled Flight Into Terrain (CFIT). TAWS takes information from onboard sensors along with flight path intent information from a Flight Management System and combines these with its own internal worldwide terrain database. The resulting "look-ahead" capability can provide warnings and alerts well in advance of potential hazards. Universal has continuously manufactured and sold TAWS throughout the United States and abroad since introduction.

9.    On May 9, 1995, the United States Patent and Trademark Office ("USPTO") issued United States Patent No. 5,414,631 entitled "Collision-Avoidance Device for Aircraft, Notably for Avoiding Collisions with the Ground" (the "'631 patent"). Upon information and belief, the '631 patent was assigned to Sextant Avionique, which was formed in 1989 when Thomson-CSF and Aerospatiale merged their avionics subsidiaries. In 1998, Thomson-CSF became the sole shareholder in Sextant Avionique to form Thomson-CSF Sextant, now known as

Thales Avionics S.A. Upon information and belief, the '631 patent is presently owned by defendant Thales S.A. A copy of the '631 patent is attached hereto as Exhibit 1.

10. On January 30, 1996, the USPTO issued United States Patent No. 5,488,563 entitled "Method and Device for Preventing Collisions With the Ground for an Aircraft" (the "'563 patent"). Upon information and belief, the '563 patent was assigned to Dassault Electronique, which, in 1999, merged with Thomson-CSF Radars & Countermeasures and Thomson Missile Electronics to form Thomson-CSF Detexis. The combined entity is presently known as Thales Airborne Systems. Upon information and belief, the '563 patent is now owned by defendant Thales S.A. A copy of the '563 patent is attached hereto as Exhibit 2.

11. On June 10, 1997, the USPTO issued United States Patent No. 5,638,282 entitled "Method and Device for Preventing Collisions With the Ground for an Aircraft" (the "'282 patent"). Upon information and belief, the '282 patent was assigned to Dassault Electronique, which, in 1999, merged with Thomson-CSF Radars & Countermeasures and Thomson Missile Electronics to form Thomson-CSF Detexis. The combined entity is presently known as Thales Airborne Systems. Upon information and belief, the '282 patent is now owned by defendant Thales S.A. A copy of the '282 patent is attached hereto as Exhibit 3.

12. On July 11, 2000, the USPTO issued United States Patent No. 6,088,654 entitled "Terrain Anti-Collision Process and Device for Aircraft, with Improved Display" (the "'654 patent"). Upon information and belief, the '654 patent was assigned to Dassault Electronique, which, in 1999, merged with Thomson-CSF Radars & Countermeasures and Thomson Missile Electronics to form Thomson-CSF Detexis. The combined entity is presently known as Thales Airborne Systems. Upon information and belief, the '654 patent is now owned by defendant

Thales S.A. A copy of the '654 patent is attached hereto as Exhibit 4. The '631, '563, '282 and '654 patents are collectively referred to herein as the "patents-in-suit."

13.     In a letter dated May 26, 2005 (Exhibit 5), Elliot Polebaum, counsel for Thales, wrote to Joachim L. Naimer, the President of Universal Avionics, to bring his attention to the patents-in-suit. According to the May 26 correspondence, the patents-in-suit are owned by defendant Thales, S.A and allegedly relate to TAWS technologies. The correspondence concluded by seeking a meeting between Thales and Universal to discuss a possible license.

14.     In a letter dated July 15, 2005 and a subsequent meeting on July 19, 2005, counsel for Universal advised Thales that it had considered the licensing proposal but did not believe that Universal's TAWS required a license to any of the referenced patents.

15.     Thales responded to Universal in a letter dated July 28, 2005 (Exhibit 6). In that correspondence, Thales summarily discounted Universal's non-infringement contentions and threatened that "none of your points provides a plausible basis for concluding that the Universal TAWS device does not practice the Thales patents."

16.     At all relevant times, counsel for the parties agreed to an informal standstill agreement to preclude either party from filing litigation until a predetermined time. Attached as Exhibit 7 is an email from Mr. Polebaum to counsel for Universal, dated November 30, 2005, confirming that the standstill agreement would extend through and including December 9, 2005.

17.     Universal representatives met with representatives of Thales on December 6, 2005 in a final effort to amicably resolve the dispute. At that time, counsel for Thales made it clear that litigation would follow if Universal did not accede to Thales' unreasonable licensing demands. This litigation followed.

### FIRST CLAIM FOR RELIEF
### DECLARATORY JUDGMENT OF
### INVALIDITY AND NON-INFRINGEMENT

18.     This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the Patent Laws of the United States.

19.     Upon information and belief, defendant Thales S.A. is the owner of the patents-in-suit.

20.     An actual justiciable case or controversy exists between Universal and Thales concerning the invalidity and non-infringement of the patents-in-suit.

21.     The TAWS manufactured and sold by Universal has not infringed and does not infringe any valid claim of any of the patents-in-suit.

22.     Each of the patents-in-suit is invalid and unenforceable under one or more of 35 U.S.C. §§ 102, 103 and 112.

WHEREFORE, Universal seeks judgment against defendant as follows:

A.      That this Court enter a declaratory judgment that Universal's TAWS does not infringe any claim of U.S. Patent Nos. 5,414,631; 5,488,563; 5,638,282 and 6,088,654;

B.      That this Court enter a declaratory judgment that all claims of U.S. Patent Nos. 5,414,631; 5,488,563; 5,638,282 and 6,088,654 are invalid;

C.      Finding that this is an exceptional case and awarding Universal its costs and disbursements in this action, including reasonable attorneys' fees;

D.   That Universal be granted such other and further relief as the Court deems just and proper.

Dated: December 12, 2005

Douglas R. Weider (DW-5396)
Greenberg Traurig, LLP
200 Campus Drive
Florham Park, NJ 07932
(973) 360-7900
(973) 301-8410 (fax)
Attorneys for Plaintiff
Universal Avionics Systems Corp.

OF COUNSEL:

William G. Todd
Scott J. Bornstein
Greenberg Traurig, LLP
200 Park Avenue
34th Floor
New York, NY 10166
(212) 801-2100

# EXHIBIT 6



## CUSTOMER INFORMATION LETTER

N° **16**
**Revision 05**

Aérodrome de Villacoublay
BP 200 - 78141 Vélizy-Villacoublay Cedex
France
Tél : +33 (0) 1 46 29 70 00
Fax : +33 (0) 1 46 32 85 96
www.thales-avionics.com

Rev. 05 : FM KITs partnership

### THALES AVIONICS PARTNERS ON AIRBUS PROGRAMS
### PRODUCT SUPPORT RESPONSIBILITIES

Dear Customer,

On AIRBUS programs, Thales Avionics has teamed with selected manufacturers to supply Avionics Equipment for these technologically innovative Aircraft.

In order to simplify your contacts within the various teaming arrangements, and in line with our continuous efforts to better support the operation of your Aircraft, Thales Avionics has decided to publish a quick-reference product support guide that will help you when dealing with our partners on the following programs :

- **Wide body :**     **A300-600 / A310**
- **Single aisle :**    **A318 / A319 / A320 / A321**
- **Long range :**     **A330 / A340**

This specific product support guide dedicated to our partners provides the following information hereattached :

- **Appendix 1 :**    **List of partners with address and phones details**
- **Appendix 2 :**    **Details of Thales Avionics Subsidiairies**
- **Appendix 3 :**    **Customer support partnership**
- **Appendix 4 :**    **Manufacturers partnership**

Please note that although some of the Product Support activities may have been sub-contracted by the Main Contractor to one of its partners to offer you a better service, the Main Contractor maintains overall responsibility for the product and its support.

Thales Avionics sincerely hopes that this guide will help you in understanding each support activity.

Should you need more information, please do not hesitate to contact your usual representative within Thales Avionics organization.

Yours sincerely,

Airlines Sales and Services Department

THALES AVIONICS S A
S.A au capital de 230 538 600 Euros
612 039 485 RCS Versailles
Siège social : Aérodrome de Villacoublay - 78141 Vélizy-Villacoublay – France

February 2003
page 1/9

# THALES
AVIONICS

## CUSTOMER INFORMATION LETTER

N° 16
**Appendix 1**

### PARTNERS DETAILS

**ACSS**
AVIATION COMMUNICATION & SURVEILLANCE SYSTEMS, LLC
An L-3 Communications & Thales Company
19810 N_7th Avenue
PHOENIX, AZ 85027-4400
Phone :        +1 623 445 7000
Fax:            +1 623 445 7001

**GOODRICH**
SIMMONDS PRECISION PRODUCTS, INC.
PANTON ROAD
VERGENNES, VERMONT 05491
USA
Phone :        +1 802 877 29 11
Fax :           +1 802 877 41 13
FSCM :          89305

**CERBERUS S.A.S.**
AVIATION DEPARTMENT
PRODUCT SUPPORT
617 RUE FOURNY
B.P. 20
78531 BUC CEDEX
FRANCE
Phone :        +33 1 30 84 66 52
Fax :           +33 1 39 56 13 64
TLX    :        699976F
FSCM   :        F4885

**DIEHL AVIONIK SYSTEME (formerly known as BODENSEEWERK GERATETECHNIK GMBH (BGT))**
P.O. BOX 101155
D-88641 UBERLINGEN
GERMANY
Phone :        +49 7551 89 69 51
Fax :           +49 7551 89 65 30
TLX    :        733924
FSCM   :        D0078

**DIEHL AVIONIK SYSTEME  (formerly known as VDO LUFTFAHRTGERATE WERK GMBH)**
CUSTOMER SUPPORT
AN DER SANDELMUHLE 13
D-60423 FRANKFÜRT (for Mail)        *D-60439 FRANKFÜRT (for Shipments)*
GERMANY
Phone :        +49 69 5805 0
Fax    :        +49 69 5805 1567
TLX    :        411519 VDOL d
FSCM :          D2439

**THALES AVIONICS S A**
S.A. au capital de 230 538 600 Euros
612 039 495 RCS Versailles
Siège social : Aérodrome de Villacoublay - 78141 Vélizy-Villacoublay – France



## CUSTOMER INFORMATION LETTER

**N° 16**
**Appendix 1**

### PARTNERS DETAILS

**HONEYWELL INC.**
COMMERCIAL FLIGHT SYSTEM GROUP
21111 NORTH 19TH AVENUE
PHOENIX, ARIZONA 85027
USA
Phone :      +1 602 436 23 11
Fax     :      +1 602 436 15 00
TLX     :        667405
FSCM :        58960

**LITTON AERO PRODUCTS**
INTERNATIONAL SUPPORT OFFICE
VICTORY BUSINESS CENTER
UNITS 5 AND 6 FLEMING WAY
ISLEWORTH, MIDDLESEX TW7 6DB
ENGLAND
Phone :      +44 81 568 33 91 or 568 33 92
Fax :      +44 81 847 28 30
TLX :        8951717
FSCM :        30782

**TRW SYSTEMES AERONAUTIQUES**
7 - 9 AVENUE DE L'EGUILLETTE
SAINT-OUEN L'AUMONE - BP7186
95056 CERGY-PONTOISE CEDEX
FRANCE
Phone :      +33 1 34 32 63 00
Fax :      +33 1 34 32 63 10
FSCM   :      FA3T1

**SFIM INDUSTRY Gmbh**
Gottlieb-Daimler
STR 60
71711 MURR
GERMANY
Phone :      +49 71 44 81 14 17
Fax :      +49 71 44 81 14 22
FSCM :      F6151

**SENSOR SYSTEMS INC.**
8929 FULLBRIGHT AVENUE
CHATSWORTH , CALIFORNIA 91311
USA
Phone :      +1 818 341 5366
Fax :      +1 818 341 9059
TLX     :      691583
FSCM   :      13691

**THALES AVIONICS S.A**
S A. au capital de 230 538 600 Euros
612 039 495 RCS Versailles
Siège social : Aérodrome de Villacoublay - 78141 Vélizy-Villacoublay – France

**February 2003**
page 3/9



## CUSTOMER INFORMATION LETTER

**N° 16**
**Appendix 1**

### PARTNERS DETAILS

**SMITHS INDUSTRIES**
AEROSPACE AND DEFENSE SYSTEMS,
PRODUCT SUPPORT
BISHOPS CLEEVE, CHELTENHAM
GLOUCESTERSHIRE, GL52 4SF
ENGLAND
Phone :      +44 1242 673333
Fax     :      +44 1242 661790
TLX    :       43172
FSCM :       K5294

**THALES COMMUNICATIONS (formerly known as THOMSON-CSF COMMUNICATION)**
160 BOULEVARD DE VALMY
BP82 , 92704 COLOMBES CEDEX
FRANCE
Phone :      +33 1 41 30 30 00
Fax     :      +33 1 41 30 33 57
FSCM   :      F0057

**THALES AIRBORNE SYSTEMS (formerly known as THOMSON-CSF DETEXIS)**
La Clef Saint-Pierre
1 boulevard Jean Moulin
78852 ELANCOURT Cedex
FRANCE
Phone :      +33 1 34 59 60 00
Fax     :      +33 1 34 59 62 36
FSCM   :      F0052

**SERPE-IESM**
ZONE INDUSTRIELLE DES 5 CHEMINS
56120 GUIDEL
FRANCE
Phone :      +33 2 97 02 49 49
Fax     :      +33 2 97 65 00 20
TLX    :       950535
FSCM   :      F8794

**THALES AVIONICS S.A**
S A. au capital de 230 538 600 Euros
612 039 495 RCS Versailles
Siège social : Aérodrome de Villacoublay - 78141 Vélizy-Villacoublay – France

# THALES
AVIONICS

## CUSTOMER INFORMATION LETTER

**N° 16**
**Appendix 2**

### THALES AVIONICS SUBSIDIARIES ADDRESSES

**THALES AVIONICS**
AIRLINES SALES AND SERVICES
105 avenue du General Eisenhower
BP 1147
31036  TOULOUSE Cedex 1
FRANCE
Phone :       +33 5 61 19 76 82
Fax      :    +33 5 61 19 65 20
FSCM   :        F9111

**THALES AVIONICS**
CUSTOMER SERVICES DEPARTMENT
AERODROME DE VILLACOUBLAY
B.P. 59
78141 VELIZY VILLACOUBLAY CEDEX
FRANCE
Phone :       +33 1 46 29 70 00
Fax      :    +33 1 46 32 85 96
TLX      :       631241F

**THALES AVIONICS INC.**
3920 Park Avenue
EDISON, NEW JERSEY 08820
USA
Phone :       +1 732 494 1010
Fax      :    +1 732 494 1421

**THALES AVIONICS Inflight Systems**
17481 Red Hill Avenue
IRVINE, CA 92614-5630
USA
Phone :       +1 949 660 7020
Fax :          +1 949 833 8420

**THALES AVIONICS INC. (formerly known as AIR LAB)**
641 INDUSTRY DRIVE
SEATTLE, WASHINGTON 98188
USA
Phone :       +1 206 575 0920
Fax      :    +1 206 575 3820

**THALES AVIONICS Pte Ltd**
4 LOYANG LANE
# 06-01
SINGAPORE 508914
SINGAPORE
Phone :       +65 6 542 25 33
Fax      :    +65 6 542 96 50
TLX      :       35616

**THALES AVIONICS S.A**
S.A. au capital de 230 538 600 Euros
612 039 495 RCS Versailles
Siège social : Aérodrome de Villacoublay - 78141 Vélizy-Villacoublay -- France

# THALES
AVIONICS

N° 16

Appendix 3

## CUSTOMER INFORMATION LETTER

### THALES AVIONICS CUSTOMER SUPPORT PARTNERSHIP

The following table lists the equipment for which Thales Avionics and it partners share Sales and Customer Support activities

| A300 | A310 | A320 | A340 | N/A | ATA | DESCRIPTION | P/N | MAIN CONTRACTOR | MANUFACTURER | LRU ORDERS | SRU/PIECE PARTS ORDERS | LRU/SRU REP & MOD | AOG LOAN LEASE USED | WARRANT ADMIN. | RETROFIT & DOC PUB | TRAINING | TECHNIC. SUPPORT | SPECIFIC BENCH & TOOLS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X | | | | | 22 | ATH ACTUATOR | L14M0, V2AM0, V3AM0 | THALES AVIONICS | DIEHL, Überlingen | THALES | THALES or DIEHL (preferably) | THALES or DIEHL (preferably) | THALES | THALES | THALES | THALES | THALES | THALES or DIEHL |
| X | X | | | | 34 | ADF ANTENNA | 616-2630.., C12381.., C12351.., C2800... | THALES AVIONICS | SENSOR SYSTEMS | THALES | N/A | THALES or SENSOR | THALES | THALES | THALES | N/A | THALES | THALES or SENSOR |
| X | | | | | 22 | COUPLING UNIT | V4AM0, V5AM0 | THALES AVIONICS | DIEHL, Überlingen | THALES | THALES or DIEHL (preferably) | THALES or DIEHL (preferably) | THALES | THALES | THALES | THALES | THALES | THALES or DIEHL |
| X | | | | | 34 | DIRECTIONAL ANTENNA | 751408I-XXX, 751406I-XXX | THALES AVIONICS | ACSS | THALES | ACSS | ACSS | THALES | THALES | THALES | THALES | THALES | THALES |
| X | | | | | 31 | ECAM - SGU | 961267.. | THALES AVIONICS | DIEHL FRANKFURT | THALES | DIEHL | DIEHL | THALES or DIEHL | DIEHL | THALES | THALES (Level 1) and DIEHL (Level 2) | THALES | DIEHL |
| X | | | | | 34 | EFIS - SGU | 961266.. | THALES AVIONICS | DIEHL FRANKFURT | THALES | DIEHL | DIEHL | THALES or DIEHL | DIEHL | THALES | THALES (Level 1) and DIEHL (Level 2) | THALES | DIEHL |
| X | | | | | 34 | EFIS CTRL PNL | 96126090 | THALES AVIONICS | DIEHL FRANKFURT | THALES | DIEHL | DIEHL | THALES or DIEHL | DIEHL | THALES | THALES (Level 1) and DIEHL (Level 2) | THALES | DIEHL |
| X | | | | | 34 | MODE S (ATDL) | 7517800-XXXX | THALES AVIONICS | ACSS | THALES | ACSS | ACSS | THALES | THALES | THALES | THALES | THALES | THALES |
| X | | | | | 34 | TCAS II | 4066010-XXXXX | THALES AVIONICS | ACSS | THALES | ACSS | ACSS | THALES | THALES | THALES | THALES | THALES | THALES |

A300 : A300B2-B4/ A300-600/ A310
A320 : A318/ A319/ A320/ A321
A340 : A330/ A340
N/A : Not Applicable

THALES AVIONICS S.A.
S.A. au capital de 230 538 600 Euros
612 039 495 RCS Versailles
Siège social : Aérodrome de Villacoublay – 78141 Vélizy-Villacoublay – France

THALES
AVIONICS

N° 16

Appendix 3

CUSTOMER INFORMATION LETTER

## THALES AVIONICS CUSTOMER SUPPORT PARTNERSHIP

The following table lists the equipment for which Thales Avionics and it partners share Sales and Customer Support activities

| A310 | A320 | A330 | A340 | ATA | DESCRIPTION | P/N | MAIN CONTRACTOR | MANUFACTURER | LRU ORDERS | SRU/PIECE PARTS ORDERS | LRU/SRU REP & MOD | AOG LOAN LEASE USED | WARRANT ADMIN. | RETROFIT & DOC PUB | TRAINING | TECHNIC. SUPPORT | SPECIFIC BENCH & TOOLS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X | | | | 34 | TCAS-2000 (RT-951) | 7517900.. | THALES AVIONICS | ACSS | THALES | ACSS | ACSS | THALES | THALES | THALES | THALES | THALES | THALES |
| X | X | | | 34 | ADM | 87232329.. | LITTON | THALES AVIONICS | LITTON | N/A | THALES | THALES | LITTON | LITTON | LITTON (Level 1 only) | LITTON | N/A |
| | | | | 34 | ATC TCAS CTRL PNL | 4082190-XXX | THALES AVIONICS | ACSS | THALES | ACSS | ACSS | THALES | THALES | THALES | THALES | THALES | THALES |
| X | X | | | 31 | DMC | 981532.. | THALES AVIONICS | DIEHL FRANKFURT | THALES | DIEHL | DIEHL | THALES or DIEHL | DIEHL | THALES | THALES (Level 1) and DIEHL (Level 2) | THALES | DIEHL |
| | | X | | 28 | FCMC | B494.... | GOODRICH | THALES AVIONICS | THALES | THALES | THALES | THALES | THALES | THALES | THALES | GOODRICH | THALES |
| | X | | | 22 | FCU | K217.../K274 | THALES AVIONICS | DIEHL, Uberlingen | THALES | THALES or DIEHL (preferably) | THALES or DIEHL (preferably) | THALES | THALES | THALES | THALES | THALES | THALES |
| X | X | | | 22 | FMGEC LEGACY | B398..B480...B546,.. | THALES AVIONICS | THALES AVIONICS and HONEYWELL (FM kit) | THALES | THALES or HWL (FM Kit) | THALES | THALES | THALES | THALES | THALES or HWL (FM Kit) | THALES | THALES or HWL (FM Kit) |
| X | X | | | 22 | FM KIT FMGEC (LEGACY) | C5190C519/C5192 C517/C2011B/C9119 E3204S/E3204E3204S | N/A | HONEYWELL | N/A | HONEYWELL | SRU : HONEYWELL | N/A | HONEYWELL | N/A | N/A | THALES | HONEYWELL |
| X | X | | | 22 | FMGEC THALES/SMITHS | C13039,.. C13043,... | THALES AVIONICS | THALES AVIONICS and SMITHS (FM kit) | THALES | THALES | THALES | THALES | THALES | THALES | THALES | THALES | THALES |

A300 : A300B2-B4/ A300-600/ A310
A320 : A318/ A319/ A320/ A321
A340 : A330/ A340
N/A : Not Applicable

THALES AVIONICS S.A.
S.A. au capital de 230 538 600 Euros
612 039 495 RCS Versailles
Siège social : Aérodrome de Villacoublay - 78141 Vélizy-Villacoublay – France

CUSTOMER INFORMATION LETTER

THALES AVIONICS CUSTOMER SUPPORT PARTNERSHIP

The following table lists the equipment for which Thales Avionics and it partners share Sales and Customer Support activities

| A300 | A320 | A340 | N0 | ATA | DESCRIPTION | PIN | MAIN CONTRACTOR | MANUFACTURER | LRU ORDERS | SRU/PIECE PARTS ORDERS | LRU/SRU REP & MOD | AOG LOAN LEASE USED | WARRANT ADMIN. | RETROFIT & DOC PUB | TRAINING | TECHNIC. SUPPORT | SPECIFIC BENCH & TOOLS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| x | x | | | | FM KIT FMG(E)C (THALES/SMITHS) | E13206DA | THALES AVIONICS | THALES AVIONICS and SMITHS (for soft only) | THALES | THALES | THALES | THALES | THALES | THALES | THALES | THALES | THALES |
| x | x | | | 22 | FMG(E)C PEGASUS | C12858... C13042... | THALES AVIONICS | THALES AVIONICS and HONEYWELL (FM kit) | THALES | THALES or HWL (FM Kit) | THALES or HWL (FM Kit) | THALES | THALES | THALES | THALES | THALES | THALES |
| x | x | | | | FM KIT FMG(E)C (PEGASUS) | 4084070-902 | HONEYWELL | HONEYWELL | N/A | HONEYWELL | HONEYWELL | HONEYWELL | HONEYWELL | HONEYWELL | HONEYWELL | HONEYWELL | HONEYWELL |
| x | | | | 28 | FQIC | B539... | GOODRICH | THALES AVIONICS | THALES | THALES | THALES | THALES | THALES | THALES | THALES | GOODRICH | THALES |
| x | | | | 34 | HUDC | 961543... | THALES AVIONICS | DIEHL FRANKFURT | THALES | DIEHL | DIEHL | THALES or DIEHL | DIEHL | THALES | THALES (Level 1) and DIEHL (Level 2) | THALES | DIEHL |
| x | x | | | 31 | New DMC | 19826600... | THALES AVIONICS | DIEHL FRANKFURT | THALES | DIEHL | DIEHL | THALES or DIEHL | THALES | THALES | THALES | THALES | THALES |
| x | x | | | 22 | New FCU | C12849... /C12850... | THALES AVIONICS | DIEHL Überlingen | THALES | THALES or DIEHL (preferably) | THALES or DIEHL (preferably) | THALES | THALES | THALES | THALES | THALES | THALES |
| | | x | | 79 | PRESSURE TRANSMITTER | 64757-1.. | TRW | THALES AVIONICS | TRW | THALES | THALES | THALES | THALES | THALES | TRW (Level 1) and THALES (Level 2) | THALES | THALES |
| x | x | | | 26 | SDCU | RAI 2800... | CERBERUS SIEMENS | THALES AVIONICS | THALES | THALES | THALES | THALES | THALES | THALES | THALES | THALES | THALES |
| | | | x | 79 | TEMPERATURE SENSOR | 64660-506-1 | TRW | THALES AVIONICS | TRW | N/A | N/A | THALES | THALES | THALES | TRW | THALES | N/A |

A300 : A300B2-B4/ A300-600/ A310
A320 : A318/ A319/ A320/ A321
A340 : A330/ A340
N/A : Not Applicable

THALES AVIONICS S.A.
S.A. au capital de 230 538 600 Euros
612 039 495 RCS Versailles
Siège social : Aérodrome de Villacoublay - 78141 Vélizy-Villacoublay – France



**AVIONICS**

# Customer Information Letter

### Nº 16
**Appendix 4**

## THALES AVIONICS MANUFACTURERS PARTNERSHIP

The following table lists the equipment manufactured by partners. As a main contractor, Thales Avionics is responsible for the whole range of Sales and Customer support activities for these equipment.

| A300 | A320 | A340 | ATA | DESCRIPTION | P/N | MAIN CONTRACTOR | PARTNER |
|---|---|---|---|---|---|---|---|
| X | | | 22 | AP/FD ENGAGEMENT UNIT | K151 | THALES AVIONICS | SMITH INDUSTRIES |
| X | | | 34 | ATC TRANSPONDER TSR-71B | 9599-614-0390. | THALES AVIONICS | THALES COMMUNICATIONS |
| X | X | X | 34 | DME INTERRO  TDM-709 | 9599-614. | THALES AVIONICS | THALES COMMUNICATIONS |
| X | X | X | 31 | EQAR | 1374-. | THALES AVIONICS | THALES AIRBORNE SYSTEMS |
| X | | | 22 | FCU | K157. | THALES AVIONICS | SMITH INDUSTRIES |
| X | X | X | 26 | JET SAT | 3433-. | THALES AVIONICS | THALES AIRBORNE SYSTEMS |
| X | X | X | 25 | KANNAD 406 AS | S1823  . | THALES AVIONICS | SERPE-IESM |
| X | X | X | 25 | KANNAD 406 ATP | S1819 | THALES AVIONICS | SERPE-IESM |
| X | | | 33 | LIGHT CONTROLER | 6310-. | THALES AVIONICS | THALES COMMUNICATIONS |
| X | X | X | 34 | LRRA | 9599-607. | THALES AVIONICS | THALES COMMUNICATIONS |
| X | X | X | 34 | LRRA ANTENNA | 9599-607. | THALES AVIONICS | THALES COMMUNICATIONS |
| X | | | 22 | MTP | K159 | THALES AVIONICS | SMITH INDUSTRIES |
| X | | | 22 | PITCH TRIM ACTUATOR | V1AM0 | THALES AVIONICS | SMITH INDUSTRIES |
| X | | | 22 | TCC | B217  B298. B351..B415. B472.. | THALES AVIONICS | DIEHL, Uberligen |
| X | | | 22 | TRP | K158. | THALES AVIONICS | SMITH INDUSTRIES |
| | X | X | 34 | GPS ANTENNA | C17065. | THALES AVIONICS | THALES COMMUNICATIONS |
| | X | X | 34 | MMR | TLS755-. | THALES AVIONICS | THALES COMMUNICATIONS |
| | X | | 30 | PROBE HEAT COMPUTER | 1663214 . | THALES AVIONICS | THALES AIRBORNE SYSTEMS |
| | | X | | RATE GYRO | 81-00000 | THALES AVIONICS | SAGEM |
| | X | X | 23 | VDR | EVR716 . EVR750.. | THALES AVIONICS | THALES COMMUNICATIONS |

A300 : A300B2-B4/ A300-600/ A310
A320 : A318/ A319/ A320/ A321
A340 : A330/ A340

**THALES AVIONICS S.A**
S.A. au capital de 230 538 600 Euros
612 039 495 RCS Versailles
Siège social : Aérodrome de Villacoublay - 78141 Vélizy-Villacoublay – France

# EXHIBIT 7

Case 1:05-cv-00853-SLR    Document 11-2    Filed 01/18/2006    Page 36 of 56

# THALES

### IN NORTH AMERICA

HOME    SITE MAP    CONTACT

- About Us
- Press
- Careers
- Corporate Responsibility

- Business Zones
- Products & Services
- Thales Canada
- Contact Us
- Search all Thales



## Thales Avionics, Inc.

Thales Avionics is the largest unit of Thales's Avionics Systems Business Group, which includes Thales Avionics Electrical Systems, Thales Avionics In-Flight Systems and Thales Avionics Ltd. Applying its multidomestic strategy, Thales Avionics has expanded its international presence by setting up operations close to its customers. There are customer service locations all over the world, with major hubs in Edison, New Jersey, Singapore and Châtellerault, France. At Thales Avionics, the overriding concern of the international top-flight engineering team is to listen to you, partners and customers, in order to provide reliable solutions tailored to your specific requirements.

Thales Avionics, Inc., based in Edison, NJ, is one of the major support centers for Thales Avionics worldwide. Specializing in the sales, maintenance and support of electrical systems, power generators, avionics and flight control equipment for commercial, military and business aviation applications, Thales Avionics Inc. operates in Edison, NJ and Seattle, WA.

**Main North American Location:** Edison, NJ

» **Visit Thales Avionics on the Web.** [external site]

© Thales NA 2005  |  Credit  |  Legal Notice

# EXHIBIT 8



Home I Sign In/Out I Site Map I Contact Us I About Us

**B/CA ShowNews online**

Advanced Search | Tips

| Read the latest news from NBAA 2001: | Gallery | About Us | Contact Us | AvWeek TV |
| --- | --- | --- | --- | --- |

NEWSMAKERS

VISIT OUR SP

TOP STORIES

AIRFRAMES

AVIONICS

E-BUSINESS

FRACTIONAL / CHARTER

MAINTENANCE

MODIFICATIONS / OUTFITTERS / FBOs

NEWSMAKERS

POWERPLANTS

TRAINING

Introduction to Business Aviation

On the Record with

# FRANCOIS LUREAU, EVP & CEO, THALES AEROSPACE

### Name That Seemed So Strange is Working

Thales, the ancient Greek mathematician and philosopher who gives his name to the old Thomson-CSF empire, was very fond of the skies. So much so, according to a story told by Plato, that a stargazing Thales one night fell into a ditch on his way home.

A servant girl pulled him out and said, "How do you expect to understand what is going on up in the sky if you do not even see what is at your feet?"

Which is most appropriate when one looks at Thales--the company--and its involvement in ground and air satellite-based navigation, air traffic control, collision avoidance and avionics--all, as it were, to help one see in the dark.

"The name change has been received very well" since implemented last December, François Lureau, executive VP and CEO of Thales Aerospace commercial business told *Show News*.

"Thomson-CSF was known as a defense company, and a French one at that.

"The name no longer described what we do, or who we are.

"Acquisitions over the years had resulted in more than 200 different names within Thomson-CSF, and 80% of our people were not here ten years ago, so the old name meant nothing to them."

Hence the change, to reflect an international aerospace and electronics company, evenly split between defense and commercial.

Thales biggest customer by far is Airbus, which has just selected it to develop the integrated avionics and flight control system for the all-digital 555-seat A380. Next biggest customer is Bombardier, with integrated flight control systems and the HUD on the Global Express.

With its Airbus and military expertise (most recently on the French Rafale fighter avionics and cockpit displays), Thales believes it has a very good basis for offering integrated avionics suites to OEMs' specifications. It already supplies these to the Eurocopter fleet with its

Meghas avionics suites. "We really have a lot to offer," said Lureau.

Thales big news here is the HUD display on the Global Express, followed by its Satcom products including Aero I and Aero H antennae. Connectivity is also a focus.

"We make a lot of equipment in this field, including Ku broadband, which we can adapt to the business aircraft market," Lureau noted.

When coupled with the technology and expertise of its inflight entertainment business (a big supplier to Boeing, as well as Airbus) formed when Sextant acquired that activity from B/E Aerospace, Lureau is confident Thales can be a player in the evolving markets for high speed datalink, liveTV and true high speed Internet capability aboard airliners and corporate jets.

Thales also has considerable expertise in airborne electrical power generation. It has long supplied Dassault, and has been selected for the new FNX business jet.

**–John Morris**


### Thales is Different

A lot has changed at Thales since last NBAA, when it exhibited as Thomson-CSF Sextant. Changes and acquisitions in its commercial business include:

- Acquisition of the inflight entertainment business of B/E Aerospace.
- Formation of a joint venture in North America with L-3 Com to focus on traffic collision avoidance systems (TCAS) and to develop new products for the commercial market.
- A joint venture with Diehl Group that will be the largest avionics company in Germany. It will focus on secondary control systems, engine controls, display generation center of excellence, and cabin systems.
- Consolidation of its North American support operations in Edison, New Jersey, which is now Thales worldwide headquarters for avionics support.

**–J.M.**


### Thales Aims Products at Regional/Corporate Market

Offering the largest field of view in its class, Thales' Heads Up Flight Display System (HFDS) is the first in a new family optimized for business aircraft and regional airliners. It makes essential data instantly available to pilots–which is of key importance during adverse weather landings and takeoffs or in an emergency.

The HFDS for the Global Express is based on proven technologies, with built-in growth potential for improved Category III operations and the display of overlaid imagery from an enhanced vision system. Although fully integrated in the Canadian long-range jet, HFDS can

be acquired as a stand-alone upgrade for other aircraft.

Thales is also currently highlighting its flat panel displays, CNS/ATM capabilities and three-in-one standby instrument.

**B/CA ShowNews** online
news from 

presented by


The McGraw-Hill Companies

**Copyright 2001 © AviationNow.com** All Rights Reserved.
Terms under which this service is provided to you.
Read your privacy guidlines.

# EXHIBIT 9

**GREENBERG TRAURIG, LLP**
Douglas R. Weider (DW-5396)
200 Campus Drive
Florham Park, NJ  07932
(973) 360-7900
(973) 301-8410 (fax)

**GREENBERG TRAURIG, LLP**
William G. Todd
Scott J. Bornstein
200 Park Avenue
34th Floor
New York, NY  10166
(212) 801-2100

Attorneys for Plaintiff
Universal Avionics Systems Corp.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSAL AVIONICS SYSTEMS CORP.,    ) | Civil Action No. 05-CV-5764 |
| Plaintiff,    ) | |
| )    | |
| v.    ) | **AMENDED COMPLAINT** |
| )    | |
| THALES S.A., THALES AIRBORNE    ) | |
| SYSTEMS S.A., and THALES AVIONICS S.A.    ) | |
| )    | |
| Defendants.    ) | |

    Pursuant to Fed.R.Civ.P. 15, plaintiff, Universal Avionics Systems Corporation

("Universal"), files this Amended Complaint against defendants Thales S.A., Thales Airborne

Systems S.A. ("Thales Airborne") and Thales Avionics S.A. ("Thales Avionics") (collectively,

"Thales").

ny-srv0\1142690\v01

## The Parties

1.    Plaintiff Universal Avionics is a corporation organized and existing under the laws of the State of Arizona, having its principal place of business for Terrain Awareness and Warning Systems (TAWS), the subject of this dispute, in Tucson, Arizona.

2.    Universal is a leading manufacturer of avionics systems used worldwide. It's products are designed for a full range of aircraft types from helicopters to corporate turbine aircraft and large commercial airliners.

3.    Founded in 1981, Universal is currently composed of four divisions including (1) Research, Development and Engineering; (2) Manufacturing; (3) Marketing; and (4) Instrument and a supporting independent subdivision (American Panel Corporation).

4.    Product offerings include TAWS, a complete line of flight management systems, cockpit instrument displays, a cockpit/ground communications datalink, navigation position sensors, satellite communications, a cabin information/entertainment system and cockpit voice recorders.

5.    Thales S.A. is a French corporation with a principal place of business at 45 rue de Villiers, 92526 Neuilly Sur Seine Cedex, France.  Upon information and belief, Thales S.A. conducts business in this jurisdiction, both individually and through its wholly-owned subsidiary Thales Avionics, Inc.  Thales Avionics, Inc. is a New Jersey company with its principal place of business at 3920 Park Avenue, Edison, New Jersey 08820.

6.    The principal activities of Thales S.A. are grouped into the following areas: AIR: radars, electronic warfare systems and missile electronics; AVIONICS: systems and equipment for civil and military aircraft including flight control and navigation; COMMUNICATION: tactical mobile and defense communication networks; INFORMATION SYSTEMS &

ny-srv0\1146903\v01                                          2

tactical mobile and defense communication networks; INFORMATION SYSTEMS &
SERVICES: development of service-oriented business, development support in commercial
computing and related services; NAVAL: integrated naval combat systems for warships,
submarines and undersea warfare; OPTRONICS: detection, guidance and optronic warfare
equipment and systems for air, land-based, naval and space applications; AIR SECURITY &
MISSILES: ground-based detection and missile systems, armaments and propulsion; and
TUBES & COMPONENTS: professional electron tubes, image-intensification tubes for medical
and industrial applications.

   7. Upon information and belief, defendant Thales Airborne is a French corporation
with its corporate headquarters at 2 avenue Guy Lussac, 78851 Elancourt, France.

   8. Upon information and belief, defendant Thales Avionics is a French corporation
with its corporate headquarters at 45 rue de Villiers, 92526 Neuilly, France.

Jurisdiction and Venue

   9. This is a civil action arising under the patent laws of the United States, Title 35 of
the United States Code and The Declaratory Judgment Act. The Court has jurisdiction over the
subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338. Venue is proper in this
judicial district pursuant to 28 U.S.C. § 1391 (b) and (c).

Nature of the Dispute

   10. In or about November 1998, Universal introduced its Terrain Awareness and
Warning System. TAWS is designed to provide the pilot with increased situational awareness
and reduce the possibility of accidents associated with Controlled Flight Into Terrain (CFIT).
TAWS takes information from onboard sensors along with flight path intent information from a
Flight Management System and combines these with its own internal worldwide terrain database.

The resulting "look-ahead" capability can provide warnings and alerts well in advance of potential hazards. Universal has continuously manufactured and sold TAWS throughout the United States and abroad since introduction.

11.    On May 9, 1995, the United States Patent and Trademark Office ("USPTO") issued United States Patent No. 5,414,631 entitled "Collision-Avoidance Device for Aircraft, Notably for Avoiding Collisions with the Ground" (the "'631 patent"). Upon information and belief, the '631 patent was assigned to Sextant Avionique, which was formed in 1989 when Thomson-CSF and Aerospatiale merged their avionics subsidiaries. In 1998, Thomson-CSF became the sole shareholder in Sextant Avionique to form Thomson-CSF Sextant, now known as Thales Avionics. Upon information and belief, the '631 patent is presently owned by defendant Thales S.A., defendant Thales Airborne, and/or defendant Thales Avionics.

12.    On January 30, 1996, the USPTO issued United States Patent No. 5,488,563 entitled "Method and Device for Preventing Collisions With the Ground for an Aircraft" (the "'563 patent"). Upon information and belief, the '563 patent was assigned to Dassault Electronique, which, in 1999, merged with Thomson-CSF Radars & Countermeasures and Thomson Missile Electronics to form Thomson-CSF Detexis. The combined entity is presently known as Thales Airborne. Upon information and belief, the '563 patent is presently owned by defendant Thales S.A., defendant Thales Airborne, and/or defendant Thales Avionics.

13.    On June 10, 1997, the USPTO issued United States Patent No. 5,638,282 entitled "Method and Device for Preventing Collisions With the Ground for an Aircraft" (the "'282 patent"). Upon information and belief, the '282 patent was assigned to Dassault Electronique, which, in 1999, merged with Thomson-CSF Radars & Countermeasures and Thomson Missile Electronics to form Thomson-CSF Detexis. The combined entity is presently known as Thales

Airborne. Upon information and belief, the '282 patent is presently owned by defendant Thales
S.A., defendant Thales Airborne, and/or defendant Thales Avionics.

14.    On July 11, 2000, the USPTO issued United States Patent No. 6,088,654 entitled
"Terrain Anti-Collision Process and Device for Aircraft, with Improved Display" (the "'654
patent"). Upon information and belief, the '654 patent was assigned to Dassault Electronique,
which, in 1999, merged with Thomson-CSF Radars & Countermeasures and Thomson Missile
Electronics to form Thomson-CSF Detexis. The combined entity is presently known as Thales
Airborne. Upon information and belief, the '654 patent is presently owned by defendant Thales
S.A., defendant Thales Airborne, and/or defendant Thales Avionics. The '631, '563, '282 and
'654 patents are collectively referred to herein as the "patents-in-suit."

15.    In a letter dated May 26, 2005 (Exhibit 1), Elliot Polebaum, counsel for Thales,
wrote to Joachim L. Naimer, the President of Universal Avionics, to bring his attention to the
patents-in-suit. According to the May 26 correspondence, the patents-in-suit are owned by
defendant Thales, S.A and allegedly relate to TAWS technologies. The correspondence
concluded by seeking a meeting between Thales S.A. and Universal to discuss a possible license.

16.    In a letter dated July 15, 2005 and a subsequent meeting on July 19, 2005, counsel
for Universal advised Thales that it had considered the licensing proposal but did not believe that
Universal's TAWS required a license to any of the referenced patents.

17.    Thales responded to Universal in a letter dated July 28, 2005 (Exhibit 2). In that
correspondence, Thales summarily discounted Universal's non-infringement contentions and
threatened that "none of your points provides a plausible basis for concluding that the Universal
TAWS device does not practice the Thales S.A. patents."

18.    At all relevant times, counsel for the parties agreed to an informal standstill agreement to preclude either party from filing litigation until a predetermined time. Attached as Exhibit 3 is an email from Mr. Polebaum to counsel for Universal, dated November 30, 2005, confirming that the standstill agreement would extend through and including December 9, 2005.

19.    Universal representatives met with representatives of Thales on December 6, 2005 in a final effort to amicably resolve the dispute. At that time, counsel for Thales made it clear that litigation would follow if Universal did not accede to Thales' unreasonable licensing demands. This litigation followed.

### FIRST CLAIM FOR RELIEF
### DECLARATORY JUDGMENT OF
### INVALIDITY AND NON-INFRINGEMENT

20.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the Patent Laws of the United States.

21.    Upon information and belief, Thales S.A., Thales Airborne, and/or Thales Avionics are the owners of the patents-in-suit.

22.    An actual justiciable case or controversy exists between Universal and Thales concerning the invalidity and non-infringement of the patents-in-suit.

23.    The TAWS manufactured and sold by Universal has not infringed and does not infringe any valid claim of any of the patents-in-suit.

24.    Each of the patents-in-suit is invalid and unenforceable under one or more of 35 U.S.C. §§ 102, 103 and 112.

WHEREFORE, Universal seeks judgment against defendants as follows:

A.    That this Court enter a declaratory judgment that Universal's TAWS does not infringe any claim of U.S. Patent Nos. 5,414,631; 5,488,563; 5,638,282 and 6,088,654;

B.    That this Court enter a declaratory judgment that all claims of U.S. Patent Nos. 5,414,631; 5,488,563; 5,638,282 and 6,088,654 are invalid;

C.    Finding that this is an exceptional case and awarding Universal its costs and disbursements in this action, including reasonable attorneys' fees;

D.    That Universal be granted such other and further relief as the Court deems just and proper.

Dated: December 20, 2005

Douglas R. Weider (DW-5396)
Greenberg Traurig, LLP
200 Campus Drive
Florham Park, NJ 07932
(973) 360-7900
(973) 301-8410 (Fax)
Attorneys for Plaintiff
Universal Avionics Systems Corp.

OF COUNSEL:

William G. Todd
Scott J. Bornstein
Greenberg Traurig, LLP
200 Park Avenue
34th Floor
New York, NY 10166
(212) 801-2100

ny-srv01\1146563v01

7

# FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

1001 Pennsylvania Avenue, NW
Washington, DC 20004-2505
Tel: 202.639.7000
Fax: 202.639.7003
www.friedfrank.com

Direct Line: 7067
Fax: 202-639-7008
elliot.polebaum@friedfrank.com

May 26, 2005

*Via Federal Express*

J. L. Naimer, President
Universal Avionics
3260 E. Universal Way
Tucson, AZ 85706

Re:     Thales S.A. Patent Licensing

Dear Mr. Naimer:

I am writing to you on behalf of my client Thales S.A. Thales owns a portfolio of patents relating to Terrain Awareness and Warning System (TAWS) technologies. Because your company manufactures a TAWS product, we would like to bring to your attention patents belonging to Thales relating to TAWS technology that may be of interest to you. Enclosed are: (1) U.S. Patent No. 5,488,563, to Chazelle et al.; (2) U.S. Patent No. 5,638,282, to Chazelle et al.; (3) U.S. Patent No. 5,414,631, to Denoize et al.; and (4) U.S. Patent No. 6,088,654, to Lepere et al.; all relate to TAWS technology.

I would like to arrange a meeting between Thales representatives and Universal representatives to discuss the Thales portfolio and the possibility of Universal's obtaining a license to the patented technology. Please contact me at your earliest convenience regarding this matter.

Sincerely,

*Elliot E. Polebaum*

Elliot E. Polebaum

Enclosures

New York • Washington • Los Angeles • London • Paris
A Delaware Limited Liability Partnership



EXHIBIT
1

# FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

1001 Pennsylvania Avenue, NW
Washington, DC 20004-2505
Tel: 202.639.7000
Fax: 202.639.7008
www.friedfrank.com

*Confidential*

Direct Line: (202) 639-7067
elliot.polebaum@friedfrank.com

July 28, 2005

**By Facsimile**

Scott Bornstein, Esq.
Greenberg Traurig LLP
MetLife Building
200 Park Avenue
New York, NY 10166

Dear Scott:

We have considered further the points you made at our meeting on July 19, 2005, and in your earlier letter dated July 15, 2005, regarding the Thales patents that we have brought to your attention. We believe that none of your points provides a plausible basis for concluding that the Universal TAWS device does not practice the Thales patents. Accordingly, we think it appropriate that we begin to negotiate the terms by which Thales would license use of the patents to Universal. Please let me know at your earliest convenience whether Universal is prepared to enter into such negotiations with Thales.

At our meeting, we agreed to give you a written response to the points you raised. You and we have further agreed that our exchanges are confidential, subject to Rule 408 of the Federal Rules of Evidence, may not be used in any subsequent proceedings, and do not constitute any waiver of the attorney client privilege and/or work product doctrine. On that understanding, our response to your points is as follows:

I.    Mass Memory Means.

First, the "mass memory means" element of both Claim 1 of U.S. Patent 5,488,563 (the "'563 Patent") and Claim 1 of U.S. Patent 5,638,282 (the "282 Patent") is not a means-plus-function element, subject to §112(6) of the Patent Act, because the element contains sufficient structure to perform the claimed function. Therefore, interpreting the claim language by looking

New York • Washington • Los Angeles • London • Paris
A Delaware Limited Liability Partnership


EXHIBIT
2

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Letter to Scott Bornstein, Esq.
July 28, 2005
Page 2

to the structure disclosed in the specification and its equivalents is not warranted. Instead, this claim element must be construed in accordance with standard claim-construction principles and be given its plain meaning to one of ordinary skill in the art.

A.    Relative Altitude Values.

At the July 19 meeting, you argued that the "mass memory means" element of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent and the "mass memory" element of Claim 20 of the '563 Patent require the use of relative altitude values for storing terrain data. Proper claim construction, however, would not allow reading into these elements such a relative altitude limitation. First, a person of ordinary skill in the art would not conclude that the elements "mass memory" or "mass memory means" require such a limitation. To add such a limitation would violate the Federal Circuit's repeated admonition, most recently re-affirmed in *Phillips v. AWH Corp.*, that one should avoid importing limitations from the specification into the claims.

Additionally, the principle of claim differentiation prevents the "mass memory means" element of Claim 1 of the '563 Patent from having the same scope as its dependent Claim 8, which specifically adds the limitation of using relative altitude values. Claim differentiation also prevents reading the relative altitude value limitation into the "mass memory" element of Claim 20 because its dependent Claim 24 adds the precise limitation of using relative altitude values. If the relative altitude limitation were already part of Claims 1 and 20, there would be no reason to have claims 8 and 24.

Regardless, the Universal TAWS infringes the Thales patents under the doctrine of equivalents, because the memory device of the Universal TAWS is equivalent to the claimed memory.

B.    Updating by A Data Processing Device.

You also claimed in your July 15, 2005 letter and at our meeting that the "mass memory means" element of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent and the "mass memory" element of Claim 20 of the '563 Patent requires regular updating by a data processing device "[o]n the ground, outside the aircraft." It would be improper, however, to import this limitation from the specification into these claims because a person of ordinary skill in the art would not interpret a mass memory means to require a data processing device on the ground outside the aircraft. These claims relate to means for storing, not updating, a database. Even if these claims were subject to §112(6), this limitation is not properly read into the claims because it is not part of the structure disclosed in the specification corresponding to the claimed function.

If one accepted your construction for the sake of argument and added the "updating on the ground, outside the aircraft" limitation, the Universal TAWS practices the "mass memory means" element of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent. As specified in the Product Summary found in Tab E of the attachments that we provided at the July 19 meeting

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Letter to Scott Bornstein, Esq.
July 28, 2005
Page 3

(the "Attachments"), the Universal terrain database is stored in "internal flash memory." Additionally, page 48 of the TAWS Operator's Manual (Tab G of the Attachments), states that: "Installation and update of Airport and Terrain databases are accomplished through Universal's Flight Management System and DTU [Data Transfer Unit]-100. If there is not a Universal FMS installed, TAWS is updated directly from the DTU-100 using an IBM compatible computer." You also explained to us that Universal does in fact update its TAWS using a data processing device on the ground. Such a configuration practices the "mass memory means" element of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent. Even if one assumed for the sake of argument that the Universal TAWS does not infringe directly the "mass memory" element, an assumption with which we do not agree, the device infringes under the Doctrine of Equivalents.

Finally, we note that your means-plus-function argument fails to address Claim 20 of the '563 Patent, a method claim.

II.     Validation.

During the July 19 meeting, you asserted that the independent claims of the '563 and '282 Patents in some way require the validation of data. Reading in such a requirement would also be an improper importation of a limitation from the specification into the claims. The principle of claim differentiation also shows that Claims 1 and 20 of the '563 Patent do not include a requirement of data validation because such a requirement is included in dependent Claims 2 and 21, respectively.

III.     Input Means.

You stated in your letter and at our meeting your view that the Universal TAWS does not practice the "input means" limitation of Claim 1 of the '563 Patent and Claim 1 of the '282 Patent because the Universal TAWS does not receive a velocity vector into the terrain alerting function. This is incorrect for several reasons. Claim 1 of the '282 Patent, for example, states as follows: "input means for receiving status indications representing . . . the velocity vector . . . ." This claim element only requires an input means that receives status indications representing the velocity vector and not the velocity vector itself. As the specification of the '282 Patent clearly discloses at Column 4, lines 51-61, these status indications may include the components of the vector, such as track and speed which the Universal TAWS does receive. Additionally, such status indications only need to be received by the input means and not by the alerting function/anti-collision means. In order to encompass the limitation that you suggest, Claim 1 of the '282 Patent would have to be written in a manner similar to Claim 7, in which the anti-collision means takes into account the velocity vector data. Claims 1 and 20 of the '563 Patent similarly do not require the velocity vector to be input into the alerting function. Because the Universal TAWS does accept as inputs the velocity and acceleration vectors, as well as speed and track information, it practices this element literally and under the Doctrine of Equivalents.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Letter to Scott Bornstein, Esq.
July 28, 2005
Page 4

### IV.   Anticollision Processing Means.

In our meeting, you also asserted that the "anticollision processing means" of Claim 1 of the '563 Patent and the "anticollision means" element of Claim 1 of the '282 Patent somehow require use of curves, such as those described at Column 10, lines 1-12 of the '563 Patent. Such curves are not part of the structure disclosed in the specification corresponding to the claimed function. Furthermore, the doctrine of claim differentiation shows that this limitation cannot be included in Claim 1 of the '563 Patent and Claim 1 of the '282 Patent, because the disclosed curves are utilized in the specification in cases where the claimed condition or anticollision law includes consideration of or corresponds to a "piloting flight path for pulling up with a virtually maximum amplitude after a brief delay," limitations of dependent Claim 16 of the '563 Patent and dependent Claim 11 of the '282 Patent.

### V.   U.S. Patents 5,414,631 (the "'631 Patent) and 6,088,654 (the "'654" Patent).

The arguments that you raised with regard to the '631 Patent and '654 Patents are very similar to those made with regard to the '563 Patent and '282 Patent. Accordingly, we refer you to the discussion above.

Sincerely,

Elliot E. Polebaum

EEP:cdr:271069

**Bornstein, Scott (OfCnsl-NY-IP)**

| | |
|---|---|
| **From:** | Polebaum, Elliot E. [PolebEl@friedfrank.com] |
| **Sent:** | Wednesday, November 30, 2005 5:13 PM |
| **To:** | Bornstein, Scott (OfCnsl-NY-IP); PolebEl@friedfrank.com |
| **Subject:** | RE: Standstill/Meeting |

This will confirm that we have agreed to extend the standstill through and including
December 9.

Can you confirm a meeting on December 8?

-----Original Message-----
From: BornsteinS@gtlaw.com [mailto:BornsteinS@gtlaw.com]
Sent: Monday, November 14, 2005 12:46 PM
To: PolebEl@friedfrank.com
Subject: Re:


Ok with us. Let's shoot for the 22nd.
Scott Bornstein
Sent from my BlackBerry Wireless Handheld


-----------------------------------------------------------

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under
Circular 230, we inform you that any U.S. federal tax advice contained in this
communication (including any attachments), unless otherwise specifically stated, was not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding
penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to
another party any matters addressed herein.


    The information contained in this transmission may contain privileged and
confidential information.  It is intended only for the use of the person(s) named above.
If you are not the intended recipient,  you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email administrator directly,
please send an email to postmaster@gtlaw.com.

-----------------------------------------------------------


From: Polebaum, Elliot E. <PolebEl@friedfrank.com>
To: Polebaum, Elliot E. <PolebEl@friedfrank.com>; Bornstein, Scott (OfCnsl-NY-IP)
<BornsteinS@gtlaw.com>
CC: Melander, Deneen J. <MelanDe@friedfrank.com>
Sent: Mon Nov 14 12:03:25 2005
Subject: RE:

Scott,

    It appears that Thales will need a bit more time to collect the information that we
had planned to exchange on November 15.  I suggest that we put this off until November 22.
If we can do it earlier, I will let you know.  Regards.

-----Original Message-----
From: Polebaum, Elliot E. [mailto:PolebEl@friedfrank.com]
Sent: Thursday, November 03, 2005 5:55 PM
To: BornsteinS@gtlaw.com; PolebEl@friedfrank.com



1

Subject: RE:

We have now agreed to extend the standstill through and including December 2, 2005.

-----Original Message-----
From: BornsteinS@gtlaw.com [mailto:BornsteinS@gtlaw.com]
Sent: Friday, October 14, 2005 5:37 PM
To: PolebEl@friedfrank.com
Subject: Re:


Agreed.

------------------------------------------------------------

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under
Circular 230, we inform you that any U.S. federal tax advice contained in this
communication (including any attachments), unless otherwise specifically stated, was not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding
penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to
another party any matters addressed herein.


    The information contained in this transmission may contain privileged and
confidential information.  It is intended only for the use of the person(s) named above.
If you are not the intended recipient,  you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email administrator directly,
please send an email to postmaster@gtlaw.com.

------------------------------------------------------------


From: Polebaum, Elliot E.
To: Scott Bornstein
To: PolebEl@ffhsj.com
Cc: MelanDe@ffhsj.com
Sent: Oct 14, 2005 3:31 PM
Subject: RE:

We've agreed to extend through and including Friday, November 4.  Regards.

-----Original Message-----
From: BornsteinS@gtlaw.com [mailto:BornsteinS@gtlaw.com]
Sent: Wednesday, September 07, 2005 5:24 PM
To: PolebEl@friedfrank.com
Cc: MelanDe@friedfrank.com
Subject: RE:


Agreed.  Thanks.  Scott


------------------------------------------------------------

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS
under Circular 230, we inform you that any U.S. federal tax advice contained in this
communication (including any attachments), unless otherwise specifically stated, was not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding
penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to
another party any matters addressed herein.


    The information contained in this transmission may contain privileged and

2

confidential information.  It is intended only for the use of the person(s) named above.
If you are not the intended recipient,  you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email administrator directly,
please send an email to postmaster@gtlaw.com.

-------------------------------------------------------------

From: Polebaum, Elliot

------Original Message Truncated------

Scott Bornstein
Sent from my BlackBerry Wireless Handheld


Confidentiality Notice: The information contained in this e-mail and any attachments may
be legally privileged and confidential. If you are not an intended recipient, you are
hereby notified that any dissemination, distribution or copying of this e-mail is strictly
prohibited. If you have received this e-mail in error, please notify the sender and
permanently delete the e-mail and any attachments immediately. You should not retain, copy
or use this e-mail or any  attachment for any purpose, nor disclose all or any part of the
contents to any other person. Thank you . _____ Confidentiality Notice:
The information contained in this e-mail and any attachments may be legally privileged and
confidential. If you are not an intended recipient, you are hereby notified that any
dissemination, distribution or copying of this e-mail is strictly prohibited. If you have
received this e-mail in error, please notify the sender and permanently delete the e-mail
and any attachments immediately. You should not retain, copy or use this e-mail or any
attachment for any purpose, nor disclose all or any part of the contents to any other
person. Thank you .


Confidentiality Notice: The information contained in this e-mail and any attachments may
be legally privileged and confidential. If you are not an intended recipient, you are
hereby notified that any dissemination, distribution or copying of this e-mail is strictly
prohibited. If you have received this e-mail in error, please notify the sender and
permanently delete the e-mail and any attachments immediately. You should not retain, copy
or use this e-mail or any  attachment for any purpose, nor disclose all or any part of the
contents to any other person. Thank you .