IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THALES AIRBORNE SYSTEMS S.A., and )
THALES AVIONICS S.A. )
)
)
Plaintiffs, )
) C.A. No. 05-853-SLR
v. )
)
UNIVERSAL AVIONICS SYSTEMS )
CORPORATION )
)
Defendant. )

**REPLY MEMORANDUM OF THALES AIRBORNE SYSTEMS S.A. AND THALES AVIONICS S.A. IN SUPPORT OF THEIR MOTION TO ENJOIN DEFENDANT'S SUBSEQUENTLY-FILED NEW JERSEY PROCEEDINGS AND ANSWERING MEMORANDUM IN OPPOSITION TO DEFENDANT'S CROSS MOTION FOR TRANSFER TO THE DISTRICT OF NEW JERSEY**

Thales Airborne Systems S.A. and Thales Avionics S.A. (the "Thales Plaintiffs") submit this Reply Memorandum, in support of their motion to enjoin Defendant's subsequently-filed New Jersey Proceedings, and in Opposition to Universal Avionics Systems Corporation's ("Universal") motion to transfer. As explained more fully in the Thales Plaintiffs' Opening Memorandum in support of their motion to enjoin ("Thales' Opening Memorandum"), the Thales Plaintiffs instituted this action by filing a complaint in this Court at 08:34 a.m. on December 12, 2005 (the "Delaware Action") alleging infringement of U.S. Patents 5,488,563 ("the '563 Patent") and 5,638,282 ("the '282 Patent"). After the Thales Plaintiffs filed the Delaware Action, Universal instituted a separate action against Thales S.A. in the District of New Jersey (the "New Jersey Action") seeking a declaratory judgment of non-infringement and invalidity with respect to the '563 and '282 Patents and two additional patents, U.S. Patents

5,414,631 and 6,088,654 (all four patents collectively referred to as the "Thales Patents"). Universal has since filed an amended complaint in the New Jersey Action adding the Thales Plaintiffs as defendants in that case (the Thales Plaintiffs and Thales S.A. hereafter collectively referred to as "Thales" or the "Thales Parties"). The Thales Plaintiffs have moved the Court to enjoin Universal from pursuing its duplicative New Jersey Action. Universal has moved the Court to transfer this case to the District of New Jersey. For the reasons set forth below and in Thales' Opening Memorandum, the Court should grant the Thales Plaintiffs' motion to enjoin and deny Universal's motion for transfer.

## I.      THE COURT SHOULD ENJOIN UNIVERSAL FROM PROCEEDING IN THE NEW JERSEY ACTION

### A.      This Court Has Authority to Enjoin Universal From Proceeding in the New Jersey Action

This Court clearly possesses the authority to enjoin Universal from pursuing its subsequently-filed New Jersey Action. *See* Thales' Opening Memorandum at 5. Moreover, as the court in which the first action was filed, this Court properly should determine which of the two cases--the Delaware Action or New Jersey Action--should proceed. *See id* at 3-5. Universal has not challenged either of these points. *See generally* Universal's Memorandum of Law In Opposition to Thales' Motion to Enjoin and in Support of Its Cross-Motion to Transfer to the District of New Jersey ("Opposition" or "Universal Opp.").

### B.      The First-Filed Rule Applies Unless A Sound Basis Justifies a Departure From the Rule

Because this case involves claims under the United States patent laws, the applicability of the first-filed rule is governed by the law of the United States Court of Appeals for the Federal Circuit. *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). The Federal Circuit has repeatedly held that that the first-filed case "is preferred" and should be favored over any

subsequently-filed parallel actions. *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005); *Serco Services Co. v. Kelley Co. Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). The first-filed rule governs "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Electronics for Imaging, Inc.*, 394 F.3d at 1347; *Serco Services Co.*, 51 F.3d at 1039; *Genentech*, 998 F.2d at 938. Thus, before the second action may proceed, there must be a "sound reason that would make it unjust or inefficient to continue the first filed action." *Electronics for Imaging, Inc.*, 394 F.3d at 1347; *Genentech*, 998 F.2d at 937-38. Here, Universal has proffered no such justification for departing from the rule.

**C.    The Delaware Action is the First-Filed Action**

Universal's principal argument against application of the first-filed rule is its assertion that the Delaware Action should not be accorded "first-filed" status because the complaints in the two cases were filed very close in time. *See* Universal Opp. at 6. The Federal Circuit, however, has already considered and rejected this argument:

> We are not unmindful that this declaratory action was filed in Indiana only one day before the California infringement action. However, the rule favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience, is supported by reasons just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between suits.

*Genentech*, 998 F.2d at 938 (citations and internal quotations omitted). As a result, both the Federal Circuit, and the Courts in this district, uniformly have accorded first-filed status to the complaint filed first-in-time, regardless of the time difference between the filing of the two complaints. *See id.* (first-filed rule applied to complaint filed one day earlier than parallel complaint); *Laboratory Corporation of America Holdings v. Chiron Corp.*, 384 F.3d 1326, 1327, 1332-33 (Fed. Cir. 2004) (affirming this Court's determination of first-filed status where parallel

action was filed only four and one-half hours after first complaint); *Chase Manhattan Bank, USA v. Freedom Card, Inc.*, 265 F. Supp.2d 445, 447, 451 (D. Del. 2003) (applying the first-filed rule to parallel actions commenced only one and a half hours apart); *Datex-Ohmeda Inc. v. Hill-ROM Services, Inc.*, 185 F. Supp. 2d 407, 408, 412 (D. Del. 2002) (applying first filed rule to parallel cases filed on the same day); *Matsushita Battery Industrial Co. v. Energy Conversion Devices, Inc.*, 1996 WL 328594, at *1, 2-3 (D. Del. Apr. 23, 1996) (granting declaratory plaintiff's motion to enjoin an infringement action filed one day after the declaratory action).

Universal attempts to distinguish *Laboratory Corporation of America*, 384 F.3d 1326, by asserting that "the Federal Circuit never addressed [the defendant's] argument that 'two actions . . . filed on the same day . . . should be treated as filed simultaneously.'" Universal Opp. at 9. This assertion is incorrect. In *Laboratory Corporation of America*, the first complaint was filed in the District of Delaware on the same day as, but four hours earlier than, a parallel complaint in the Northern District of California. *Id.* at 1327. Based on these facts, this Court found that "[t]he Delaware action was first filed." *Id.* at 1332. On appeal, the defendant, Chiron Corp., argued that *the district court erred* in its conclusion that LabCorp filed 'first' . . . because the two actions were filed the same day and consequently should be treated as filed simultaneously." *Id.* (emphasis added). Immediately after setting forth *this particular argument*, the Federal Circuit held: "We agree with LabCorp that Chiron fails to point out a clear error of judgment, error of law, or clearly erroneous factual finding underlying the district court's decision . . ." *Id.* Thus, the Federal Circuit clearly addressed Chiron's argument that two complaints filed close in time should be treated as filed simultaneously but summarily rejected it.

Universal also attempts to distinguish these cases by arguing that first-filed status was only "one factor" in the courts' consideration and that "each of the cited decisions also involved

significant connections between the parties and Delaware which are notably absent in the instant case." Universal Opp. at 8. This argument, however, misreads the case law and misstates the proper legal standard. The first-filed rule applies *unless the opponent can demonstrate a sound basis for justifying a departure*. Universal attempts to invert this test so that the rule applies only if the proponent shows additional circumstances to support it. As noted above, Universal's contention is inconsistent with the case law. *Electronics for Imaging, Inc.*, 394 F.3d at 1348 ("Our precedent . . . favors the first-to-file rule in the absence of circumstances making it 'unjust or inefficient' to permit a first-filed action to proceed to judgment"); *Serco Services Co.*, 51 F.3d at 1039; *Genentech*, 998 F.2d at 938. In any event, as demonstrated in Section I. D. *infra*, numerous additional considerations favor litigating this dispute in Delaware.

Universal cites several cases from outside the Federal Circuit and this District to support its erroneous contention that neither complaint in this case should be treated as first filed.[1] Whatever value these cases might have in other contexts, they have no value here. None of the cited cases purports to apply Federal Circuit law.[2] This case is governed by Federal Circuit law, which applies the first-filed rule regardless of how close in time the complaints in the two

---

[1]      *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 175 (E.D.N.Y. 2003); *Symbol Techs, Inc. v. Data Gen. Corp.*, 40 U.S.P.Q.2d 1216, 1217 (S.D.N.Y. 1996); *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 2002 WL 31898217, at *2 (D. Kan. Dec. 10, 2002); *Ontel Prods. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1153 (S.D.N.Y. 1995); *Affinity Memory & Micro, Inc. v. K & Q Enters.*, 20 F. Supp.2d 948, 954-56 (E.D. Va. 1998); *Schmitt v. JD Edwards World Solutions Co.*, 2001 WL 590039, at *2 (N.D. Cal. May 18, 2001); *In re IBP S'holders Litig.*, 2001 WL 406292, at *7 (Del. Ch. Apr. 18, 2001).

[2]      Six of the cited cases involved claims other than patent law claims and thus did not apply Federal Circuit precedent. *Citibank*, 248 F. Supp. 2d 172 (fraud); *Universal Premium Acceptance Corp.*, 2002 WL 31898217 (breach of warranty); *Ontel Prods.*, 899 F.Supp. 1144 (trademark infringement); *Affinity Memory & Micro, Inc.*, 20 F. Supp.2d 948 (breach of contract); *Schmitt*, 2001 WL 590039 (breach of contract); *In re IBP S'holders Litig.*, 2001 WL 406292 (breach of contract). Although the remaining case involved a patent dispute, the New York district court inexplicably failed to apply Federal Circuit law and failed to cite a single Federal Circuit decision in its opinion. *See Symbol Techs, Inc.*, 40 U.S.P.Q.2d 1216.

parallel actions are filed. *Genentech*, 998 F.2d at 938 (the first-filed rule "is supported by reasons just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between suits"); *Laboratory Corporation of America*, 384 F.3d at 1332 (rejecting the argument that complaints filed on the same day four hours apart "should be treated as filed simultaneously'"); *Daimler Chrysler Corp. v. General Motors Corp.*, 133 F. Supp. 2d 1041, 1043 n.2 (N.D. Ohio 2001) ("Federal Circuit has . . . held that the first to file rule will be applied more rigorously in patent cases").

Moreover, the cases Universal cites also are easily distinguished. For example, two of the cases do not even appear to support Universal's contention. In *Universal Premium*, 2002 WL 31898217 at *2, the Kansas district court expressly reserved the question whether the first-filed rule should apply. Instead, the Kansas court acknowledged that the second-filed action had been filed in its court and concluded that the court of the first-filed action should decide the issue. *Id.* In *Schmitt*, 2001 WL 590039 at *2, the court accorded first-filed status to the earlier filed case *even though it was filed only a few hours before the subsequent action.* However, the court did not apply the first-filed rule *because the first-filed suit was the declaratory judgment action. Id.* The court held that the coercive suit should have preference over the declaratory suit even if the coercive suit is filed second. *Id.* It is inconceivable how citation to this case helps Universal here, given that Universal's New Jersey Action is the declaratory suit and this case is the coercive one.

The remaining cases cited by Universal all deal with this issue as a question of transfer under 28 U.S.C. § 1404(a).[3] These cases merely stand for the unexceptional proposition that a

---

[3]    *See Ontel Prods.*, 899 F.Supp. at 1144 (treating cases filed on the same day under the Section 1404(a) transfer standard); *Citibank*, 248 F. Supp. 2d at 175 (treating closely filed cases as a question of

**Footnote continued**

party can obtain transfer of a case to another district if it can satisfy the requirements of 28 U.S.C. § 1404(a), the federal transfer statute. However, a party can obtain transfer if it meets the strictures of Section 1404(a) whether or not it has filed a second action in the district to which transfer is sought. As demonstrated in Section II *infra*, Universal cannot satisfy the requirements for transfer under Section 1404(a). Consequently, these cases are irrelevant.

Finally, Universal contends that the Delaware Action should not be considered first filed because the district court in New Jersey opens one-half hour later than the court in this district. *See* Universal Opp. at 6. This argument is both legally and factually irrelevant. The Federal Circuit has never recognized any deviation from the first-filed rule for relative court-opening times. *Cf. Laboratory Corporation of America*, 384 F.3d at 1328 (explaining that a complaint filed at 4:37 P.M. EST in the District of Delaware was filed approximately *four hours* earlier (rather than one hour earlier) than a complaint filed in the Northern District of California at 5:50 P.M. PST). Moreover, even if such a legal exception existed, it would not assist Universal here. The Delaware Action was filed at 8:34 A.M., four minutes after the Delaware court opened. Universal's complaint was filed at 9:46 A.M., forty-six minutes after the New Jersey court

Footnote continued from previous page

transfer); *Affinity Memory & Micro, Inc.*, 20 F. Supp.2d at 955 (applying transfer standard); *Symbol Techs, Inc.*, 40 U.S.P.Q.2d at 1217 (same); *In re IBP Shareholders Litig.*, 2001 WL 406292 at *8 n.19 (explaining the issue as a question of forum *non conveniens*). Universal cites three additional transfer cases elsewhere in its Opposition for the proposition that "the first-filed rule is not absolute." *See* Universal Opp. at 5-6 (citing *Arrow Communication Labs, Inc. v. John Mezzalingua Assocs., Inc.*, 2005 WL 2786691, at *1, 4 (D. Del. Oct. 26, 2005); *Virgin Wireless, Inc. v. Virgin Enter. Ltd.*, 201 F. Supp.2d 294 (D. Del. 2002); *Bayer Bioscience N.V. v. Monsanto Co.*, 2003 WL 1565864, at * 1, 2 (D. Del. Mar. 25, 2003).

opened. *See* Universal Opp. at 5, 6. Thus, even under Universal's unsupported court-opening time concept, Universal's case still is the second-filed action.[4]

**D.    Universal Has Set Forth No Basis to Justify a Departure From the First-Filed Rule**

*1.    Delaware Has Significant Connections to the Dispute and the Parties / New Jersey Has No Connection to the Dispute or the Parties*

Universal erroneously asserts that the District of Delaware has no ties to the instant dispute and parties, while contending that New Jersey has significant ties to Thales. Universal Opp. at 12-13. These assertions are incorrect. The District of Delaware has substantial connections to the dispute and parties at issue. For example, Universal has a physical presence in this District. According to its website, Universal's "Northeast USA Customer Support Office" is located in Delaware. *See* Ex. 1 to the Declaration of Joseph J. LoBue ("LoBue Decl.").[5] This Delaware "office" provides "Technical Support," "Customer Training," "Field Support," and

---

[4]    Universal also claims that the Delaware action should not be considered first filed because, under the Federal Rules of Civil Procedure, "the answers to two different complaints, both filed and served in the same manner, but one at 9:00 a.m. and the other at 9:00 p.m. on the same day, would both be due on the same day at any time." Universal Opp. at 8 n.6. This argument is meritless. It is well settled that the relevant inquiry for purposes of the first-filed rule is when the complaints were filed, not how or when the complaints were served or answered. *MSK Ins., Ltd. v. Employers Corp.*, 212 F. Supp.2d 266, 267 n.2 (S.D.N.Y. 2002). Moreover, there are numerous reasons why an answer to one particular complaint might be due on the same day as an answer to another complaint, even though the complaints at issue were filed days or even months apart. *See, e.g.*, Fed. R. Civ. P. 6(a) (due dates falling on weekends or holidays are automatically moved to the next workday, thus answers to complaints filed and served three days apart could be due on the same day); Fed. R. Civ. P. 4(d)(3) (waiver of service gives defendant 40 extra days to file answer, thus answers to complaints filed and served 40 days apart could be due on the same day); Fed. R. Civ. P. 4(m) (complaint may be served any time within 120 days after filing, therefore answers to complaints filed 120 days apart could be due on the same day). Thus, due dates for answering complaints under the Federal Rules have no bearing on which action was the first to be filed. Finally, even if service and answer dates were relevant to this inquiry, we point out that Universal already has been served, and has filed an answer, in the Delaware Action. The Thales Parties have not yet been served in the New Jersey case.

[5]    The Universal website does not list an address for its Northeast USA office, but the telephone number listed bears a "302" area code, *see id.*, which is limited to the state of Delaware. *See* Ex. 2 to LoBue Decl.

"OEM Support" for Universal avionics products throughout the Northeast region. *See* Ex. 1 to LoBue Decl. Indeed, Universal undoubtedly services its New Jersey customers from its Northeast "office" *in Delaware* because Universal has no such office in New Jersey. *See id.*

In addition, Universal maintains four separate authorized distributors in Delaware located throughout the state. *See* Ex. 3 to LoBue Decl. Universal has authorized avionics dealers in New Castle, Delaware (2), Georgetown, Delaware, and Middletown, Delaware. *See id.* Thus, Universal purposefully offers and sells its infringing TAWS products in this District.

Finally, in its Answer in this matter, Universal admitted that venue is proper in this District under 28 U.S.C. § 1400(b). Universal's Answer and Counterclaim, at ¶ 7. Section 1400(b) provides that:

> Any civil action for patent infringement may be brought in *the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business*.

28 U.S.C. § 1400(b) (emphasis added). Thus, Universal has conceded that it either "resides" in the District of Delaware or has committed the alleged acts of infringement and "has a regular and established place of business" in this District. In light of these admissions, and Universal's close connections to Delaware noted above, Universal's assertion that "Delaware has no ties to the present dispute or to the parties" is unsupportable.

The District of New Jersey, on the other hand, has no connection to the dispute or parties. For example, Universal has no Customer Service Office or other physical presence in New Jersey. *See* Ex. 1 to LoBue Decl. Indeed, in its Opposition, Universal points to *no connections of any kind* between Universal and New Jersey. *See generally* Universal Opp. The *only* purported "connection" suggested by Universal between this case and the District of New Jersey is that an entity named "Thales Avionics, Inc." is located in New Jersey. *See* Universal Opp. at

13. Thales Avionics, Inc., however, is *not* a party to this case or the New Jersey Action *even though Universal was free to name it as such in either the New Jersey Action (as a Defendant) or in this case (as a Cross-Claim Defendant)*. Instead, Universal properly recognized that Thales Avionics, Inc. has no connection to the dispute in this case, and for good reason. Thales Avionics, Inc. is a separate and distinct corporate entity from Thales Avionics, S.A., Thales Airborne Systems S.A, and Thales S.A.--the actual parties to the Delaware and New Jersey cases. *See* Declaration of Franck Legrand ¶¶ 14, 15 (attached as Exhibit A to Thales' Opening Memorandum). Furthermore, Thales Avionics, Inc. has no ownership or other interest in, or connection to, the patents at issue in these cases. *Id.* ¶ 16. Universal does not suggest or proffer any evidence that Thales Avionics, Inc. should be considered the alter ego of the Thales Parties or that the separate corporate forms should otherwise be ignored in this case. On the contrary, the only "connection" offered by Universal is that Thales Avionics, Inc. and the Thales Parties purportedly share a common line of avionics *products*. However, this action involves the infringement by *Universal's products* of the Thales *Patents*. Thales Avionics, Inc. has no interest in or connection to those patents.

Nevertheless, *even if* Thales Avionics, Inc. were somehow connected to this dispute (which it clearly is not), such a connection would *not* favor a New Jersey forum over a Delaware forum. Thales Avionics, Inc. is incorporated under the laws of *Delaware* and is a wholly-owned subsidiary of Thales Holding Corporation, which also is a *Delaware corporation* and which is a wholly-owned subsidiary of Thales North America, Inc., which likewise is a *Delaware*

*corporation. Id.* ¶¶ 13, 15. Thus, Thales Avionics, Inc. has as much "connection" to Delaware as it does to New Jersey.[6]

Finally, Universal absurdly suggests that Thales selected Delaware as a "matter of forum shopping" and "gamesmanship" in order to avoid litigation in the District of Arizona where, according to Universal, the case "should have" been brought. Universal Opp. at 11-12. Universal's forum shopping claim hardly can be taken seriously given that Universal itself has not attempted to bring this case to Arizona, but instead made its initial filing *in New Jersey* and brought its motion seeking transfer of this case *to New Jersey*. In any event, the District of Delaware (8 hour airplane flight / 6 hour time difference) is sufficiently more convenient for French parties and witnesses than the District of Arizona (13 hour plane flight / 9 hour time difference) to easily justify Thales' choice of forum on legitimate convenience grounds.

Moreover, as Universal notes, this District already has litigated infringement claims involving the same technology and the precise Universal products at issue in this case. Universal Opp. at 13 n.8. That prior litigation also required the court to obtain significant familiarity with the Thales Patents, which were highly relevant prior art. Although that litigation was tried before a different judge--Magistrate Judge Thynge--if this Court believes it would be more convenient, Thales is willing to consent to an assignment of this case to Judge Thynge in order to conserve judicial resources and promote a speedy and inexpensive resolution of the dispute.

---

[6]     Thales North America, Inc. is in turn a wholly-owned subsidiary of Thales S.A. *Id.* ¶ 15. Notwithstanding its name, Thales Avionics S.A., a party in this case, has no direct or indirect stock ownership interest in Thales Avionics, Inc.

2.    *All of the Claims Raised in the Delaware and New Jersey Cases Must Be Resolved in This Action*

Universal contends that, because it raised two additional Thales patents in its declaratory judgment action in New Jersey, "the entire dispute between the parties could not be resolved by the Delaware action." Universal Opp. at 11; *see also id.* at 10, 12. In reality, however, all of Universal's New Jersey claims *must* be resolved in the Delaware Action and *may not* be resolved in the New Jersey Action. Pursuant to Fed. R. Civ. P. 13(a):

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . .

Fed. R. Civ. P. 13(a). Here, once Thales filed its infringement complaint in Delaware, Universal was required to assert its declaratory judgment claims as compulsory counterclaims in the Delaware Action. Failure to do so precludes Universal from asserting such claims in any other proceeding. *See Polymer Industrial Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) ("a party that does not assert its compulsory counterclaim in the first proceeding has waived its right to bring the counterclaim and is forever barred from asserting that claim in future litigation"); *TransAmerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384 (3d Cir. 2002); *Rohm & Haas Co. v. Brotech Corp.*, 770 F. Supp. 928, 931 (D. Del. 1991).

For purposes of Rule 13(a), a counterclaim is compulsory if it bears a logical relationship to the opposing party's claim. *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 802 (Fed. Cir. 1999) (adopting four *alternative* tests (including the logical relationship test) under Rule 13(a), satisfaction of any one of which renders a claim compulsory); *Polymer Industrial Prods.*, 347 F.3d at 938 (same); *TransAmerica*, 292 F.3d at 389; *Rohm &*

*Haas,* 770 F. Supp. at 931. This "logical relationship" is "viewed liberally." *TransAmerica,* 292

F.3d at 389. Thus, a logical relationship is established:

> [W]here separate trials on each of the claims would involve a substantial
> duplication of effort and time by the parties and the courts. Such a duplication is
> likely to occur when claims involve the same factual issues, the same factual and
> legal issues, or are offshoots of the same basic controversy between the parties.

*TransAmerica,* 292 F.3d at 389 (internal quotations omitted); *Rohm & Haas,* 770 F. Supp. at

931. There is no question that Universal's declaratory judgment claims satisfy this standard.

Universal concedes that the claims in the two cases would involve a substantial

duplication of effort and time by the parties and the courts. Universal Opp. at 12 ("It clearly

would be more efficient to try all related issues in a single action."). Substantial overlap exists

with respect to the relevant factual and legal issues. All of the claims require an in-depth

understanding of TAWS technology including, in particular, the operation of Universal's TAWS

products. Overlapping legal issues include questions of laches and of invalidity, which will

require an understanding and interpretation of common prior art.

Universal also concedes that the various claims at issue "are offshoots of the same basic

controversy between the parties." *According to Universal,* the dispute originated in

correspondence between Thales and Universal in the spring and summer of 2005 in which Thales

asserted that Universal's TAWS products infringed the Thales Patents. *See* Universal Opp. at 1-

3, 12. *According to Universal,* this "correspondence and related discussions . . . create[d] an

objectively reasonable apprehension on the part of Universal that litigation could be imminent"

and, "[b]ased on these facts, the District of New Jersey has jurisdiction over Universal's

declaratory judgment action." Universal Opp. at 4-5. Thus, the claims in the New Jersey and

Delaware Actions clearly "are offshoots of the same basic controversy between the parties."

Finally, we note that all of the claims arise from precisely the same "transactions and

occurrences"--the sales of Universal's TAWS product.  In short, Universal's declaratory claims are compulsory counterclaims which must be asserted in the Delaware Action or are forever lost.[7]

The fact that Universal has asserted declaratory claims regarding all four of the original patents in dispute, whereas Thales has asserted infringement claims regarding only two of such patents, does not alter this conclusion.  In *Rohm & Haas,* 770 F. Supp. at 934, the court held that the claims at issue were compulsory counterclaims to the first-filed action even though they involved "six additional . . . patents and several additional parties."  The court recognized that the correct test under Rule 13(a) was the "logical relationship" between the claims at issue, not the number of patents in suit.  *Id.* at 931-34.  Because in *Rohm & Haas*, like here, the various claims were logically connected, the court found that the claims fell within the scope of Rule 13(a) and *enjoined the subsequent litigation based on this fact alone.  Id.* at 935.[8]

---

[7]    A counterclaim is compulsory pursuant to Rule 13(a) only if it "does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a).  Universal's New Jersey claims against the Thales Plaintiffs easily satisfy this requirement because those parties consented to the Court's jurisdiction over this dispute when they filed the Delaware complaint.  Universal's New Jersey Action also names Thales S.A. as a declaratory defendant.  Thales S.A. has no ownership rights in the Thales Patents.  Thus Thales S.A. did not initially join as a plaintiff in the Delaware Action.  However, "Rule 13(a) is not limited in its application to the original parties."  Therefore "the addition of extra parties . . . does not affect the compulsory counterclaim issue."  *Rohm & Haas,* 770 F. Supp. at 934; *see also TransAmerica,* 292 F.3d at 393 (counterclaim is compulsory even if it implicates additional parties).  Moreover, because the District of New Jersey has no greater jurisdiction over Thales S.A. than the District of Delaware, the jurisdictional requirement of Rule 13(a) has no net effect in this case.

[8]    Even if Universal's declaratory judgment claims relating to the '631 and '654 patents were not compulsory counterclaims, Universal's claims relating to the '563 and '282 Patents unquestionably are compulsory counterclaims to the Thales Plaintiffs' infringement claims relating to those very same patents.  *Vivid Technologies, Inc.,* 200 F.3d at 801) ("Any counterclaim involving the same patent as is involved in the original action usually is considered to arise from the same transaction"); *Polymer Industrial Prods.,* 347 F.3d at 938 (infringement claim is compulsory counterclaim to declaratory judgment non-infringement claim involving the same patent).  Thus, Universal's claims relating to the '563 and '282 Patents clearly must be asserted in the Delaware Action or else they are waived.  *See Id.* For this reason, only the Delaware Action can resolve all of the claims at issue.

Finally, even if Universal's declaratory judgment claims in the New Jersey Action were not compulsory counterclaims, Universal's assertion that "the entire dispute between the parties could not be resolved by the Delaware action," Universal Opp. at 11, is patently disingenuous. Clearly, if these claims were not deemed to be compulsory, they would certainly be considered "permissive" counterclaims which may be brought, and resolved, in this Court. It is well settled that the first-filed rule applies even where additional claims are raised in the subsequently-filed action if the claims at issue relate to the same general subject matter of the dispute. *See Cadle Co. v. Whataburger Of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (first-filed rule applies if the issues in the two actions "substantially overlap"); *National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961) (first-filed rule applies to cases embracing "essentially the same transactions"); *RJF Holdings III, Inc. v. Refractec, Inc.*, 2003 WL 22794987 (E.D. Pa. Nov 24., 2003) (first-filed rule applies where cases involve the same subject matter); *National Foam, Inc., v. Williams Fire & Hazard Control Co., Inc.*, 1997 WL 700496, at *7 (E.D. Pa. Oct. 29, 1997) (same). This interpretation is necessary or a party could easily evade the first-filed rule simply by including "additional" claims in the second-filed case. Obviously, the Federal Circuit's strong preference for the first-filed action was not intended to be manipulated so easily. Because, here, all of Universal's declaratory judgment claims relate to the same general subject matter as Thales' first-filed action, Universal's second-filed action is precluded by the first-filed rule even if the additional claims at issue are deemed permissive, rather than compulsory.

Universal also cites *APV North America v. Sig. Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002), in purported support of its contention that the first-filed rule is inapplicable where the subsequent action raises additional patents. *APNV North America* is readily distinguished. In that case, the court did not apply the first-filed rule because the subsequent

action involved different patents relating to *different technology*, not because the second suit merely involved *additional* patents. *Id.* at 397. The court recognized the general rule that additional claims do not render the first-filed rule inapplicable, but found that the general rule did not apply because of the "different technologies." *Id.* at 397-98. Here, by contrast, all of the patents in dispute involve the same technology--Terrain Awareness and Warning Systems. Even Universal does not try to argue that the two cases involve different technologies. *See* Universal Opp. at 11-12 ("Because the '631 and '654 patents were not asserted by Thales in Delaware, but are the subject of the New Jersey action, the cases 'implicate different patents.'").

In addition, the "different patents" at issue in *APV North America* were the *opposing party's* patents. In *APV North America*, Sig Simonazzi North America ("SSNA") filed the first action in Texas against APV North America ("APV") alleging that APV's products infringed SSNA's patents. *APV North America*, 295 F. Supp. at 395. Subsequently, APV filed suit in Delaware seeking declaratory relief relating to SSNA's patents, but also claiming that *SSNA's products* infringed *APV's patents*. *Id.* at 395-96. Thus, APV's subsequent suit fundamentally altered the nature of the dispute. In the initial action, the sole dispute related to whether APV's products infringed SSNA's patents. The second suit effectively added an entirely new dispute-- whether *SSNA's products* infringed *APV's patents*. Here, by contrast, the additional patents in the New Jersey Action are Thales patents. Thus, the nature of the dispute remains fundamentally the same, whether Universal's TAWS products infringe Thales' TAWS patents. Unlike in *APV North America*, Universal's New Jersey Action does not drag into this dispute any Universal patents or Thales products. For these reasons, *APV North America* is inapposite.

3.    *The Remaining Relevant Factors Clearly Favor Application of the First-Filed Rule*

The remaining relevant factors also clearly favor application of the first-filed rule in this case. As this Court previously has recognized, a court generally should favor the action that is proceeding at a more rapid pace. *See Tuff Torq Corp. v. Hydro-Gear Ltd.*, 882 F. Supp. 359, 365 (D. Del. 1994); *see also One World Botanical Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F.Supp. 317, 328 (D.N.J. 1997). Here, that is the Delaware Action. In its Opposition, Universal claims that the Delaware Action has only "a one-hour head start." Universal Opp. at 13. This contention is meritless. Universal has already filed an answer in this case. *The Thales Parties have not even been served in the New Jersey Action.*[9]

In addition, serious jurisdictional questions exist with respect to the Thales Parties in the New Jersey proceeding. *See* Thales Opening Memorandum at 7-8.[10] The Federal Circuit has noted that questions regarding personal jurisdiction are relevant in determining the proper forum for the dispute. *Electronics for Imaging, Inc.*, 394 F.3d at 1348; *Genentech*, 998 F.2d at 938. Jurisdiction is an important consideration even where jurisdiction in one forum is merely uncertain (as opposed to actually lacking). *Cadle Co.*, 174 F.3d at 605. This is because the mere

---

[9]    Universal exaggerates the speed at which Hague Convention service is effected on French parties. In our experience representing numerous French companies, service takes on average approximately two months.

[10]    Thales Airborne Systems S.A. and Thales Avionics S.A, on the other hand, already have consented to personal jurisdiction in this Court with the filing of the Delaware complaint. Similarly, there is no serious question regarding jurisdiction over Universal. As demonstrated above, Universal purposefully offers and sells it infringing products in this District through at least four separate Delaware distributors. This activity is sufficient to establish jurisdiction. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). Moreover, by not moving to dismiss on jurisdictional grounds or asserting a defense of lack of personal jurisdiction in its Answer, Universal has plainly waived its right to assert such a defense in any event.

possibility that jurisdiction ultimately might be found lacking could potentially delay resolution of the dispute *for years*. *See id*. Significantly, Universal does not challenge these points.

Finally, permitting Universal's New Jersey suit to proceed would be inconsistent with the purposes of the Declaratory Judgment Act. "The purpose of the Declaratory Judgment Act [is] to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Serco Services Co.*, 51 F.3d at 1039. That purpose is not served by Universal's declaratory judgment action in this case. By the time Universal instituted the New Jersey Action, *the Thales Plaintiffs already had filed suit against Universal in this Court*. Universal's subsequent suit, therefore, serves no useful purpose. Universal does not challenge this point in its Opposition.

## II.    UNIVERSAL'S MOTION TO TRANSFER SHOULD BE DENIED

Universal has moved to transfer this case to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). In evaluating a motion to transfer under Section 1404(a), courts consider: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; (6) the location of relevant books and records; (7) the enforceability of the judgment; (8) practical considerations regarding the ease, speed or expense of trial; (9) the administrative difficulty resulting from court congestion; (10) the local interest in deciding the controversy; (11) the public policies of the fora; and (12) the familiarity of the trial judge with applicable state law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*, 201 F. Supp.2d 294, 300 (D. Del. 2002).

In deciding a motion to transfer, the court balances all of the relevant factors but must "respect that a plaintiff's choice of forum is entitled to substantial deference and should not be

lightly disturbed." *Virgin Wireless*, 201 F. Supp.2d at 300. As this Court has explained, "the plaintiff's choice of a forum is paramount." *Tuff Torq Corp.*, 882 F. Supp. at 362. Thus, "[t]he burden is upon the movant to establish that the balance of the interests *strongly* weighs in favor of transfer . . ." *Virgin Wireless*, 201 F. Supp.2d at 300 (emphasis added); *see also Tuff Torq Corp.*, 882 F. Supp. at 361. Here, Universal's argument in support of transfer--*which consists of only two paragraphs*--does not meet this stringent standard.

Tellingly, Universal's motion to transfer addresses only *two* of the *twelve* factors set forth above and, in the process, mischaracterizes both of those factors. With respect to the first factor, Universal contends that because the District of Delaware is not Thales' "home turf," Thales' choice of a Delaware forum "should carry no weight." Universal Opp. at 16. Universal's contention mischaracterizes the proper legal standard. First, this so-called "home turf" rule does not apply in this case. The rule applies only when the plaintiff actually has a "home turf" in which to bring the claims in question. *Tuff Torq Corp.*, 882 F. Supp. at 362 (plaintiff's "home turf" for transfer purposes is the nearest place that the plaintiff can bring the action). The Thales Plaintiffs, however, are French companies. Certainly, the Thales Plaintiffs are entitled to a ruling on their claims of infringement of U.S. patents under U.S. patent law from a U.S., rather than a French, court. Under these circumstances, Delaware is the Thales Plaintiffs' "home turf."

Moreover, *even where* this so-called "home turf" rule applies, courts may *not* give the plaintiff's choice of forum "no weight." Rather, "plaintiffs' preference . . . is not given as much deference," *Virgin Wireless*, 201 F. Supp.2d at 300, but plaintiff's "choice of forum is still paramount." *Tuff Torq Corp.*, 882 F. Supp. at 362.

Finally, the "home turf" rule carries force only when the plaintiff does not have a legitimate reason for bringing suit in the selected forum. *Tuff Torq Corp.*, 882 F. Supp. at 362.

Here, Thales has a legitimate interest in resolving this dispute quickly and inexpensively, and with as little burden on the Court as possible. Thales is willing to consent to assignment of this complex matter to Magistrate Judge Thynge, who already has a significant familiarity with TAWS technology, the Universal products at issue and the Thales Patents. Obviously, this can only be accomplished through litigation in Delaware. Contrary to Universal's contention, the Court should grant full deference to Thales' choice of forum in this case.

With regard to the second transfer factor, Universal's entire argument is as follows: "The second factor, defendant's preference, obviously favors New Jersey." Universal Opp. at 16. Notably, Universal neglected to apply the "home turf" rule to itself, despite the fact that Universal (unlike Thales) has a "home turf" in the United States--Arizona.

After addressing these two factors, Universal baldly asserts that "[t]he remaining factors do not favor either venue." Universal Opp. at 16. This assertion is both fatal to Universal's transfer motion and factually incorrect. It is fatal because the burden is on Universal to establish that the balance of the factors "*strongly* weighs in favor of transfer." *Virgin Wireless*, 201 F. Supp.2d at 300 (emphasis added). By admitting that the applicable factors do not favor either party, Universal fails to meet this burden.

Universal's assertion is incorrect because "the remaining factors" weigh heavily in favor of litigating this case in Delaware. The third and tenth factors, for example, both weigh in favor of Delaware because Universal sells its infringing products through four distributors located throughout this state. Thus, the claims arose in Delaware and Delaware has an interest in deciding the controversy. *See Beverly Hills Fan*, 21 F.3d at 1568 (forum has a significant interest in preventing patent infringement within its borders). The seventh factor also favors litigation in this Court. Jurisdiction over the Thales Parties is uncertain in New Jersey thus

raising serious enforceability issues with regard to any judgment in that court. Finally, the eighth and ninth factors also weigh against transfer to New Jersey. The possibility of assignment of this case to Magistrate Judge Thynge is a practical consideration that would make litigation in this District easier, speedier and less expensive. Court workloads likewise favor litigation in Delaware. According to the most recent data from the Administrative Office of the United States Courts, the median time from filing to trial in civil cases in this District is 23.5 months (under two years), whereas the median time in the District of New Jersey is 36.7 months (over three years). *See* Ex. 4 to LoBue Decl. In addition, the number of weighted filings per judgeship is meaningfully higher in the District of New Jersey (493) compared to this District (422). *Id.*[11]

Because the relevant factors clearly weigh against transferring the instant action to the District of New Jersey, the Court should deny Universal's motion to transfer.[12]

---

[11]     The remaining factors are neutral. In relation to Arizona and France, the District of Delaware and District of New Jersey are equally convenient with respect to the parties, witnesses, and production of documents and records. Because the case involves a patent law dispute, the public policy interests are federal and uniformly apply to both fora. Finally, there are no state-law issues in dispute. Therefore state law expertise is not a relevant factor.

[12]     Because the applicable factors weigh so heavily in favor of Delaware, Universal attempts to create its own list of factors under the general notion of "interest of justice." Universal Opp. at 16. Tellingly, Universal does not cite a single case from any jurisdiction to support the "factors" it creates. Nevertheless, even if these factors were deemed relevant, they would not favor transfer. With regard to Universal's first new factor--"the lack of any physical presence by any of the parties in Delaware"-- Universal's underlying factual predicate is incorrect. As explained above, Universal maintains a "Customer Support Office" in Delaware. Moreover, even disregarding Universal's presence in Delaware, it is impossible to discern how this factor could favor transfer to New Jersey. This is because none of the *parties* has a physical presence in New Jersey either. With regard to Universal's second new factor-- "none of the parties are incorporated in Delaware"--we again point out that none of the parties are incorporated in New Jersey either. Thus, it is impossible to discern how this "factor" is anything other than neutral. With regard to Universal's third new factor--"Thales has a significant presence in New Jersey"--Universal's factual predicate is again false. Thales Avionics, Inc., the entity to which Universal refers, is a completely separate corporate entity from any of the Thales Parties. Moreover, Thales Avionics, Inc. is a *Delaware corporation* (and wholly owned subsidiary of another *Delaware corporation*). Thus, to the extent Thales Avionics, Inc. is even relevant to this dispute--which it is not--it has as much connection to Delaware as it does to New Jersey.

**CONCLUSION**

For the foregoing reasons, the Court should grant the Thales Plaintiffs' motion to enjoin Universal from prosecuting its subsequently-filed New Jersey Action and deny Universal's motion to transfer the case to the District of New Jersey.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Thales Airborne Systems S.A.*
*and Thales Avionics S.A.*

*Of Counsel:*

Elliot E. Polebaum
Deneen J. Melander
Joseph J. LoBue
FRIED FRANK HARRIS SHRIVER &
    JACOBSON LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel.: (202) 639-7000
Fax: (202) 639-7004

Dated: February 1, 2006
166234.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of February, 2006, the attached **REPLY MEMORANDUM OF THALES AIRBORNE SYSTEMS S.A. AND THALES AVIONICS S.A. IN SUPPORT OF THEIR MOTION TO ENJOIN DEFENDANT'S SUBSEQUENTLY-FILED NEW JERSEY PROCEEDINGS AND ANSWERING MEMORANDUM IN OPPOSITION TO DEFENDANT'S CROSS MOTION FOR TRANSFER TO THE DISTRICT OF NEW JERSEY** was served upon the below-named defendants at the address and in the manner indicated:

Frederick L. Cottrell, III, Esquire                    HAND DELIVERY
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19801

Scott J. Bornstein, Esquire                            VIA FEDERAL EXPRESS
Greenberg Traurig LLP
Met Life Building
200 Park Avenue
New York, NY 10166


*/s/ John G. Day*
_____
John G. Day

165219.1